## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK DIVISION

_____

| | |
|---|---|
| IN RE: PHILIPS/MAGNAVOX ) TELEVISION LITIGATION ) ) ) _____) | Civil Action No. 09-3072 CLASS ACTION Jury Trial Demanded |

### CONSOLIDATED COMPLAINT

Plaintiffs Mark Mancinelli, Mike Tejada, Doug Seitsinger, Pamela Carter, Phyllis Juried, Frank St. Angel, Joseph Hennessey, Donald Umble, Bill Bray, Al Margrif, Kathy Rock, Michael Youngblood, Lisa Sanders, and Deanna Marshall (together, "Plaintiffs") individually and on behalf of all others similarly situated, by their undersigned counsel, allege the following upon personal knowledge as to their own acts and upon information and belief as to all other matters. Plaintiffs' information and belief is based upon the investigation conducted by counsel.

### <u>NATURE OF THE ACTION</u>

1.     Plaintiffs bring this action against defendants Philips Electronics North America Corporation ("Philips") and Funai Corporation, Inc. ("Funai") on their own behalf and as a class action on behalf of all others who purchased a new plasma or liquid crystal display ("LCD") flat screen television manufactured by Philips and/or Funai, and sold under the

Philips or Magnavox brand name ("Philips/Magnavox Flat Screen TV") in the United States from June 24, 2003 through the date upon which Defendants cease the wrongful conduct alleged herein (the "Class Period"), whose Philips/Magnavox Flat Screen TV suffers from the design defect described herein (hereinafter the "Class"). Any claims that Plaintiffs or any member of the Class may have against Defendants for personal injuries or consequential damages are expressly excluded from this action.

2.      As set forth below, the Philips/Magnavox Flat Screen TVs suffer from a design defect that inevitably results in the TVs' circuit boards failing and the TVs becoming inoperable, turning off, failing to turn on and, ceasing to function (the "TV Problem").

3.      During the relevant time period, Philips and/or Funai manufactured and sold the Philips/Magnavox Flat Screen TVs, which are defective because of the TV Problem.

4.      As demonstrated herein, the Philips/Magnavox Flat Screen TVs are defectively designed because their electronic components become overheated as electricity flows through the TVs during normal operation, causing the Philips/Magnavox Flat Screen TVs to become inoperable.

5.      As a result of the TV Problem, the Philips/Magnavox Flat Screen TVs prematurely cease to function. Defendants warrant the Flat

Screen TVs for ninety (90) days for labor and one (1) year for parts.[1]   Given Defendants' knowledge of the widespread TV Problem, their attempt to limit their warranty obligations in this fashion is unconscionable and unenforceable.

6.     Despite Defendants' actual knowledge of the design defect in the Philips/Magnavox Flat Screen TVs, Defendants have failed to, *inter alia*, inform Plaintiffs and other members of the Class of the existence of the fatal design defect -- a clearly material fact -- at the time of sale or after purchase. Further, Defendants have failed to recall the Philips/Magnavox Flat Screen TVs, amend the warranties, and/or reimburse customers for the cost of repairing or replacing the Philips/Magnavox Flat Screen TVs.  As a result of this wrongful and deceptive conduct, Defendants have improperly passed the expense of repairing or replacing the Philips/Magnavox Flat Screen TVs along to Plaintiffs and the other members of the Class who purchased the defective Philips/Magnavox Flat Screen TVs.

7.     Not only did Defendants actively conceal the TV Problem, they also made materially misleading statements touting the high quality of the Philips/Magnavox Flat Screen TVs.   For example, on the Magnavox website, Defendants claim that "Magnavox products have been designed and

---

[1]/   *See, e.g.*, User Manual for  Magnavox 32mf339B at p. 39, accessible at http://www.m4c.magnavox.com/files/3/32mf339b_f7b/32mf339b_f7b_dfu_aen.pdf at p. 39 (last accessed Dec. 22, 2009).

manufactured to the highest quality standards."[2]   Unbeknownst to consumers, however, the defective Philips/Magnavox Flat Screen TVs suffer from a common design defect that causes them to prematurely (and permanently) exhibit the TV Problem and fail.   Defendants have actively concealed this widespread defect from Plaintiff and the other members of the Class.

8.     Had Plaintiffs and the other members of the Class known of this design defect, they would not have purchased their Philips/Magnavox Flat Screen TVs.

9.     As a result of the facts alleged herein, Defendants have violated the laws governing, *inter alia,* breach of the implied warranty of merchantability, unjust enrichment and consumer fraud.

## THE PARTIES

**Plaintiffs**

10.     Plaintiff Mark Mancinelli is a resident of Gloucester County, New Jersey.   On July 7, 2006, Plaintiff Mancinelli purchased a 50 inch Philips/Magnavox Flat Screen TV for approximately $2369.   In or about July 2009, Plaintiff Mancinelli's Philips/Magnavox Flat Screen TV ceased to function as a result of the TV Problem.   On or about July 25, 2009,

---

[2] *See* <http://www.support.magnavox.com/html/how_to_service.html>.  Last visited on December 22, 2009.

Plaintiff Mancinelli informed Defendants of his failed Philips/Magnavox Flat Screen TV and Defendants informed him that he needed a software update.  After Plaintiff Mancinelli performed the software update pursuant to Defendants' instructions, his TV continued to fail to function.  On or about July 25, 2009, Plaintiff Mancinelli again informed Defendants of his failed Philips/Magnavox Flat Screen TV and Defendants informed him that they would not help him since his TV was out of warranty and referred him to a repair technician at his expense.  A repair technician informed Plaintiff Mancinelli it would cost between $500 and $800 to repair his defective Philips/Magnavox Flat Screen TV. Plaintiff Mancinelli was injured as a result of the TV Problem.

11.    Plaintiff Mike Tejada is a resident of Tulare, California.  In or about October 26, 2005, Plaintiff Tejada purchased a 50 inch Philips/Magnavox Flat Screen TV for approximately $5100.  In or about March or February 2009, Plaintiff Tejada's Philips/Magnavox Flat Screen TV ceased to function as a result of the TV Problem.  On or about March or February 2009, Plaintiff Tejada informed Defendants of his failed Philips/Magnavox Flat Screen TV and Defendants informed him that they would not help him since his TV was out of warranty.  Plaintiff Tejada spent

5

approximately $800 repairing his defective Philips/Magnavox Flat Screen TV, and was thereby damaged as a result of the TV Problem.

12.    Plaintiff Doug Seitsinger is a resident of Austin, Texas.  In or about May 2006, Plaintiff Seitsinger purchased a 50 inch Philips/Magnavox Flat Screen TV for approximately $2400.  In or about July 2009 Plaintiff Seitsinger's Philips/Magnavox Flat Screen TV ceased to function as a result of the TV Problem.  In or about July 2009, Plaintiff Seitsinger informed Defendants of his failed Philips/Magnavox Flat Screen TV and Defendants informed him that they would not help him since his TV was out of warranty.

13.    Plaintiff Pamela Carter is a resident of Orange County, Florida. In or about March 2007, Plaintiff Carter purchased a 37 inch Philips/Magnavox Flat Screen TV for approximately $800.  In or about January 2009, Plaintiff Carter's Philips/Magnavox Flat Screen TV ceased to function as a result of the TV Problem.  Plaintiff Carter contacted Defendants by telephone to report the product failure and was instructed by Defendants that she should take her TV to a repair technician.  On our about January 12, 2009, Plaintiff Carter wrote Defendants, provided repair estimates of $450 to $650, and demanded that Defendants repair or replace her defective Philips/Magnavox Flat Screen TV.  Defendants wrote back that

6

because the ninety day labor/one year parts warranty had elapsed, Defendants would not pay for repairs, nor replace her TV.  Plaintiff Carter was injured as a result of the TV Problem.

14.    Plaintiff Phyllis Juried is a resident of Palm Beach County, Florida.   In or about November 4, 2006, Plaintiff Juried purchased a 52 inch Philips/Magnavox Flat Screen TV for approximately $2700.   In July 2009, Plaintiff Juried's Philips/Magnavox Flat Screen TV ceased to function as a result of the TV Problem.   In or about July 2009, Plaintiff Juried placed several calls to Defendants and informed them of her failed Philips/Magnavox Flat Screen TV.  Defendants first instructed her to unplug her TV and then plug it back in, which worked for approximately two weeks before Plaintiff Juried's Philips/Magnavox Flat Screen TV completely failed.   Again in July 2009, Plaintiff Juried informed Defendants of her failed Philips/Magnavox Flat Screen TV and Defendants informed her that she should take it to a repair technician at her own expense.  The repair technician informed Plaintiff Juried it would cost approximately $779 to repair her defective Philips/Magnavox Flat Screen TV.  In or around July 2009 Plaintiff Juried again informed Defendants of her failed Philips/Magnavox Flat Screen TV and asked to speak with a supervisor who

informed her Defendants would not help her since her TV was out of warranty.  Plaintiff Juried was injured as a result of the TV Problem.

15.    Plaintiff Frank St. Angel is a resident of Rockford, Illinois.  In or about January 2006, Plaintiff St. Angel purchased a 42 inch Philips/Magnavox Flat Screen TV for approximately $2435.  Beginning in December 2008, Plaintiff St. Angel began experiencing picture loss on his Philips/Magnavox Flat Screen TV.   When the problem became more frequent in or around May 2009, Plaintiff St. Angel informed Defendants of the picture loss and was instructed to unplug and then plug back in his TV, which failed to remedy the problem. In August 2009, Plaintiff St Angel's Philips/Magnavox Flat Screen TV ceased to function as a result of the TV Problem.  On or about August 2009, Plaintiff St. Angel informed Defendants of his failed Philips/Magnavox Flat Screen TV and Defendants informed him that he should take it to a repair technician at his own expense and told him that they could not help him since his TV was out of warranty. Plaintiff St. Angel was injured as a result of the TV Problem.

16.    Plaintiff Joseph Hennessey is a resident of West Lawn, Pennsylvania.  In or about November 2007, Plaintiff Hennessey purchased a 50 inch Philips/Magnavox Flat Screen TV for approximately $1850.    In or around January 2009, Plaintiff Hennessey's Philips/Magnavox Flat Screen

TV ceased to function as a result of the TV Problem.  On or about January 2009, Plaintiff Hennessey informed Defendants of his failed Philips/Magnavox Flat Screen TV and Defendants informed Plaintiff Hennessey that Defendants would not repair or replace his TV since his TV was out of warranty and that he should take it to a repair technician at his own expense.  Plaintiff Hennessey was injured as a result of the TV Problem.

17.    Plaintiff Donald Umble is a resident of Pottstown, Pennsylvania.  On or about September 2006, Plaintiff Umble purchased a 50 inch Philips/Magnavox Flat Screen TV for $1,996.43.  Less than three years after purchasing the product, Plaintiff Umble's Philips/Magnavox Flat Screen TV ceased to function as a result of the TV Problem.  Plaintiff Umble informed Defendants of his failed Philips/Magnavox Flat Screen TV and Defendants informed him that they would not repair or replace his TV because it was out of warranty.  Plaintiff Umble was injured as a result of the TV Problem.

18.    Plaintiff Bill Bray is a resident of Cleveland Heights, Ohio.  In or about November of 2006, Plaintiff Bray purchased a 37 inch Philips/Magnavox Flat Screen TV for approximately $1075.    Plaintiff Bray's TV gradually took longer and longer to start up until June of 2009,

when it would not start at all as a result of the TV Problem.  Plaintiff Bray informed Defendants of his failed Philips/Magnavox Flat Screen TV and Defendants informed him that they could not repair or replace his TV because it was out of warranty. Plaintiff Bray was injured as a result of the TV Problem.

19.    Plaintiff Al Margrif is a resident of Metamora, Michigan.  In or about October 2006, Plaintiff Margrif purchased a 50 inch Philips/Magnavox Flat Screen TV for approximately $2650.  On or about June 10, 2009, Plaintiff Margrif's TV ceased to function as a result of the TV Problem.  On or about June 11, 2009, Plaintiff Margrif informed Defendants of his failed Philips/Magnavox Flat Screen TV.  Defendants informed him that they would not repair or replace his TV because it was out of warranty.  Plaintiff Margrif was injured as a result of the TV Problem.

20.    Plaintiff Kathy Rock is a resident of Milford, Michigan.  In or about December 2006, Plaintiff Rock purchased a 50 inch Philips/Magnavox Flat Screen TV for approximately $2300.  Two years later, in or about December 2008, Plaintiff Rock's Philips/Magnavox Flat Screen TV ceased to function as a result of the TV Problem.  On or about December 2008, Plaintiff Rock informed Defendants of her failed Philips/Magnavox Flat Screen TV, and Defendants informed her that they would not repair or

replace her TV because it was out of warranty.  Plaintiff Rock was injured as a result of the TV Problem.

21.    Plaintiff Michael Youngblood is a resident of Roy, Washington. In or about August 2006, Plaintiff Youngblood purchased a 42 inch Philips/Magnavox Flat Screen TV for approximately $1900.  In June 2009, Plaintiff Youngblood's Philips/Magnavox Flat Screen TV ceased to function as a result of the TV Problem.  On or about June 2009, Plaintiff Youngblood informed Defendants of his failed Philips/Magnavox Flat Screen TV, and Defendants informed him that they would not repair or replace his TV because it was out of warranty.  Plaintiff Youngblood was injured as a result of the TV Problem.

22.    Plaintiff Lisa Sanders is a resident of Little Rock, Arkansas. In or about March 2007, Plaintiff Sanders purchased a 45 inch Philips/Magnavox Flat Screen TV for approximately $1200.  On or about November 2009, Plaintiff Sanders TV ceased to function as a result of the TV Problem.   On or about November 2009, Plaintiff Sanders informed Defendants of her failed Magnavox Plasma TV and Defendants instructed her to unplug it and then plug it back  in.  When the TV continued to cease to function, Defendants told her they would not repair or replace her TV

because it was out of warranty.  Plaintiff Sanders was injured as a result of the TV Problem.

23.    Plaintiff Deanna Marshall is a resident of Bozeman, Montana. In or about October 2008, Plaintiff Marshall purchased a 50 inch Philips/Magnavox Flat Screen TV for approximately $1500.  On or about November 2009, Plaintiff Marshall's TV ceased to function as a result of the TV Problem, and informed Defendants of her failed Philips/Magnavox Flat Screen TV.  Defendants would not repair or replace her TV because it was out of warranty. Plaintiff Marshall was injured as a result of the TV Problem.

**Defendants**

24.    Defendant Philips is a wholly-owned subsidiary of Koninklijke Philips Electronics, N.V. ("Royal Philips Electronics"), a Dutch corporation, with its U.S. headquarters located at 3000 Minuteman Road M/S 109, Andover, Massachusetts 01810.

25.     Up until September 2008, Defendant Philips was engaged in the business of designing, manufacturing, distributing, marketing, selling and providing customer service for, Philips/Magnavox Flat Screen TVs, under both the Philips and Magnavox brand names.

26.     Defendant Funai is a corporation that, among other things, researches, designs, engineers, develops and manufactures flat screen televisions, which are sold under the trade names "Sylvania," "Emerson" and "Symphonic."   According to Funai, even though it manufactures its televisions abroad, the significant and substantial investment in research and development, aftermarket service and support, and development of these products, takes place in the United States.

27.     Defendant Funai's corporate headquarters is located at 201 Route 17 North, Suite 903 Rutherford, New Jersey, 07070.  Thus, Funai is a citizen of the State of New Jersey.

28.     In or around April 2008, Defendant Funai entered into a brand licensing agreement with Philips whereby Funai began to manufacture, distribute, market, sell and provide customer service for the Philips/Magnavox Flat Screen TVs in the United States and Canada beginning in September 2008.  According to Royal Philips Electronics Form 6-K filed with the United States Securities and Exchange Commission on February 23, 2009, "In North America we entered into a five-year minimum brand licensing agreement with Funai Electric Company of Japan, under which Funai will assume responsibility for all Philips-branded consumer television activities in the United States and Canada."

29.    Upon information and belief, the "Magnavox" name is a trademark registered to Philips and licensed to Funai.  Pursuant to this licensing agreement, which commenced on September 1, 2008, and runs for five years, Funai makes royalty payments to Philips in exchange for Funai's right to exclusively use the Philips and Magnavox brand names for televisions (including the Defective Philips/Magnavox Flat Screen TVs) sold in the United States and Canada.

## VENUE AND JURISDICTION

30.    This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1332 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

31.    Venue is proper in this District because Defendant Funai resides in this District, Plaintiff Mancinelli resides in this District, and many of the actions giving rise to the allegations set forth herein took place in this District.

32.    This Court has personal jurisdiction over both Defendants because Funai is a citizen of this state and because Philips conducts substantial business in this state.

33.    All jurisdictional prerequisites have been and/or are hereby satisfied by and through the filing and service of this Consolidated Complaint and the similar complaints previously filed regarding the TV Problems. Moreover, in light of the numerous complaints consumers have made directly to Philips, Funai, Philips' customer call center, Computer Generated Solutions, Inc. ("CGS"), and to the retailers authorized to sell the Philips/Magnavox Flat Screen TVs, and the numerous complaints posted on the internet and other forums, and Defendants' refusal to effectively resolve the TV Problems, any additional pre-suit complaints or other notice to Defendants would have been futile.

## SUBSTANTIVE ALLEGATIONS

34.    The Philips/Magnavox Flat Screen TVs are sold nationwide at large chain stores, such as Sears and Best Buy, other retail stores, wholesale clubs, such as Sam's Club and Costco, and Internet-based appliance vendors. The average retail price for the Philips/Magnavox Flat Screen TVs ranges between $800 and $5,500, depending on the model.

35.     Industry buying guides rate LCD and Plasma Flat Screen TVs to have a life span of 60,000 to 100,000 hours, or about 8 hours of daily viewing for 20 years.[3]  Philips itself touts that its plasma flat panel monitors have a "Long expected panel lifetime of over 60,000 hours."[4]  Other advertisements, including one titled, "Philips Plasma TV Offers Sizes To Fit Your Needs," states that

> With the many advantages of a Philips plasma TV over typical LCD televisions, and newer research reducing the opportunity for screen burn in ghosts, the units are designed to **last a typical 60,000 hours**, which equates to about **27 years of viewing**, on an average of six hours per day. Regardless of the size of a Philips plasma TV, proper care and precautions can extend its life beyond expectations.[5]

36.     In any event, consumers paying between $1,000 and $5,500 for a LCD/Plasma TV could reasonably expect their TV to function well beyond the ninety day labor/one year parts warranty extended by Defendants' boiler-plate warranties.

---

[3/]     *See, e.g.*, http://www.lcdtvbuyingguide.com/lcdtv/lcdtv-lifetime.shtml (Last Accessed on Dec. 15, 2009); http://www.plasmatvbuyingguide.com/plasmatv/plasmatv-lifespan.html (Last Accessed on Dec. 15, 2009); http://www.highdefforum.com/flat-panel-tvs/19770-6-misconceptions-lcd-tv.html (Last Accessed on Dec. 15, 2009).

[4/]     *See, e.g.*, http://www.p4c.philips.com/files/b/bds4222v_00/bds4222v_00_pss_eng.pdf (Last Accessed on Dec. 15, 2009); http://www.fowlerinc.com/pdf/Philips_BDH4241V-27.pdf. (Last Accessed on Dec. 15, 2009); http://www.ecvv.com/product/1260282.html (Last Accessed on Dec. 15, 2009).

[5/]     *See* http://www.all-about-plasmatv.com/Philips_Plasma_TV_Philips_Flat_Screen.html (Last Accessed on Dec. 15, 2009).

## Background - Flat Screen TVs and Capacitors

37.    In order to fully understand the design defect alleged herein, it is helpful to first examine the integral internal electrical components in the Philips/Magnavox Flat Screen TVs, including the power supply board ("PSB"), the small signal board ("SSB"), and the electronic devices found on these "boards" called capacitors.

38.    Plasma and LCD televisions, like almost all televisions, contain a number of internal electronic components.  These electronic components are mounted on circuit boards and serve dedicated functions, *i.e.*, enabling the television to power on and off, tune to a particular channel, display visual images properly, and replay audio.   However, unlike traditional tube televisions, LCD and plasma flat screen televisions require much more electricity and operate at much higher temperatures – thereby subjecting the circuit boards and electronic components to higher temperatures.

39.    Certain of these circuit boards in the Philips/Magnavox Flat Screen TVs, including the PSB and the SSB, contain electronic devices called capacitors.

40.    Capacitors are devices that store electrical charges.  Capacitors are critical components in electronics such as televisions, camera flashes, and radios. A typical capacitor is comprised of two conductors separated by

17

a dielectric (non-conducting substance) such as air, glass, or paper. These conductors are usually referred to as plates, regardless of their actual shape.

41.     When capacitors are connected to a power source such as a battery or a wall outlet, electrons are moved from one plate to another, giving them equal and opposite charges. The capacitor is fully charged when the potential difference between the plates is the same as the voltage of the battery. A larger battery along with large plates that are close together means the capacitor can store even more charge. Other elements inside the circuit, such as resistors or other capacitors, also affect the amount of charge the capacitor can receive.

42.     Because of this ability, capacitors function as energy storage centers. The energy can be released suddenly in short bursts as from camera flashes. Their storage ability also allows capacitors to help smooth voltage spikes that are caused by lightning or electrical switches opening and closing, thus allowing a steady current to be supplied to circuits inside a television, radio, or stereo amplifier, for example. This ability helps prevent electronics from being destroyed.

43.     Below is a figure of the types of capacitors – electrolytic capacitors – commonly used in consumer electronics like televisions and radios.



44.    The life of an electrolytic capacitor can be shortened by a number of occurrences, including overvoltage (*i.e.,* if the specified voltage is exceeded) or heat.

**Philips/Magnavox Flat Screen TVs**

45.    Like most flat screen TVs, the Philips/Magnavox Flat Screen TVs' electronic components are comprised of circuit boards which control such things as the power, video, and audio functions of the TVs.

**Power Supply Board**

46.    The PSB controls power regulation and distribution to the Philips/Magnavox Flat Screen TVs.

47.    The image depicted in the picture below is the PSB for the Philips Plasma TV 42FD9954/17 42FD9934 or Philips Plasma TV 32FD9954 32FD9954/17:



48.    The image depicted in the picture below is the PSB for the 50"

Philips Plasma TV:



49.    The image depicted in the picture below is the PSB for A 32"

Philips/Magnavox Flat Screen TV:



50.     The image depicted in the picture below are three capacitors on

a PSB for the 32" Philips/Magnavox Flat Screen TV:



**Philips/Magnavox Small Signal Board**

51.    The SSB is another electronic circuit board that is found in the Philips/Magnavox Flat Screen TVs.  The SSB is where the microprocessor and the "EEPROM" are located.  The "EEPROM" – or Electrically Erasable Programmable Read-Only Memory – is a type of non-volatile memory used in computers and other electronic devices to store small amounts of data that must be saved when power is removed, *e.g.*, calibration tables or device configuration.    Should the SSB fail or become compromised, the Philips/Magnavox Flat Screen TV will completely fail and exhibit the TV Problem.

52.    The image depicted in the picture below is the SSB for the 63" Philips Plasma TV:



53.    The average cost for replacement of the PSB or SSB control panel is between approximately $500 and $800.

**The Philips/Magnavox Flat Screen TVs Are Defectively Designed**

54.    The Philips/Magnavox Flat Screen TVs are defectively designed because normal operation and usage of the Philips/Magnavox Flat Screen TVs exposes the capacitors that are found on the internal circuit boards, including the PSB and SSB, to excessive heat and/or excessive voltage, which, in turn, causes the capacitors to fail, which causes the circuit board to shut down, and therefore, the Philips/Magnavox Flat Screen TV, to exhibit the TV Problem.

55.    These capacitors are integral and necessary parts of the electronic circuit boards within the Philips/Magnavox Flat Screen TVs and were designed to operate within a defined temperature and voltage range and for a certain period of time before ceasing to operate.  Indeed, capacitors are engineered to last a certain number of hours, *e.g.*, 1,000 hours, at a certain temperature and voltage.  Thus, a television with a capacitor rated 1,000 hours on its power supply board could last approximately one year before failing.

56.    However, if the wrong capacitors are used for the given application, *i.e.,* they are exposed to too much heat or voltage, the life span

of the capacitors will be severely diminished.  According to one engineer, a good rule of thumb is that every 10 degree Celsius over 85 degrees will cut the life expectancy of an electrolytic capacitor in half.

57.   Thus, when the capacitors in the circuit boards overheat, the Philips/Magnavox Flat Screen TVs automatically shut down.  When this happens the owner is prompted by a number of blinking red lights on the front panel of the TV, indicating that there is a problem.  This has been commonly referred to in hundreds of consumer complaints as the "red blinking light problem" or the "blinking lights of death."  As a temporary fix, some Philips/Magnavox Flat Screen TV owners and members of the putative class have been able to resume use of their television by unplugging the unit, waiting 20-30 seconds for the capacitors to cool,  and then plugging it back in.  However, this "fix" soon fails as the capacitors eventually burn out and the Philips/Magnavox Flat Screen TVs completely fail to operate at all and instead just emit red blinking lights.

58.   The figure below is of a PSB on 42" Philips Plasma TV (Model: 42PF9631D/37), with blown capacitors:



59.　　The figure below is a close up of the blown capacitors on the above PSB:



60.    Purchasers of the Philips/Magnavox Flat Screen TVs have paid and continue to incur substantial parts and labor fees to repair their defectively designed Philips/Magnavox Flat Screen TVs when they fail to operate as a result of the design defect after the expiration of the one year warranty for parts, as discussed below.   If the electronic components contained on the circuit boards in the Philips/Magnavox Flat Screen TVs fail after the first year of purchase, Defendants refer consumers to independent repair facilities.   Upon information and belief, during the Class Period, it cost approximately $110 to $150 for a service technician to perform a diagnostic on a Philips/Magnavox Flat Screen TV and an additional $70 to $90 for every hour of service repair performed.

**Consumer Complaints Concerning**
**The Defective Philips/Magnavox Flat Screen TV**

61.    As a result of the design defect in the Philips/Magnavox Flat Screen TVs, purchasers of these televisions have experienced the TV Problem, as evidenced by the numerous complaints found on the Internet.

62.    Class members have complained that their Philips/Magnavox Flat Screen TVs have failed to operate during normal usage.   Indeed, purchasers of the Philips/Magnavox Flat Screen TVs have referred to the unexpected automatic shutting off and subsequent complete failure to operate and the dreaded red blinking lights as the "Red Blinking Light"

problem.   Relevant excerpts from a sampling of these complaints are set

forth below:

| Source | Comments |
|---|---|
| Techlore.com<br>August 11, 2005 | I have a 2 yr old Philips LCD 15 inch TV - - can also be used as a pc screen, but have not used it that way.  I moved it to another room, and now **I get sound but no picture**.  I checked everything many times, no luck. |
| Techlore.com<br>September 12, 2005 | I have had a problem with my 42" Plasma.  It was purchased three years ago and I also purchased the extended service. Every once in while, while watching, the screen would shut down and the LCD at the bottom left would go red.  I would get up, turn the monitor switch on and off and usually it would solve the problem. I called Philips and also their service outlet but they couldn't help because it only happened once per every two or three months.  Well, **the warranty just ended and now the screen goes down, red light comes on and if I can reset it, it only takes minutes for it to shut down.** |
| Techlore.com<br>March 26, 2006 | I too a Philips [plasma] that shuts off but mine goes something like this:<br><br>When the unit is plugged in the red 'standby' LED comes on as usual. I power on the unit from the remote and the power LED turns green, I hear two clicks from two relays on the power board (about a second apart) and the 6 cooling fans come on to full power. After approx 2 seconds I get another relay on the power board that clicks on and off one time very quickly along with a very brief flash on the screen. Afterwards the fans power down and I hear the original 2 power relays click off (again about a second apart) **followed by the red power led flashing once a second.** |
| AVS Forum.com<br>April 11, 2006 | **Philips 42FD9932 Plasma screen failure**<br><br>Check out some of my posts regarding the **red** |

|  | **blinking light problem** regarding Philips plasma. Hopefully you can learn from my experience.<br><br>The problem depends on the number of blinking of the red lights.  Does the TV turn on at all?  Or does it just power down occasionally?<br><br>If is not turning on at all, it could be due to a few things … all of which are very expensive.  It could be the Power Supply Board, the video board, or the whole panel itself.<br><br>**My Philips plasma basically died after just 6 months of use and wouldn't turn on anymore. The red light was blinking 7 times**.  After a painful experience with Philips customer relations department, they sent out a technician who couldn't fix it and consulted with Philips Engineering.  They concluded that the display plane needs to be replaced.  The display panel retails for over $4,000 and is on backorder for at least two to three months.<br><br>**Hope your situation is not to this extreme, but even a Power Supply board with cost you about $350 to $500**.  Nothing is cheap when it comes to repairing a plasma tv. |
|---|---|
| CNET.com Forums<br>August 23, 2006 | **Buzz Out Loud Lounge: Is the Philips 42PF7320A/37 a LEMON???**<br><br>**Philips 42" Plasma – Worst Product Line**<br><br>I have a 42" Philips Plasma. Even I am having the same issue.  **It suddenly turns off and has a red-light.**  Would never suggest/buy a Philips again. |
| AVForums.com<br>September 25, 2006 | Philips plasma repair advice thread<br><br>Hi,<br><br>My **18 month old Philips plasma** has decided to stop working.  I have a 37FD994/01S that has a separate tuner box.  When you turn on the display |

| | |
|---|---|
| | the LED goes green for a few seconds then switches to a continuously **rapid flashing red with no picture.** . . .<br><br>I contacted Philips who could not help without sending the unit away to be inspected (at my own cost).  I then contacted the retailer, Discount Electronics UK, who couldn't have been more unhelpful.<br><br>Does anyone have any ideas as to what could have happened or any links to some technical advice on Philips plasma (I have already checked Philips.com). |
| Consumeraffairs.com October 2006 | On 2-4-06 we purchased a Philips 51 inch TV. **Approx. 3-27-06 we began having problems. TV would turn itself off when we were changing channels. Called Philips and they referred us to Melody TV in Oakley**. **They called after looking at it and said it needed a small signal board**. Ordered 4-7-06 but part was backordered and didn't know when they would get it. Tried to get refund at Circuit City where we purchased it, and they said no refunds after 30 days. Called Philips saying I wanted refund & they referred me to complaint dept. Someone would call me in 5-10 business days. I called Philips back 5-10-06 requesting refund but they had already approved a replacement TV.<br><br>Spoke with Tracy who said refund wasn't an option and would ship new TV to Melody's 15-20 business days. **Mid June received new TV. Approx. 2 months later same thing happened again. Called Philips requesting refund**. . . .<br><br>I am now convinced there is no way to get a refund on a piece of junk we paid $1300.00 for. I know I will never purchase another Philips product again. |
| Complaintsboard.com October 28, 2006 | After numerous unproductive calls to the Magnavox Customer Support Line and as a last resort, I have written a letter to Magnavox to demand a full refund |

| | |
|---|---|
| | for an LCD TV.  I purchased this TV on 4/21/2006. The TV began having issues on 6/15/2006. The unit would not respond to the remote or to manual commands. **The unit would turn off periodically by its self and/or the screen would go blank** with the power remaining on…. <br><br> **When I call Magnavox Customer Support I get absolutely no where**. |
| Consumeraffairs.com April 20, 2007 | I purchase the Philips LCD TV.  **After 5 weeks it would not turn on, the green light turns to red, blinks a few times and that's it.**  Unplugging the TV does not help.   I'm waiting for response from Philips, but based on my findings on the internet I am not feeling too promising. |
| Fixya.com September 7, 2007 | **Shutdown; red LED blinks 4x** <br> Turn on the unit and the relay clicks with a solid green light then the relay clicks again and the red LED blinks in intervals of 4x.  The screen never lights up.  Is there an error code that coincides with the 4x blinking?  I am a bench tech in need of some guidance/help/assistance. <br>        *     *     * <br><br> <u>Best Solution</u> <br> **The Error 4 is referring to a I2C4 communication error between SSB (small signal board), and the Logic board (located underneath the SSB (under the bracket).  Very high probability the SSB is bad.  Current replacement SSB 12 nc is 31392680952** |
| Consumeraffairs.com November 25, 2007 | We purchased a Phillips 20 LCD TV. **After 9 months it would just go black.** I purchased it from Sam's Club and purchased the 3 year warranty, We called and found out we had to send it to Phillips. It cost $35.00 to ship. They sent us a refurbished one. It had lines all through the picture and no color. We were told to send it back, costing again $35.00. We contacted the BBB and they finally paid for the shipping. **We now have a third one which goes** |

| | |
|---|---|
| | **black after a little use.** We bought them less than 2 years ago.<br><br>**Philips is rude, unhelpful, dishonest and have horrible TV's.** |
| Complaintsboard.com<br>February 2008 | I bought a Magnavox LCD back in March of 2007. Just last week, February of 2008 **the screen went black. It still has sound.** The Magnavox customer service people are useless. They gave me the contact with a repair facility only for me to find out they want $479.00 in labor to look at it. I paid $1000.00 for this unit. The repair shop said these TV's are disposable now days. **Philips/Magnavox is a JOKE.** I should have viewed this website before deciding to buy a Maget-box. |
| Consumeraffairs.com<br>January 25, 2008 | We bought a 26 LCD/HDTV from Philips. Spent $800 on this set and it only lasted one year.  It is past warranty **and will not power on**. The repair shop wants $300 to replace the video board.  What a great investment. |
| Techlore.com<br>February 24, 2008 | I have the Philips 42PF5321D-37, **I recently upgraded the firmware because I was having a problem with the red light blinking 4 times.**  That problem seems to be fixed but **now when I turn the tv on the green light comes on for about 15-20 seconds but then goes out, there is no sound or picture.  I have unplugged it several times, let it sit overnight and still it won't work**.  When I initially plug in the power cord it clicks, turns green and goes off, that is normal but then when I hit the power button (on the remote and on the side) it wont click like it normally does when it's powering on just the green light pops on without the click. |
| Consumeraffairs.com<br>June 25, 2008 | My husband and I decided to purchase a 37 Magnavox LCD TV as a Christmas present to each other. I went to Target on Black Friday (Nov. 2006) and purchased it for over $800 +tax. We were very happy with our purchase until Dec. 2007 when we noticed that the TV would take longer to turn on. |

| | |
|---|---|
| | Eventually a few days later the TV wouldn't turn on at all!! The green light would come on for a second, **start blinking red** and then stop. **No picture, no sound, no TV. Of course the warranty was only for one year and that just expired.** |
| CNET.com Forums July 21, 2008 | **Yes it is a lemon** **I have the same 42" plasma, worked great for the first 14 months then the clicking noise and red LED blinking.  Called Philips repair center took them three weeks to get back to me**.  . . . … |
| Fixya.com August 14, 2008 | I HAVE THE SAME PROBLEM. **The tv shut down and the image disappears**.  . . . |
| Techlore.com October 5, 2008 | Finally I seem to have found some people who are familiar with the frustrations and problems I am having with my Philips 42pf5321d/37. **Since falling out of warranty my television has cut off at will for no apparent reason**. **Today it cut off and will not come back on. It is now displaying the error code of 5 slow red lights followed by 3 fast red lights.** |
| Consumeraffairs.com November 25, 2008 | I bought a 42 inch LCD Philips TV just last November 2007 and exactly on year later **the picture suddenly went black.  All they can tell me is that it's out of warranty.** |
| Fixya.com December 16, 2008 | **Blinking red light only**.  I unplugged it for a couple of minutes and it started working for a few days and it is out again, with the **blinking red light** on again. I have a 42 inch Philips plasma and once I turn it off and leave it for a while the red blinking light turns on by itself. Once I unplug it for a minute it turns back on. |
| Consumeraffairs.com December 26, 2008 | Bought a 37 inch Philips Widescreen LCD TV in June of 2006.  It lasted until December 23, 2008. Like many others the TV was turned off normally – **then a red blinking light came on** where normally a green light is on. |
| Consumeraffairs.com March 7, 2009 | On 9/3/2006, I purchased a Philips 37 LCD TV.  On 10/17/2006, the TV did not turn on.  When I attempted to turn it on, I heard a click and then a **red** |

| | |
|---|---|
| | **light blinked 6 times**.    Philips authorized a repair. The TV came back and again the same thing happened less than a month later on 11/5/2006.  The TV goes back to the repair people.  It comes back and works fine until 12/22/08 when EXACTLY the same thing happens!  We contacted Philips and they said we were out of warranty.  We stated that it is EXACTLY the same problem that was repaired twice within the first year of ownership.  **Philips representatives didn't care and again just stated the TV was out of warranty.** |
| Consumeraffairs.com March 14, 2009 | 47 brand new flat screen LCD turns on and off randomly up to 10 times during a movie.  You have to wait 10 minutes to turn it back on.  **A red light flashes twice then solid**.  I also tried updating the firmware as Philips suggested from 1.08 to 1.15, and this did not work.  It was stated in the update of 1.15 that it was meant to fix the problem. So Philips basically admits to selling faulty TVs to the general public. |
| Consumeraffairs.com March 21, 2009 | I bought a Philips LCD TV in April, 2006.  Exactly 2 years later the Costco warranty ran out and so did the TV.  It cost $350 to repair and the repair had a 90-day warranty.  Now in April 2009, the TV intermittently refuses to start up.  At this point, **I only get a green light for a time, then a pattern of red flashing lights. . . . I called the authorized repair service and they will not even return my call.**  This is ridiculous.   I have a 15-year-old TV in my bedroom that fell from a shelf in our last earthquake and is still chugging away.  You can be sure it isn't a Philips.<br><br>This television cost $1500 when I bought it. The repairman said it would be like new after the last repair.  Well, **I guess a NEW Philips is completely worthless.**  Judging from the complaints I've read about Philips' televisions, I threw my money away trying to repair it. |
| Fixya.com | I have a Philips 42PF7321D/37 model 42" plasma |

| | |
|---|---|
| May 11, 2009 | TV that just shut off on me a week ago.  When it shut off, the green LED power indication **light turned red and blinks 4 times.**  I saw on a post here a list of fault codes, mines corresponds to theD3V3, although, I do not know what that is.  Nor do I know where to source parts … I'd prefer to get the parts and make the repairs myself.  I work at a research center and I'm pretty handy with electronics, but without any info I'm stuck. I'd rather not pay the local repair sop that Philips referred me to the ~ $400 - $500 that they guessed it would cost… On a two year old plasma. |
| Consumeraffairs.com May 28, 2009 | My 42 inch LCD won't turn on.  **It flashes 5 red lights in sequence.**  I called the number on the users manual since there was nothing in it about that and the lady said its saying there is something going on inside the TV that won't allow it to turn on. . . . They couldn't tell me what it was. . . .   I don't feel I should have to pay more for a TV if something happens. **[N]o one from Philips is going to give me support.  The price we pay for the TVs should give us excellent support.** |
| Fixya.com June 1, 2009 | I have a 42 inch Philips plasma w ambilight and the TV won't turn on. It has **7 blinks of a red ligh**t when I attempt this. This happened a few weeks ago and we tried pulling cords out of the back etc. and unplugged it. It ended up working all of a sudden for a few days and now it won't work again... any help would be greatly appreciated. Scott Blinking lights. What the heck does it mean? |
| Fixya.com June 2, 2009 | **I had the Same issue on a 50PF9431D/37 set. Many Plasma Set's use a LJ44-00118A PS-505-PH Power supply from Samsung. Know to have this common problem.** If you can, or have a friend that can Solder components? Unplug your set remove the back panel & locate your power supply. It will be the PCB in the center of the set just above the Video/Audio connections. http://www.shopjimmy.com/power-supply-unit-lj44-00118a-from-philips-50mf231d-40.htm. Link to a |

| | |
|---|---|
| | photo of the PCB. Make a note of the location of all cable connections then unplug them all. Un-install PCB, Check a Fuse first. I believe there are 5 or 6 of them on the PCB. **Then replace the two 3300uf 10v 105C Radial capacitors at C8060 & C8059**. The location of the caps are in the Lower bottom edge of the PCB. A local shop may Carrie them if not, digi-key has them. |
| Techlore.com<br>June 10, 2009 | The only solution is an authorized Philips repair shop. BOHICA! I have a 52" Philips plasma ambilight. **I have had nothing but trouble with it, to include the no picture blinking red light problem. I had to upgrade the firmware to get it working the first time and it went out again.** Now it is in the shop for this X-board. (parts and labor $350 plus $75 to diagnose) From reading all the problems, it seems that this x-board is a manufacturing issue. **Mine seemed to go out as soon as the warranty was done too**. |
| Consumeraffairs.com<br>June 28, 2009 | I have a Magnavox 32" digital widescreen LCD HDTV w/ ATSC/QAM tuner purchased 12/16/06 from Sears. Six weeks ago while watching TV there was a popping sound in the front of the set near the green power on/off switch. It has not had power since then. . . . . Problems with this set after only 2 ½ years! |
| Fixya.com<br>July 15, 2009 | My Philips 32 inch LCD TV **does not turn on and its LED blinks 6 times in red, stops and blinks 6 again continuously**. This started only after 1 week of use. |
| Consumeraffairs.com<br>September 28, 2009 | In July of 2007, we purchased a Philips 19" LCD TV model 19FPL5622D/37B. It lasted about 9 months before acting up with intermittent sound and picture. I had contacted CSR and since it was still under warranty, they sent me a replacement (refurbished) unit. Well, it is now 9 months with the replacement unit and IT is acting up in exactly the same manner. . . . If both of these units failed in exactly the same way at exactly the same point in their lifespan, **this has to be a design or component** |

| | |
|---|---|
| | **flaw from Philips yet they will not acknowledge it.** |
| Fixya.com<br>November 3, 2009 | I Have a Philips LCD TV. Recently **the picture disappeared** and only sound and can change channels too. **I was told I need to repair the power supply!** |
| Consumeraffairs.com<br>November 27, 2009 | I bought a 50" Philips Plasma TV from Costco in early 2007. At the time this was an expensive TV at $2700 which was nearly $3k with the tax. During the first year, it failed and I had it repaired under warranty. **A few months after the warranty expired.... the TV expired again. I called Philips customer service and they were completely useless**.<br><br>I asked the repairman why it failed so quickly especially since the **TV was supposed to be rated for 60,000 hours** and we were les than a tiny fraction of that. He said **Phillips lies and he seems many failures in the first year and many failures thereafter.** Now it is nearly 4 years ago and it died again, the infamous 7 rd light blinks that so many have experienced. Bottom line is that Phillips is a lousy company with lousy service to boot. |
| Consumeraffairs.com<br>November 29, 2009 | My husband and I purchased a 42" Philips plasma TV from Brandsmart in 2007 for $1,700. In Aug of 2008, **the TV started blinking a red light approximately 7 times. Warranty was expired and Philips would not give any info because no warranty. NEVER BUY ANY PHILIPS PRODUCTS EVER unless you like giving away your money!** |
| Consumeraffairs.com<br>December 5, 2009 | I bought the TV a year ago. My TV blew out and its a 52'inch and **it keeps flashing a red light**. And I **called Phillips and they keep telling me they cant help me I paid all that money for it I think they should give me a better solution than that and I want something done about it and don't just hang up on me** |

(Emphasis added, edited for readability purposes).

**Defendant Philips Has Had Knowledge Of The Design Defect Since 2003 But Has Failed To Accept Full Financial Responsibility**

63. Philips has had knowledge of the design defect in the Philips/Magnavox Flat Screen TVs since as early as 2003 but has failed to issue a recall of the Philips/Magnavox Flat Screen TVs in order to cure the design defect described herein.

64. Defendant Philips' actual knowledge of the defective Philips/Magnavox Flat Screen TVs is demonstrated by the numerous complaints described above, and as set forth below.

**Philips' Prior Experience With Failing Capacitors In Its CRT TVs Put Philips On Notice Of The Need To Manufacture The Philips/Magnavox Flat Screen TVs With The Appropriate Capacitors**

65. Before Philips began marketing and selling the Philips/Magnavox Flat Screen TVs, Philips experienced the same problem with the capacitors failing in its traditional cathode ray tube, or CRT, televisions, in sets manufactured before June of 2004. The defect resulted in what Philips called a "dead set."

66. As early as 2005 and continuing through late 2008, Philips outsourced its "customer support" to a company called Computer Generated Solutions, Inc. (CGS) headquartered in New York, New York. CGS employed Philips Technical Support Technicians ("Philips Technicians")

who were employed in a "call center" and who were responsible for providing telephone customer support for purchasers of Philips/Magnavox electronics. In late 2008, Funai began operating the call center which responded to all inquiries from purchasers of Philips/Magnavox electronics products, whether manufactured by Philips or Funai.

67.     According to one former Philips Technician who was employed by CGS during 2005, the Philips/Magnavox CRT televisions were referred to internally as "PT bombs," because as a result of the CRT TVs being designed with the wrong capacitors, the CRT TVs had a set time before they went off.  According to this Philips Technician, the only way to solve the problem with these "PT bombs" was to replace the improperly designed capacitors with new capacitors with the "right load."  Moreover, this Philips Technician referred consumers experiencing this problem to a website called www.badcapacitors.com in order to purchase replacement capacitors.

**Defendant Philips Had Actual Knowledge**
**Of The Defective Philips/Magnavox Flat**
**Screen TVs As A Result Of Its Design**
**And Testing The Philips/Magnavox Flat Screen TVs**

68.     Defendant Philips has had actual knowledge of the defective Philips/Magnavox Flat Screen TVs as a result of its design and testing the Philips/Magnavox Flat Screen TVs, during which Philips became aware that Flat Screen TVs operate at high temperatures and high voltage which put

38

strain on the electronic components, and in particular, the capacitors.  Philips knew that the internal circuit boards and the individual electronic components of those circuit boards, namely the capacitors that are found on the PSB and SSB in the Philips/Magnavox Flat Screen TVs, would be subjected to these high temperatures and high voltage and that under normal operation usage these electronic components and circuit boards would fail after a certain period of time – usually soon after the expiration of the one-year parts warranty period.

69.    Philips knew that it could have designed the Philips/Magnavox Flat Screen TVs to contain circuit boards that could withstand the demands of normal use and/or contained capacitors which operate at high temperatures, at high voltages and/or for longer hours, but chose not to.

**Philips Had Actual Knowledge of the TV Problems
as a Result of Thousands of Customer Complaints
to the Philips Customer Service Call Center**

70.    In addition to the foregoing, Philips received confirmation of the design defect alleged herein as early as 2003, from the thousands of customer complaints that flooded its call centers.

71.    According to Philips Technicians, the Philips/Magnavox Flat Screen TVs were "coded" to cause red lights to blink on the front control panel in a particular sequence when the Philips/Magnavox Flat Screen TVs

encountered certain mechanical problems. These "error codes" – and how to fix them – are set forth in a Service Manual provided to authorized service technicians. For example, if there was a problem with the PSB, red lights would blink in a particular pattern to direct the service technician to the source of the problem.

72.    According to one Philips Technician employed by CGS between 2005 and 2007, approximately 80% of the Philips/Magnavox Flat Screen TV related calls he received at the customer support call center concerned a malfunctioning Philips/Magnavox Flat Screen TV. Indeed, this Technician stated that many calls related to "blinking lights" problems were ultimately traced to malfunctioning PSBs. Moreover, according to this former Philips Technician, the blinking lights problem was one of the most prevalent problems telephoned into the CGS call center and manifested as early as 3 or 4 months after purchase. This Philips Technician quit his job at CGS because his job became too stressful since there were so many angry callers about the defective Philips/Magnavox Flat Screen TVs.

73.    This same Technician stated that in 2006, Philips/Magnavox experienced a very high product-return rate for their Flat Screen TVs. The problems were so rampant that, according to this Philips Technician, Philips switched manufacturing facilities in 2006 from Singapore to Mexico in

hopes of improved quality control. Even after the switch, the TV Problem persisted.

74.     Rather than accept responsibility for the design defect, Philips/Magnavox blamed its customer support representatives for not effectively helping its consumers.  According to a Philips Technician, there was nothing a Philips Technician could do to help customers over the telephone because the "Philips/Magnavox televisions were defective and the only way to fix the problem was to have the television serviced by a Philips/Magnavox-certified technician."  This Technician went so far as to call the Philips/Magnavox Flat Screen TVs a "piece of junk."

75.     Philips Technicians were also instructed to send out-of-warranty customers to a local repairperson rather than having Philips/Magnavox take responsibility for repairing the TVs.  These instructions were posted on the "Board" – a database that every CGS employee had access to and viewed for customer service calls.  Indeed, many consumers of Philips/Magnavox Flat Screen TVs have complained that if their Philips/Magnavox Flat Screen TVs were out of warranty, they could not get through the call center switchboard to reach a Philips Technician.

76.    The problems plaguing the Philips/Magnavox Flat Screen TVs were so prevalent that by 2006, Philips had CGS create a "Platinum Team" of "elite" Philips Technicians charged with addressing these customer complaints.  According to one Platinum Team Technician, 50% of her calls dealt with the blinking lights issue, with the remaining calls dealing with set-up and other instructional matters.  This Platinum Team Philips Technician stated that the Platinum Team could not help Philips/Magnavox Flat Screen TV consumers over the phone a majority of the time because the Philips/Magnavox Flat Screen TVs' "had a manufacturing problem that [the Platinum team] couldn't really help consumers with – it was Philips' responsibility to help consumers at that point."  In other words, the Philips/Magnavox Flat Screen TVs were defective and required a service technician to repair the problem.

77.    Aware of the problems plaguing the Philips/Magnavox Flat Screen TVs as early as 2005, Philips had its Philips Technicians instruct Philips/Magnavox Flat Screen TV purchasers who were experiencing no picture and flashing red lights to download a "firmware update" to their Philips/Magnavox Flat Screen TVs.  One version of this firmware update was the December 2007 update titled "Firmware Upgrade - Software, Version: 1.5.0.0" and was available for download via the Philips consumer

products website.  According to the Philips consumer website, the firmware update, BX23U-1.4.0.0_03081, was designed to solve the "issue related to intermittent video loss."  BX23U-1.0.8.0 00841 was designed to solve the problem characterized by "intermittent black flashes seen with specific distribution amplifiers."  Firmware Upgrade Version 1.5.0.0 also included many other software files designed to fix various other issues and/or improve certain performance characteristics of the television model.

78.     These firmware updates, however, were ineffective.   As experienced by Philips/Magnavox Flat Screen TV purchasers, and confirmed by Philips Technicians, these firmware upgrades very rarely fixed the problem.   Indeed, in some cases, the firmware upgrade simply served to postpone the Philips/Magnavox Flat Screen TVs' failure until after the one-year warranty expired.

79.     On May 31, 2007, Philips released another firmware update for the 42PF9630A/37 model of plasma television.  The update was titled "Firmware Upgrade - Software, Version: 1.6.0.0" and was available for download via the Philips consumer products website.  The Firmware Upgrade Version 1.6.0.0 included many of the previously released firmware updates, including, BX23U-1.4.0.0_03081 and BX23U-1.0.8.0 00841. According to the Philips consumer website, BX23U-1.4.0.0_03081 was

designed to solve the "issue related to intermittent video loss." BX23U-1.0.8.0 00841 was designed to solve the problem characterized by "intermittent black flashes seen with specific distribution amplifiers." Firmware Upgrade Version 1.6.0.0 also included many other software files designed to fix various other issues and/or improve certain performance characteristics of the television model.

80.    Consumers who have downloaded these "Firmware updates" have complained that they either did not solve the problem of their Philips/Magnavox Flat Screen TVs turning themselves off, or simply alleviated the problem for a few days, when eventually their Philips/Magnavox Flat Screen TVs, would completely fail.  According to another Philips Technician, these firmware updates had nothing to do with the failures being experienced by the consumers

81.    According to another Philips Technician employed by CGS during the period 2005 through September 2009, approximately 70% to 80% of the complaints he received on a daily basis concerned Philips/Magnavox Flat Screen TVs malfunctioning.  This Philips Technician attributed most of the malfunctions to problems with the PSBs, and explained that the Philips Technicians were instructed to advise complaining customers to unplug and re-plug their Philips/Magnavox Flat Screen TVs in order to attempt to reset

44

the televisions.  If the television did not reset, according to this Philips Technician, "there was only so much we could do as customer support since it was a mechanical issue that needed field service."  Consumers would then be referred to a Philips/Magnavox-certified servicer; if the consumer was out of warranty, the consumer would have to pay for all costs.

82.   With respect to the blinking lights, this Philips Technician stated that when customers encountered this issue, he instructed them to "unplug the television and hold down the power button, which would reset the motherboard."  This rarely worked, according to the Philips Technician, and "19 times out of 20, it was a power supply problem" which needed a costly repair.

83.   The problems encountered by thousands of purchasers of the Philips/Magnavox Flat Screen TVs were brought to the attention of Philips by CGS.

84.   According to one Philips Technician, whenever there was a high frequency of the same complaint, the Level 1 Philips Technicians (who dealt with customers) and Level 2 Philips Technicians (who dealt with authorized Philips/Magnavox authorized servicers) would notify the "higher-ups" about the problem and they would "hold a lot of meetings to fix the issue."  In addition, this Philips Technician recalled receiving company-wide

e-mails with regards to these meetings and stated that each e-mail would designate specific model numbers and the problems the Philips/Magnavox Flat Screen TVs were having.

85.    Another Philips Technician employed by CGS between February 2006 and October 2007, stated that he would field about sixty calls per week dealing with Philips/Magnavox Flat Screen TVs shutting off and not restarting as a result of the circuit boards overheating.

**Defendant Funai Has Had Knowledge of the Defect Since 2008**

86.    Defendant Funai had actual knowledge of the TV Problem in the Philips/Magnavox Flat Screen TVs it manufactured as a result of its design and testing of the Philips/Magnavox Flat Screen TVs.

87.      Moreover, in addition to its brand licensing agreement with Defendant Philips, Defendant Funai had licensing agreements to research, design, engineer, develop and manufacture flat screen televisions under other brand names including "Sylvania," "Emerson," and "Symphonic." Defendant Funai had knowledge through numerous complaints that the TVs Defendant Funai manufactured under these various brand names had defects similar to the defect that manifests itself in the Philips/Magnavox Flat Screen TVs.   Relevant excerpts from a sampling of these complaints are set forth below:

| Source | Comments |
|---|---|
| Fixya.com<br>November 5, 2007 | I have the same [Sylvania flat screen] TV just a month out of warranty. **It shut off by itself last week and won't come back on.   I tried unplugging it and plugging it back in but no dice.** |
| Fixya.com<br>March 10, 2008 | Our Emerson TV/DVD combo **will not turn on** with the remote or by the power button on the TV. **We have tried to unplug it and replug it, but it's still not working.** |
| Complaintboard.com<br>October 10, 2008 | I bought a Sylvania LCD TV and 6 months later **it stopped working**. Not a great endorsement for the company but I figured it happens. The 2 months that followed were horrible. **This company specializes in vague answers and lies**. |
| Consumeraffairs.com<br>December 3, 2008 | I bought a Emerson 32 HDTC EM82.  I had the TV for 3 months and then it stopped working. **When I try to turn it on it shuts itself off. I looked on line and I see hundreds of other people having the same problem with the same TV.** Emerson wants to charge to fix these brand new TVs.<br><br>I don't think we as consumers should have to pay for a brand new TV to be fixed by a company who is obviously selling a faulty product. |
| Consumeraffairs.com<br>March 18, 2009 | I purchased a 32 Digital/analog LCD TV from Wal-mart in Texas.  I had it less than a year and now it is malfunctioning. When I turn the television on it blinks for about 2 seconds and then returns back to standby; **in a nutshell it automatically shuts off after two seconds.** However, since I had it for more than 90 days I must pay for labor fees, Although it is faulty by no fault of mine.<br><br>Today I decided to check and see if there had been others who might have experienced this same problem, I wish I would have check prior to purchase. Obviously there is a problem with this model and the date it was manufactured (12/07) and |

|  | I think Emerson as a company should just bite the bullet and request for a recall on these TVs. |
|---|---|
| Consumeraffairs.com March 21, 2009 | I bought an Emerson LC320em82s at WalMart. I paid approximately 700.00 dollars for this TV and it quit working after only 6 months. **We turn the TV on and it displays the digital T sign and then automatically shuts off**. I have seen on the internet where so many other people have had the same problem. I think Emerson should be forced to recall this particular model. |
| Consumeraffairs.com May 18, 2009 | My husband and I bought three identical TVs, Sylvania LC420SS8. I bought mine first on Jan 11, 2008, my husband bought one just like it about a week later and then I bought my son one about another week later. Seemed like a good deal for a 42" TV.  Well, **my husband's just went black and never came back on within three weeks. It is now five months since I bought mine and tonight it just went black and does not show any signs of life. I called the customer service number on the back of the TV and the lady told me to unplug the TV from the outlet for 30 minutes and then plug it back in to reset it. I did that and it's still no life.** |
| Consumeraffairs.com December 2, 2009 | Bought an Emerson 32" flat screen, has this product for about 2 years, used only 7 or 8 months, It was bought for a summer home, paid 560.00 for it from Wal-Mart. **I was watching it and it stopped working, won't turn back on**, check the fuse, nothing works. |

(Emphasis added, edited for readability purposes).

### Despite The Philips/Magnavox Flat Screen TV Defect Defendants Refuse To Inform Purchasers About The Design Defect

88.    Despite the thousands of complaints that Philips received as early as 2003 from its customers about the Philips/Magnavox Flat Screen TVs, Philips stayed the course and continued to conceal the existence of the

design defect from the consumer public. Its successor for the Philips/Magnavox brand, Defendant Funai, continues to refuse to repair or replace the Philips/Magnavox Flat Screen TVs that fail within the reasonably expected useful life because of the design defect.

89.    Despite years of customer complaints, Defendants never informed any purchasers of the Philips/Magnavox Flat Screen TVs of the existence of the design defect at the point of sale or thereafter.  Defendants never issued a recall of the Philips/Magnavox Flat Screen TVs and never offered to replace the defective Philips/Magnavox Flat Screen TVs with redesigned working components or complete replacement.  Defendants have wrongfully passed the expense and difficulties involved in repairing or replacing the Philips/Magnavox Flat Screen TVs along to Plaintiffs and other members of the Class, who purchased the defective Philips/Magnavox Flat Screen TV.

90.    Defendants expressly warrant the Philips/Magnavox Flat Screen TVs against defect in material or workmanship, as follows: ninety days for labor and one year for parts from the day of purchase.  In cases were the electronic circuit boards and electronic components, including the PSB or SSB, failed after the first year of purchase, Defendants have imposed and continue to impose hundreds of dollars of parts, service, and labor fees

on the customer to have the defective electronic circuit boards and electronic components, including the PSB and SSB, within the Philips/Magnavox Flat Screen TVs replaced.

91.    Defendants' wrongful acts have caused Plaintiffs and members of the Class to incur ascertainable losses in the cost of repair and loss of use and value of their Philips/Magnavox Flat Screen TVs.

92.    Despite Defendants' awareness of these defects, Defendants have nonetheless refused to take action to protect Class members from these design defects.

93.    Defendants never revealed the existence of the defect on their websites or marketing materials, where they tout the characteristics of the Philips/Magnavox Flat Screen TVs.

94.    Furthermore, the defect described herein was a material fact related to the reliability and normal operation of the Philips/Magnavox Flat Screen TVs known only to Defendants.

95.    Defendants have made numerous affirmative representations about the high quality of the Philips/Magnavox Flat Screen TVs.  For example, the Magnavox customer support website asserts that "Magnavox products have been designed and manufactured to the highest quality standards."  Similarly, the "About Us" section of the Magnavox website says

that "Magnavox has harnessed its efforts to focus on the specific mission of providing the highest performance and quality at a most affordable price." Defendants have also asserted that their Philips/Magnavox Flat Screen TVs have a panel life of at least 60,000 hours, and a purchaser can expect an even longer life.

96.    Had Plaintiffs and members of the Class known about the defect, they would not have purchased their Philips/Magnavox Flat Screen TVs.

97.    Defendants, at all relevant times, knew that Plaintiffs and members of the Class did not know, or could not have reasonably discovered, the design defect inherent in the Philips/Magnavox Flat Screen TVs prior to purchasing their defectively designed Philips/Magnavox Flat Screen TVs.

## **CLASS ACTION ALLEGATIONS**

98.    Plaintiffs bring this action both individually and as a class action pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and 23(b)(3) against Defendants, on their own behalf and on the behalf of the following Class:

> All consumers in the United States that purchased one or more of the Philips/Magnavox Flat Screen TVs during the Class Period.

99.    Members of the Class are so numerous that joinder of all members would be impracticable.   Plaintiffs estimate that there are thousands of members of the Class.

100.   There are questions of law and fact common to all the members of the Class that predominate over any questions affecting only individual members, including:

  a.  Whether the Philips/Magnavox Flat Screen TVs are defectively designed;

  b.  Whether Defendants knew, or were reckless in not knowing, that the Philips/Magnavox Flat Screen TVs were defectively designed at the times that they sold the Philips/Magnavox Flat Screen TVs to Class members; and

  c.  Whether as a result of Defendants' misconduct, Plaintiffs and other Class members are entitled to damages, restitution, equitable relief, injunctive relief, or other relief, and the amount and nature of such relief.

101.   The claims of Plaintiffs are typical of the claims of the members of the Class.  Plaintiffs have no interests antagonistic to those of the Class, and Defendants have no defenses unique to the individual Plaintiffs.

102.   Plaintiffs will fairly and adequately protect the interests of the Class and have retained attorneys experienced in class and complex litigation.

103.   A class action is superior to all other available methods for this controversy because: i) the prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; ii) the prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for Defendants; iii) Defendants acted or refused to act on grounds generally applicable to the Class; and iv) questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

104.   Plaintiffs do not anticipate any difficulty in the management of this litigation.

105.   Defendants have acted or refused to act on grounds generally applicable to the Classes and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

## TOLLING OF THE STATUTES OF LIMITATIONS

106.   The causes of action alleged herein accrued upon discovery of the latently defective nature of the Philips/Magnavox Flat Screen TVs. Because the defect alleged herein is latent and because Defendants took steps to conceal the true character, nature, and quality of the Philips/Magnavox Flat Screen TVs, among other reasons, Plaintiffs and other members of the Class did not discover and could not have discovered the problems and defects alleged herein through the exercise of reasonable diligence.

107.   Any applicable statutes of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts as alleged herein.  Plaintiffs and the other members of the Class have been kept ignorant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their parts.  Plaintiffs and Class members could not reasonably have discovered the defects and problems alleged herein because of Defendants' fraudulent concealment.

108.   Defendants were and are under a continuous duty to disclose to Plaintiffs and the other members of the Class the true character, quality, and nature of the Philips/Magnavox Flat Screen TVs.  Defendants knowingly, affirmatively, and/or actively concealed, and continue to conceal, the true character, quality and nature of the Philips/Magnavox Flat Screen TVs.

109.   Defendants knew or should have known that Plaintiffs and the other Class members would reasonably rely on Defendants' knowing, affirmative, and/or active concealment.  Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## COUNT I

**(By Plaintiff Marshall, Individually, And On Behalf Of All Members Of The Class In All 50 States Who Purchased A New Philips/Magnavox Flat Screen TV During the Class Period Against Defendant Funai For Violations Of The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq.)**

110.   Plaintiff Marshall hereby repeats and realleges the preceding paragraphs as if fully set forth herein.

111.   This count is brought against Defendant Funai,  pursuant to the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq.

112.   New Jersey's substantive laws apply to this proposed nationwide Class because Plaintiff properly brings this Complaint in this District.

113.   New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.  New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

114.   Defendant Funai's headquarters and principal place of business is located in New Jersey.  Defendant Funai also owns property and conducts substantial business in New Jersey and, therefore, New Jersey has an interest in regulating Defendant Funai's conduct under its laws.  Defendant Funai's decision to reside in New Jersey and avail itself of New Jersey's laws renders the application of New Jersey law to the claims herein constitutionally permissible.

115.   A substantial number of members of the Class also reside in New Jersey and purchased the Philips/Magnavox Flat Screen TVs in New Jersey.

116.   New Jersey is also the State from which Defendant Funai's misconduct emanated.   This conduct similarly injured and affected all Plaintiff and Class members.   For instance, Defendant Funai's marketing and advertising efforts were likely created in and orchestrated from the location of its present headquarters in New Jersey.

117.   The application of New Jersey's laws to the Class is also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the Plaintiff and the Class, and New Jersey has a greater interest in applying its laws here than any other interested state.

118.   At all times relevant herein, New Jersey's Consumer Fraud Act was in effect.  The Act prohibits any "[f]raud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice."

119.   Further, the Act prohibits any "knowing, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission in connection with the sale ... of any merchandise ...."  N.J. Stat. Ann. § 56:8-2.

120.   Plaintiff and Class members reasonably expected their Philips/Magnavox Flat Screen TVs to last well beyond the ninety-day/one-year period included in the warranty.  Most industry buying guides, and the

Defendants themselves, have stated that flat screen TVs should last over 60,000 hours.

121.   From September 1, 2008 to the present, Defendant Funai developed, manufactured, marketed and sold the Philips/Magnavox Flat Screen TVs.

122.   Moreover, pursuant to the five-year minimum brand licensing agreement Funai Electric Company of Japan entered into with Philips' parent, Funai assumed responsibility for all Philips-branded consumer television activities in the United States.  Thus, not only did Funai begin manufacturing and selling the Philips/Magnavox Flat Screen TVs after September 2008, Funai began providing customer service and warranty service to the Class, as evidenced by Funai replacing CGS as Philips customer service representative in the United States.

123.   The Philips/Magnavox Flat Screen TVs are defective because normal operation and usage of the TVs exposes the capacitors that are found on the PSB, SSB and other "boards" within the Philips/Magnavox Flat Screen TVs to excessive heat and voltage during normal operation, which, in turn, causes the capacitors on the PSB, SSB, and other "boards" to fail and thereby causes the Philips/Magnavox Flat Screen TV to fail.

124.   Defendant Funai had knowledge of the design defect at least as early as 2008, from pre-market testing, communications with Defendant Phillips in connection with Funai's purchase of the Philips/Magnavox license, and then from numerous consumer complaints and warranty claims relating to TVs it manufactured.

125.   In addition, Defendant Funai had actual knowledge as a result of its design and testing the Philips/Magnavox Flat Screen TVs, during which Defendant Funai became aware that the Flat Screen TVs operate at high temperatures and high voltage which affect the performance and life of the components found on the internal circuit boards, including the capacitors that are found on the PSB and SSB in the Philips/Magnavox Flat Screen TVs.

126. Plaintiff   and   Class   members   were   not   aware   the Philips/Magnavox TVs were defective at the time of sale.

127.   Despite Defendant Funai's knowledge or prior notice of the defect, it omitted this material fact with the intent that Plaintiff and Class members act upon this material omission.   Further, Defendant Funai continued to place defective Philips/Magnavox Flat Screen TVs into the stream of commerce.

128.   Defendant intentionally concealed information about the defect from Plaintiff and Class members for the purpose of maximizing profit.

129.   Had Plaintiff and Class members known the Philips/Magnavox Flat Screen TVs were defective, they would not have purchased them because the existence of the defect was a material fact to the transaction. Defendant Funai, at all relevant times, knew or should have known that Plaintiff and members of the Class did not know or could not have reasonably discovered the defect prior to their purchases.

130.   By paying monies for these defective Philips/Magnavox Flat Screen TVs, Plaintiff and members of the Class have suffered an ascertainable loss.

131. Defendant Funai's conduct constitutes a violation of New Jersey's Consumer Fraud Act and entitles Plaintiff and members of the Class to relief under this statute of statutory and actual damages, injunctive relief, and attorneys' fees and costs.

## COUNT II

**(By Plaintiff Marshall, Individually And On Behalf Of All Members Of The Class In All 50 States Who Purchased A New Philips/Magnavox Flat Screen TV During the Class Period Against Defendant Funai For Breach Of The Implied Warranty Of Merchantability, Pursuant To N.J. Stat. § 12A: 2-314)**

132.   Plaintiff Marshall hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

133.   This count is brought against Defendant Funai for breach of the implied warranty of merchantability, pursuant to N.J. Stat. § 12A: 2-314.

134.   The Philips/Magnavox Flat Screen TVs are "goods" within the meaning of that term under the New Jersey statute that was in effect at all relevant times herein  governing the Implied Warranty of Merchantability.

135.   Defendant Funai is a "merchant" within the meaning of that term under the New Jersey statute that was in effect at all relevant times herein governing the Implied Warranty of Merchantability because Defendant Funai is a seller and manufacturer of Philips/Magnavox Flat Screen TVs.

136.   The Implied Warranty of Merchantability, codified under N.J. Stat. § 12A: 2-314, requires, among other things, that the Philips/Magnavox Flat Screen TVs pass without objection in the trade and are fit for the

ordinary purposes for which the Philips/Magnavox Flat Screen TVs are used.

137. The Philips/Magnavox Flat Screen TVs are defectively designed because normal operation and usage of the television set exposes the circuit boards, including the PSB and SSB, to excessive heat and voltage, which, in turn, causes the PSB and SSB to fail, and therefore, the Philips/Magnavox Flat Screen TVs to exhibit the TV Problem and fail.

138. As a result of the design defect described herein, the Philips/Magnavox Flat Screen TVs were not merchantable at the time of sale and do not function in their ordinary capacity.

139. Defendant Funai's limits on its express warranty are unconscionable. Defendant knowingly sold a defective product without conspicuously informing consumers about the defect. Defendant Funai possessed actual superior knowledge of the defect at least as early as 2008 based on pre-market testing, communications with Defendant Phillips in connection with Funai's purchase of the Philips/Magnavox license, from numerous consumer complaints and warranty claims relating to TVs it manufactured, from complaints posted on the Internet, and complaints made to the Defendant at its call centers.

140.   Defendant Funai concealed material information (that the Philips/Magnavox Flat Screen TVs would prematurely fail) from Plaintiff and Class members.   Defendant acted intentionally with the purpose of maximizing profit.

141.   The time limits contained in Defendant Funai's written limited warranties are grossly inadequate to protect the Plaintiff and members of the Class.   Among other things, Plaintiff and members of the Class had no meaningful choice in determining those time limitations; the warranties were written by Defendant, without input of the Plaintiff or Class members; the terms of the limited warranties unreasonably favored Defendant by creating a ninety-day/one-year warranty limitation on a product consumers could reasonably expect to last over 60,000 hours; a gross disparity in bargaining power existed as between Defendant and Class members; and Defendant knew or should have known that the Philips/Magnavox Flat Screen TVs were defective at the time of sale and would fail well before the end of their useful lives, thereby rendering the time limitations insufficient, inadequate, and unconscionable.

142.   The defects in the Philips/Magnavox Flat Screen TVs rendered them non-merchantable because they could not be used for their ordinary purposes and thereby proximately caused the economic damages suffered by

Plaintiff and members of the Class.   The amount of damages will be ascertained at trial.

## COUNT III

### (By Plaintiff Marshall, Individually, And On Behalf Of All Members Of The Class In All 50 States Class Who Purchased A New Philips/Magnavox Flat Screen TV During the Class Period Against Defendant Funai For Unjust Enrichment)

143.   Plaintiff Marshall hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.   This claim is plead in the alternative to the warranty and contractual based claims, pursuant to FED. R. CIV. P. 8(d)(2).

144.   This Count is brought against Defendant Funai pursuant to New Jersey's common law doctrine of unjust enrichment.

145.   From September 2008 through the present, Defendant Funai manufactured and sold the Philips/Magnavox Flat Screen TVs with the design defect alleged herein.   The Philips/Magnavox Flat Screen TVs are defectively designed because under normal operation, the Philips/Magnavox Flat Screen TVs exhibit the TV Problem and fail.

146.   Defendant Funai had knowledge of the existence of this design defect since as early as 2008.

147.   Despite Defendant's knowledge of the design defect, Defendant Funai has failed to disclose the existence of this defect -- a clearly material

fact -- to Plaintiff and Class members, at the times each of them purchased their Philips/Magnavox Flat Screen TVs.

148.   Defendant Funai was indirectly enriched by Plaintiff and members of the Class, who, without knowledge of the design defect, made payments for their Philips/Magnavox Flat Screen TVs.

149.   Plaintiff's and Class members' payments to Defendant Funai for the Philips/Magnavox Flat Screen TVs impoverished Plaintiff and the Class.

150.   Defendant Funai has no justification for the enrichment conferred upon it by Plaintiff and other Class members since the Philips/Magnavox Flat Screen TVs were not capable of normal operation and usage.

151.   Any express warranty provided by Defendant Funai at the time of sale does not cover design defects, and therefore, does not preclude Plaintiff's unjust enrichment claim.

152.   Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Defendant must pay restitution in a manner established by the Court.

153.   Failing to require Defendant Funai to provide remuneration under these circumstances would result in Defendant being unjustly enriched at the expense of Plaintiff and members of the Class.

154.   Defendant was and continues to be unjustly enriched at the expense of Plaintiff and members of the Class.

155.   Defendant's retention (without an offsetting return payment) of the benefit conferred upon them by Plaintiff and members of the Class would be unjust and inequitable.

## COUNT IV

**(By Plaintiff Mancinelli, Individually, And On Behalf Of All Members Of The Class Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of New Jersey During the Class Period Against Defendants For Violations Of The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq.)**

156.   Plaintiff Mancinelli hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

157.   This count is brought against Defendants pursuant to the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq.

158.   At all times relevant herein, New Jersey's Consumer Fraud Act was in effect.  The Act prohibits any "[f]raud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice."

159. Further, the Act prohibits any "knowing, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission in connection with the sale ... of any merchandise ...." N.J. Stat. Ann. § 56:8-2.

160. Plaintiff and Class members reasonably expected their Philips/Magnavox Flat Screen TVs to last well beyond the ninety-day/one-year periods included in the warranty. Most buying guides state that flat screen TVs should last over 60,000 hours.

161. Defendants developed, manufactured, marketed and sold the Philips/Magnavox Flat Screen TVs. The Philips/Magnavox Flat Screen TVs are defective because normal operation and usage of the TVs exposes the capacitors that are found on the PSB, SSB and other "boards" within the Philips/Magnavox Flat Screen TVs to excessive heat and voltage during normal operation, which, in turn, causes the capacitors on the PSB, SSB and other "boards" to fail and thereby causes the Philips/Magnavox Flat Screen TV to exhibit the TV Problem and fail.

162. Defendants had knowledge of the design defect as early as 2003 as a result of numerous consumer complaints and warranty claims relating to the "Red Blinking Light" problem and total system failure.

67

163.   In addition, Defendants had actual knowledge as a result of its design and testing the Philips/Magnavox Flat Screen TVs, during which Defendants became aware that the Flat Screen TVs operate at high temperatures and high voltage which affect the performance and life of the components found on the internal circuit boards, including the capacitors that are found on the PSB and SSB, in the Philips/Magnavox Flat Screen TVs.

164.   Plaintiff and these Class members were not aware the Philips/Magnavox TVs were defective at the time of sale.

165.   Despite Defendants' knowledge or prior notice of the defect, it omitted this material fact with the intent that Plaintiff and Class members act upon this material omission.   Further, Defendants continued to place defective Philips/Magnavox Flat Screen TVs into the stream of commerce.

166.   Defendants intentionally concealed information about the defect from Plaintiff and Class members for the purpose of maximizing profit.

167.   Had Plaintiff and Class members known the Philips/Magnavox Flat Screen TVs were defective, they would not have purchased them, because the existence of the defect was a material fact to the transaction. Defendants, at all relevant times, knew or should have known that Plaintiff

and members of the Class did not know or could not have reasonably discovered the defect prior to their purchases.

168.   By paying monies for these defective Philips/Magnavox Flat Screen TVs, Plaintiffs and members of the Class have suffered an ascertainable loss.

169.   Defendants' conduct constitutes a violation of New Jersey's Consumer Fraud Act and entitles Plaintiff and members of the Class to relief under this statute of statutory and actual damages, injunctive relief, and attorneys' fees, and costs.

## COUNT V

**(By Plaintiff Mancinelli, Individually And On Behalf Of All Members Of The Class Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of New Jersey During the Class Period Against Defendants For Breach Of The Implied Warranty Of Merchantability, Pursuant To N.J. Stat. § 12A: 2-314)**

170.   Plaintiff Mancinelli hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

171.   This count is brought against Defendants for breach of the implied warranty of merchantability, pursuant to N.J. Stat. § 12A: 2-314.

172.   The Philips/Magnavox Flat Screen TVs are "goods" within the meaning of that term under the New Jersey statute that was in effect at all relevant times herein  governing the Implied Warranty of Merchantability.

173.   Defendants are "merchants" within the meaning of that term under the New Jersey statute that was in effect at all relevant times herein governing the Implied Warranty of Merchantability because Defendants are sellers and manufacturers of Philips/Magnavox Flat Screen TVs.

174.   The Implied Warranty of Merchantability, codified under N.J. Stat. § 12A: 2-314, requires, among other things, that the Philips/Magnavox Flat Screen TVs pass without objection in the trade and are fit for the ordinary purposes for which the Philips/Magnavox Flat Screen TVs are used.

175.   The Philips/Magnavox Flat Screen TVs are defectively designed because normal operation and usage of the television set exposes the circuit boards, including the PSB and SSB, to excessive heat and voltage, which, in turn, causes the PSB and SSB to fail and shut down, and therefore, the Philips/Magnavox Flat Screen TVs, to exhibit the TV Problem and fail.

176.   As a result of the design defect described herein, the Philips/Magnavox Flat Screen TVs were not merchantable at the time of sale and do not function in their ordinary capacity.

177.   Defendants' limits on its express warranty are unconscionable. Defendants knowingly sold a defective product without conspicuously informing consumers about the defect.  Defendants possessed actual superior

knowledge of the defect at least as early as 2003 based on pre-market testing, complaints posted on the Internet, and complaints made to the Defendants at their call centers.

178.   Defendants   concealed   material   information   (that   the Philips/Magnavox Flat Screen TVs would prematurely fail) from Plaintiff and Class members.   Defendants acted intentionally with the purpose of maximizing profit.

179.   The time limits contained in the Defendants' written limited warranties are grossly inadequate to protect the Plaintiff and members of the Class.   Among other things, Plaintiff and members of the Class had no meaningful choice in determining those time limitations; the warranties were written by Defendants, without input of the Plaintiff or Class members; the terms of the limited warranties unreasonably favored Defendants by creating a ninety-day/one-year warranty limitation on a product consumers could reasonably expect to last over 60,000 hours; a gross disparity in bargaining power existed as between Defendants and Class members; and Defendants knew or should have known that the Philips/Magnavox Flat Screen TVs were defective at the time of sale and would fail well before the end of their useful lives, thereby rendering the time limitations insufficient, inadequate, and unconscionable.

180.   Defendants were put on notice of the defect because they had actual knowledge of the existence of this design defect since as early as 2003.  Furthermore, Plaintiff provided Defendants with notice of the defect via telephone calls.

181.   The defects in the Philips/Magnavox Flat Screen TVs rendered them non-merchantable because they could not be used for their ordinary purposes and thereby proximately caused the economic damages suffered by Plaintiff and members of the Class.   The amount of damages will be ascertained at trial.

## COUNT VI

**(By Plaintiff Mancinelli, Individually, And On Behalf Of All Members Of The Class Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of New Jersey During the Class Period Against Defendants For Unjust Enrichment)**

182.   Plaintiff Mancinelli hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.  This claim is plead in the alternative to the warranty and contractual based claims, pursuant to FED. R. CIV. P. 8(d)(2).

183.  This Count is brought against Defendants pursuant to New Jersey's common law doctrine of unjust enrichment.

184.   At all times relevant hereto, Defendants manufactured and sold the Philips/Magnavox Flat Screen TVs with the design defect alleged herein. The Philips/Magnavox Flat Screen TVs are defectively designed because under normal operation, the Philips/Magnavox Flat Screen TVs exhibit the TV Problem and fail.

185.   Defendants had knowledge of the existence of this design defect since as early as 2003.

186.   Despite Defendants' knowledge of the design defect, Defendants failed to disclose the existence of this defect -- a clearly material fact -- to Plaintiff and Class members, at the times each of them purchased their Philips/Magnavox Flat Screen TVs.

187.   Defendants were indirectly enriched by Plaintiff and members of the Class, who, without knowledge of the design defect, made payments for their Philips/Magnavox Flat Screen TVs.

188.   Plaintiff's and Class members' payments to Defendants for the Philips/Magnavox Flat Screen TVs impoverished Plaintiff and the Class.

189.   Defendants have no justification for the enrichment conferred upon it by Plaintiff and other Class members since the Philips/Magnavox Flat Screen TVs were not capable of normal operation and usage.

190.    Any express warranty provided by Defendants at the time of sale does not cover design defects, and therefore, does not preclude Plaintiff's unjust enrichment claim.

191.    Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Defendants must pay restitution in a manner established by the Court.

192.    Failing to require Defendants to provide remuneration under these circumstances would result in them being unjustly enriched at the expense of Plaintiff and members of the Class.

193.    Defendants were and continue to be unjustly enriched at the expense of Plaintiff and members of the Class.

194.    Defendants' retention (without an offsetting return payment) of the benefit conferred upon them by Plaintiff and members of the Class would be unjust and inequitable.

## COUNT VII

**(By Plaintiff Tejada, Individually And On Behalf Of All Members Of The Class Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of California During the Class Period Against Defendants For Violations Of The California Consumer Legal Remedies Act, Civ. Code § 1750, et seq.)**

195.    Plaintiff Tejada hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

196. This count is brought against Defendants pursuant to the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.

197. At all times relevant herein, the CLRA was in effect. CLRA prohibits "unfair or deceptive acts or practices."

198. Defendants developed, manufactured, marketed and sold the Philips/Magnavox Flat Screen TVs. The Philips/Magnavox Flat Screen TVs are defective because normal operation and usage of the TVs exposes the capacitors that are found on the PSB, SSB and other "boards" within the Philips/Magnavox Flat Screen TVs to excessive heat and voltage during normal operation, which, in turn, causes the capacitors on the PSB, SSB and other "boards" to fail and thereby causes the Philips/Magnavox Flat Screen TV, to exhibit the TV Problem and fail.

199. Defendants had knowledge of the design defect as early as 2003 as a result of numerous consumer complaints and warranty claims relating to the "Red Blinking Light" problem and total system failure.

200. The defect is material, as the Philips/Magnavox Flat Screen TVs cease to function prematurely, and Plaintiff and members of the Class would not have purchased the TVs had they known of the defect.

201.   In addition, Defendants had actual knowledge of the defect as a result of its design and testing the Philips/Magnavox Flat Screen TVs, during which Defendant became aware that the Flat Screen TVs operate at high temperatures and high voltage which affect the performance and life of the components found on the internal circuit boards, including the capacitors that are found on the PSB and SSB in the Philips/Magnavox Flat Screen TVs .

202.   Industry buying guides rate flat screen TVs to have a life span of 60,000 to 100,000 hours, or about 8 hours of daily viewing for at least 20 years.  Philips represented that its plasma flat panel monitors have a "Long expected panel lifetime of over 60,000 hours."   Other advertisements, including one titled, "Philips Plasma TV Offers Sizes To Fit Your Needs," stated that Philips' plasma TVs, "**last a typical 60,000 hours**, which equates to about **27 years of viewing**, on an average of six hours per day," and that "[r]egardless of the size of a Philips plasma TV, proper care and precautions can extend its life beyond expectations."

203.   Ordinary consumers reasonably expect that their expensive flat screen televisions will function well beyond the ninety-day/one-year duration included by Defendants in the warranty.

204.   Plaintiff and these Class members were not aware the Philips/Magnavox TVs were defective at the time of sale and were substantially likely to fail within the reasonably expected lifespan of the product.

205.   Defendants had a duty to disclose its knowledge of this material defect because, *inter alia*, Defendants possessed superior and exclusive knowledge about it pre-marketing testing, its prior problems with CRT TVs, and its call center complaints as early as 2003; Defendants concealed this defect, never recalling the Philips/Magnavox Flat Screen TVs, and never notifying purchasers, even ones who had their Philips/Magnavox Flat Screen TVs replaced under warranty; and Defendants made partial representations about the product's life span.

206.   Defendants failed to disclose to Plaintiff and members of the Class the material fact that the Philips/Magnavox Flat Screen TVs were defective and would prematurely fail.  Defendants' failure to disclose this defect constituted a violation of Cal. Civ. Code §§ 1770(a)(5) and 1770(a)(7).

207.   In or around April 2009, Plaintiff Tejada's Philips/Magnavox Flat Screen TV exhibited the TV Problem and failed as a result of the defect.

208.   On December 1, 2009, Plaintiff Tejada sent Defendant Philips a demand letter, as required by Cal. Civ. Code § 1782.

209.   By paying monies for these defective Philips/Magnavox Flat Screen TVs, Plaintiff and members of the Class have suffered an ascertainable loss.

210.   Defendants' conduct constitutes a violation of the CLRA and entitles Plaintiff and members of the Class to relief under this statute of statutory and actual damages, punitive damages, restitution, and injunctive relief.

## COUNT VIII

**(By Plaintiff Tejada, Individually, And On Behalf Of All Members Of The Class Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of California During the Class Period Against Defendants For Violations Of California Business & Professions Code § 17200, et seq.)**

211.   Plaintiff Tejada hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

212.   This Count is brought against Defendants pursuant to the California Business and Professions Code §17200, et seq. (the "California UCL").

213.   At all times relevant herein, the California UCL was in effect. The California UCL prohibits unfair business practices.

214.   At all times relevant hereto, Defendants developed, manufactured, marketed, and sold the Philips/Magnavox Flat Screen TVs. The Philips/Magnavox Flat Screen TVs are defective because normal operation and usage of the TVs expose the capacitors that are found on the PSB, SSB, and other "boards" within the Philips/Magnavox Flat Screen TVs to excessive heat and voltage during normal operation, which, in turn, causes the capacitors on the PSB, SSB and other "boards" to fail and thereby causes the Philips/Magnavox Flat Screen TVs to exhibit the TV Problem and fail.

215.   Defendants had knowledge of the design defect as early as 2003 as a result of numerous consumer complaints and warranty claims relating to the "Red Blinking Light" problem and total system failure.

216.   In addition, Defendants had actual knowledge of the defect as a result of its design and testing of the Philips/Magnavox Flat Screen TVs, during which Defendants became aware that the Flat Screen TVs operate at high temperatures and high voltage which affect the performance and life of the components found on the internal circuit boards, including the capacitors that are found on the PSB and SSB, in the Philips/Magnavox Flat Screen TVs.

217.   Defendants failed to disclose to Plaintiff and members of the Class the material fact that the Philips/Magnavox Flat Screen TVs were defective and would prematurely fail.

218.   Plaintiff and these Class members did not have knowledge of the defect at the time of purchase of their Philips/Magnavox Flat Screen TVs.

219.   Plaintiff and Class members reasonably expected their Philips/Magnavox Flat Screen TVs to last well beyond the ninety-day/one-year period included in the warranty.  Most buying guides state that flat screen TVs should last over 60,000 hours.

220.   Defendants' business acts and practices alleged herein are unlawful within the meaning of the California UCL.   Specifically, Defendants' business acts and practices are unlawful because, among other things, they violate the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq. and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§1792, et seq.

221.   Defendants' business acts and practices alleged herein are fraudulent within the meaning of the California UCL.  Specifically, as an entity with exclusive knowledge regarding the defect in the Philips/Magnavox Flat Screen TVs, Defendants had a duty to disclose the

defect to Plaintiff and the other members of the Class.  Plaintiff and the other members of the Class reasonably expected that Defendants would disclose the existence of any defect in the Philips/Magnavox Flat Screen TVs to them, information which is and was material to Plaintiff and the other members of the Class.  Moreover, Defendants, at all relevant times, knew or should have known that Plaintiff and members of the Class did not know or could not have reasonably discovered the defect prior to their purchases.

222.   By failing and refusing to disclose the existence of a defect in the Philips/Magnavox Flat Screen TVs, Defendants have engaged in actionable, fraudulent conduct within the meaning of the California UCL. Had Plaintiff and the other members of the Class known about the defect in the Philips/Magnavox Flat Screen TVs, they would not have purchased the Philips/Magnavox Flat Screen TVs.

223.  Defendants' business acts and practices alleged herein are unfair within the meaning of the California UCL.  Specifically, by failing to disclose and concealing the existence of the defect in the Philips/Magnavox Flat Screen TVs, Defendants have engaged in unfair conduct within the meaning of the California UCL.

224.  The nature of Defendants' misconduct has been consistently recognized as unfair conduct within the meaning of the California UCL as it

offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

225.   Plaintiff and the other members of the Class have suffered actual injuries because, *inter alia*, they have been required to make out-of-pocket payments for repairs arising out of the defect in the Philips/Magnavox Flat Screen TVs.  Furthermore, Plaintiff and the other members of the Class have suffered actual injuries because they paid more to purchase Philips/Magnavox Flat Screen TVs than they would have if all material information, including information regarding the defect in the Philips/Magnavox Flat Screen TVs, had been disclosed to them.

226.   Defendants' unlawful, unfair, and fraudulent business acts and practices continue through the date of this Complaint's filing and, absent a Court order, Defendant will not comply with its obligations under the California UCL .

227.   Under the California UCL, Plaintiff, on his own behalf, and on behalf of all members of the Class, seeks a court order requiring Defendants to immediately cease the above described acts of unfair competition and for all further relief which is available, as well as appropriate and just to grant, under the California UCL.

## COUNT IX

**(By Plaintiff Tejada, Individually, And On Behalf Of All Members Of The Class Who Purchased A New Philips/Magnavox Flat Screen TV In The State of California During the Class Period Against Defendants For Breach Of Implied Warranty Under The Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 et seq.)**

228.   Plaintiff Tejada hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

229.   Under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§1792 et seq., every sale of consumer goods is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable.

230.   The defective Philips/Magnavox Flat Screen TVs at issue are "consumer goods" within the meaning of Cal. Civ. Code §1791(a).

231.   Defendants are "manufacturers" within the meaning of Cal. Civ. Code §1791(j).

232.   Plaintiff Tejada bought a Philips/Magnavox Flat Screen TV sold at retail in the State of California.

233.   At the time of sale, Defendants were in the business of manufacturing and selling Philips/Magnavox Flat Screen TVs.

234.   By operation of law, Defendants impliedly warranted to Plaintiff and Class members that the Philips/Magnavox Flat Screen TVs

were of merchantable quality and fit for the ordinary purposes for which the Philips/Magnavox Flat Screen TVs are used.

235.   Defendants' limits on its express warranty are unconscionable. Defendants knowingly sold a defective product without conspicuously informing consumers about the defect.   Defendants possessed actual superior knowledge of the defect at least as early as 2003 based on pre-market testing, complaints posted on the Internet, and complaints made to Defendants at its call centers.

236.  Defendants concealed material information (that the Philips/Magnavox Flat Screen TVs would prematurely fail) from Plaintiff and similarly situated consumers.   Defendants acted intentionally with the purpose of maximizing profit.

237.   The time limits contained in the Defendants' written limited warranties are grossly inadequate to protect the Plaintiff and members of the Class.   Among other things, Plaintiff and members of the Class had no meaningful choice in determining those time limitations; the warranties were written by Defendants, without input of the Plaintiff or Class members; the terms of the limited warranties unreasonably favored Defendants by creating a ninety-day/one-year warranty limitation on a product consumers could reasonably expect to last over 60,000 hours; a gross disparity in bargaining

power existed as between Defendants and Class members; and Defendants knew or should have known that the Philips/Magnavox Flat Screen TVs were defective at the time of sale and would fail well before the end of their useful lives, thereby rendering the time limitations insufficient, inadequate, and unconscionable.

238.   Defendants had reason to know at the time of sale that the Philips/Magnavox Flat Screen TVs were required for a particular purpose and that Plaintiff and Class members were relying on Defendants' skill or judgment to select or furnish such goods.

239.   As a proximate result of Defendants' breach of implied warranties, Plaintiff and Class members have sustained damages and other losses in an amount to be determined at trial.  Plaintiff and Class members are entitled to recover damages as provided by statute, costs, attorneys' fees, rescission, and other relief as is deemed appropriate.

## COUNT X

**(By Plaintiff Seitsinger, Individually, And On Behalf Of All Members Of The Class Who Purchased A  New Philips/Magnavox Flat Screen TV In The State Of Texas During the Class Period Against Defendants For Violations Of The Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, et seq.)**

240.   Plaintiff Seitsinger hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

241.   This Count is brought against Defendants pursuant to the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, et seq.  ("DTPA").

242.  Plaintiff and Class members reasonably expected their Philips/Magnavox Flat Screen TVs to last well beyond the ninety-day/one-year period included in the warranty.  Most buying guides state that flat screen TVs should last over 60,000 hours.

243.  At all times relevant herein, the DTPA was in effect.  The DPTA prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

244.   Defendants knowingly violated the DTPA because Defendants engaged in false, misleading, and deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.46.

245.  At all times relevant hereto, Defendants developed, manufactured, marketed and sold the Philips/Magnavox Flat Screen TVs. The Philips/Magnavox Flat Screen TVs are defective because normal operation and usage of the TVs exposes the capacitors that are found on the PSB, SSB and other "boards" within the Philips/Magnavox Flat Screen TVs to excessive heat and voltage during normal operation, which, in turn, causes

the capacitors on the PSB, SSB and other "boards" to fail and thereby causes the Philips/Magnavox Flat Screen TV to exhibit the TV Problem and to fail.

246.   Defendants had knowledge of the design defect as early as 2003 as a result of numerous consumer complaints and warranty claims relating to the "Red Blinking Light" problem and total system failure.

247.   In addition, Defendants had actual knowledge as a result of its design and testing the Philips/Magnavox Flat Screen TVs, during which Defendants became aware that the Flat Screen TVs operate at high temperatures and high voltage which affect the performance and life of the components found on the internal circuit boards, including the capacitors that are found on the PSB and SSB, in the Philips/Magnavox Flat Screen TVs.

248. As a result of the design defect described herein, the Philips/Magnavox Flat Screen TVs were not merchantable at the time of sale and do not function in their ordinary capacity.

249. Had Plaintiff and these Class members known the Philips/Magnavox Flat Screen TVs were defective, they would not have purchased them because the existence of the defect was a material fact to the transaction.  Defendants, at all relevant times, knew or should have known

that Plaintiff and members of the Class did not know or could not have reasonably discovered the defect prior to their purchases.

250.   Plaintiff and Class members experienced a manifestation of the defect in their Philips/Magnavox Flat Screen TVs.

251.   Any purported disclaimer of the Implied Warranty of Merchantability on the part of the Defendants is unconscionable and unenforceable because Defendants knew of the existence of the design defect at the time Plaintiff and the Class purchased their Philips/Magnavox Flat Screen TVs.

252.   Despite Defendants' knowledge of the design defect in the Philips/Magnavox Flat Screen TVs, Defendants failed to disclose the existence of the design defect to Plaintiff and members of the Class at the times Plaintiff and members of the Class purchased their Philips/Magnavox Flat Screen TVs.

253.   Thus, Defendants' acts and omissions were knowing and constitute an unconscionable course of action as defined in the DTPA.

254.   By paying monies for these defective Philips/Magnavox Flat Screen TVs, Plaintiff and members of the Class have suffered an ascertainable loss.

255.   Pursuant to the DTPA § 17.505(a), on December 1, 2009, Plaintiff Seitsinger sent the Demand Letter, on his behalf, and on behalf of the Class to Defendants, by certified mail and copied the Texas Attorney General's Office via certified mail.

256.   Defendants' conduct constitutes a violation of the DTPA and entitles Plaintiff and members of the Class to relief under this statute of statutory and actual damages, injunctive relief, and attorneys' fees and costs.

## COUNT XI

**(By Plaintiff Seitsinger, Individually, And On Behalf Of All Members Of The Class Who Purchased A New Philips/Magnavox Flat Screen TV In The State of Texas During the Class Period Against Defendants for Breach of the Implied Warranty of Merchantability, Pursuant To Tex. Bus. & Com. Code Ann. § 2-314)**

257.   Plaintiff Seitsinger hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

258.   This count is brought against Defendants for breach of the implied warranty of merchantability, pursuant to Tex. Bus. Code Ann. § 2-314.

259.   The Philips/Magnavox Flat Screen TVs are "goods" within the meaning of the term under the Texas statute that was in effect at all relevant times herein governing the Implied Warranty of Merchantability.

260. Defendants are "merchants" within the meaning of that term under the Texas statute that was in effect at all relevant times herein governing the Implied Warranty of Merchantability because Defendants are sellers and manufacturers of the Philips/Magnavox Flat Screen TVs.

261. The Implied Warranty of Merchantability, codified under Tex. Bus. Code Ann. § 2-314, requires, among other things, that the Philips/Magnavox Flat Screen TVs pass without objection in the trade and are fit for the ordinary purpose for which the Philips/Magnavox Flat Screen TVs are used.

262. The Philips/Magnavox Flat Screen TVs are defectively designed because normal operation and usage of the television set exposes the circuit boards, including the PSB and SSB, to excessive heat and voltage, which, in turn, causes the PSB and the SSB to fail and shut down, and therefore, the Philips/Magnavox Flat Screen TVs to exhibit the TV Problem and fail.

263. As a result of the design defect described herein, the Philips/Magnavox Flat Screen TVs were not merchantable at the time of sale and do not function in their ordinary capacity.

264. Defendants' limits on its express warranty are unconscionable. Defendants knowingly sold a defective product without conspicuously

informing consumers about the defect.  Defendants possessed actual superior knowledge of the defect at all relevant times based on pre-market testing, complaints posted on the Internet, and complaints made to the Defendants at their call centers.

265.  Defendants concealed material information (that the Philips/Magnavox Flat Screen TVs would prematurely fail) from Plaintiff and Class members.  Defendants acted intentionally with the purpose of maximizing profit.

266.  The time limits contained in the Defendants' written limited warranties are grossly inadequate to protect the Plaintiff and members of the Class.  Among other things, Plaintiff and members of the Class had no meaningful choice in determining those time limitations; the warranties were written by Defendants, without input of the Plaintiff or Class members; the terms of the limited warranties unreasonably favored Defendants by creating a ninety-day/one-year warranty limitation on a product consumers could reasonably expect to last over 60,000 hours; a gross disparity in bargaining power existed between Defendants and Class members; and Defendants knew or should have known that the Philips/Magnavox Flat Screen TVs were defective at the time of sale and would fail well before the end of their

useful lives, thereby rendering the time limitations insufficient, inadequate, and unconscionable.

267.   Defendants were put on notice of the defect because they had actual knowledge of the existences of this design defect at all relevant times. Furthermore, Plaintiff provided Defendants with written notice.

268.   The defects in the Philips/Magnavox Flat Screen TVs rendered them non-merchantable because they could not be used for their ordinary purposes and thereby proximately caused the economic damages suffered by Plaintiffs and members of the Class.   The amount of damages will be ascertained at trial.

## COUNT XII

### (By Plaintiff Seitsinger, Individually, And On Behalf Of All Class members Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of Texas During the Class Period Against Defendants For Unjust Enrichment)

269.   Plaintiff Seitsinger hereby repeats and realleges ¶¶ 1 through 109 above.   This claim is plead in the alternative to the warranty and contractual based claims, pursuant to Fed. R. Civ. P. 8(d)(2).

270.   This Count is brought against Defendants pursuant to Texas' common law doctrine of unjust enrichment.

271.   At all times relevant hereto, Defendants manufactured and sold the Philips/Magnavox Flat Screen TVs with the design defect.   The

Philips/Magnavox Flat Screen TVs are defectively designed because under normal operation, the Philips/Magnavox Flat Screen TVs fail.

272.   Defendants had knowledge of the existence of this design defect alleged herein at all relevant times.

273.   Despite Defendants' knowledge of the design defect, Defendants have failed to disclose the existence of this defect -- a clearly material fact -- to Plaintiff and Class members, at the times each of them purchased their Philips/Magnavox Flat Screen TVs.   This knowledge constitutes an "undue advantage" by Defendants over Plaintiff and Class members.

274.   Moreover, Defendants failure to disclose the design defect constituted a deceptive act that took undue advantage of Plaintiff and the Class.

275.   Defendants were indirectly enriched by Plaintiff and members of the Class, who, without knowledge of the design defect, made payments for their Philips/Magnavox Flat Screen TVs.

276.   Plaintiff's and Class members' payments to Defendants for the Philips/Magnavox Flat Screen TVs impoverished Plaintiff and the Class.

277.   Defendants have no justification for the enrichment conferred upon them by Plaintiff and other Class members since the Philips/Magnavox Flat Screen TVs were not capable of normal operation and usage.

278.   Any express warranty provided by Defendants at the time of sale does not cover design defects, and therefore, does not preclude Plaintiff's unjust enrichment claim.

279.   Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Defendants must pay restitution in a manner established by the Court.

280.   Failing to require Defendants to provide remuneration under these circumstances would result in them being unjustly enriched at the expense of Plaintiff and members of the Class.

281.   Defendants were and continue to be unjustly enriched at the expense of Plaintiff and members of the Class.

282.   Defendants' retention (without an offsetting return payment) of the benefit conferred upon them by Plaintiff and members of the Class would be unjust and inequitable.

## COUNT XIII

**(By Plaintiffs Carter And Juried, Individually And On Behalf Of All Members Of The Class Who Purchased  New Philips/Magnavox Flat Screen TV In The State Of Florida During the Class Period Against Defendants For Violations Of The Florida Deceptive And Unfair Trade**

Practices Act, Section 501.201, et seq., Florida Statutes ("FDUPTA"))

283.   Plaintiffs Carter and Juried hereby repeat and reallege ¶¶ 1 through 109 above as if fully set forth herein.

284.   This count is brought against Defendants pursuant to the Florida Deceptive and Unfair Trade Practices Act, Section 501.201, et seq., Florida Statutes ("FDUPTA").

285.   At all times relevant herein, FDUPTA was in effect.  FDUPTA, inter alia, prohibits any unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

286.    Plaintiffs Carter and Juried and the other members of the Class are "consumers" as that term is defined in Fla. Stat. § 501.203(7).

287.   Plaintiffs Carter and Juried and the other members of the Class are "persons" as that term is used in Fla. Stat. § 501.211, and as that term is defined in Fla. Stat. § 1.01(3).

288.   Plaintiffs and Class members reasonably expected their Philips/Magnavox Flat Screen TVs to last well beyond the ninety-day/one-year period included in the warranty.  Most buying guides state that flat screen TVs should last over 60,000 hours.

289. Defendants developed, manufactured, marketed and sold the Philips/Magnavox Flat Screen TVs. The Philips/Magnavox Flat Screen TVs are defective because normal operation and usage of the TVs exposes the capacitors that are found on the PSB, SSB and other "boards" within the Philips/Magnavox Flat Screen TVs to excessive heat and voltage during normal operation, which, in turn, causes the capacitors on the PSB, SSB and other "boards" to fail and thereby causes the Philips/Magnavox Flat Screen TVs to exhibit the TV Problem and fail.

290. Defendants had knowledge of the design defect at all relevant times as a result of numerous consumer complaints and warranty claims relating to the "Red Blinking Light" problem and total system failure.

291. In addition, Defendants had actual knowledge as a result of their design and testing the Philips/Magnavox Flat Screen TVs, during which Defendants became aware that the Flat Screen TVs operate at high temperatures and high voltage which affect the performance and life of the components found on the internal circuit boards, including the capacitors that are found on the PSB and SSB, in the Philips/Magnavox Flat Screen TVs.

292. Defendants failed to disclose to Plaintiffs and members of the Class the material fact that the Philips/Magnavox Flat Screen TVs were

defective and would prematurely fail.  Defendants' failure to disclose this information constituted a violation of  FDUTPA.

293.   Moreover, had Plaintiff and Class members known the Philips/Magnavox Flat Screen TVs were defective, they would not have purchased them, because the existence of the defect was a material fact to the transaction.   Defendants, at all relevant times, knew or should have known that Plaintiff and members of the Class did not know or could not have reasonably discovered the defect prior to their purchases.

294.   By paying monies for these defective Philips/Magnavox Flat Screen TVs, Plaintiff and members of the Class have suffered an ascertainable loss.

295.   Defendants' violation of FDUPTA entitles Plaintiffs and members of the Class to statutory and actual damages, injunctive relief, and attorneys' fees and costs.

## COUNT XIV

**(By Plaintiff St. Angel, Individually, And On Behalf Of All Members Of The Class Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of Illinois During the Class Period Against Defendants For Violations Of The Illinois Consumer Fraud And Deceptive Business Practices Act, 815, ILCS 505/1, et seq.)**

296.   Plaintiff St. Angel hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

297.   This count is brought against Defendants pursuant to the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815, ILCS 505/1, et seq. ("ICFA").

298.   At all times relevant herein, the ICFA was in effect.  The ICFA prohibits "unfair and deceptive practices."

299.   Plaintiff and members of the Class are consumers.

300.   Plaintiff and Class members reasonably expected their Philips/Magnavox Flat Screen TVs to last well beyond the ninety-day/one-year period included in the warranty.  Most buying guides state that flat screen TVs should last over 60,000 hours.

301.   Defendants developed, manufactured, marketed and sold the Philips/Magnavox Flat Screen TVs. The Philips/Magnavox Flat Screen TVs are defective because normal operation and usage of the TVs exposes the capacitors that are found on the PSB, SSB and other "boards" within the Philips/Magnavox Flat Screen TVs to excessive heat and voltage during normal operation, which, in turn, causes the capacitors on the PSB, SSB and other "boards" to fail and thereby causes the Philips/Magnavox Flat Screen TVs to exhibit the TV Problem and fail.

302.   Defendants had knowledge of the design defect at all relevant times as a result of numerous consumer complaints and warranty claims relating to the "Red Blinking Light" problem and total system failure.

303.   In addition, Defendants had actual knowledge as a result of their design and testing the Philips/Magnavox Flat Screen TVs, during which Defendants became aware that the Flat Screen TVs operate at high temperatures and high voltage which affect the performance and life of the components found on the internal circuit boards, including the capacitors that are found on the PSB and SSB, in the Philips/Magnavox Flat Screen TVs.

304.   Despite Defendants' knowledge of the design defect in the Philips/Magnavox Flat Screen TVs, Defendants have refused to disclose the existence of this defect (a material fact) to Plaintiff and members of the Class at the times each of them purchased their Philips/Magnavox Flat Screen TVs.

305.   Defendants intended, and continue to intend, that the Plaintiff and Class members rely on the omission that Philips/Magnavox Flat Screen TVs are defective.

306.   In failing to inform consumers of the design defect, Defendants have engaged in an unfair or deceptive act prohibited by the ICFA.

307.  If not for Defendants' deceptive and unfair act of concealing from Plaintiff and members of the Class the existence of the design defect in the Philips/Magnavox Flat Screen TVs, Plaintiff and members of the Class would not have purchased the Philips/Magnavox Flat Screen TVs. Defendants, at all relevant times, knew or should have known that Plaintiff and members of the Class did not know or could not have reasonably discovered the defect prior to their purchases.

308.  By paying monies for these defective Philips/Magnavox Flat Screen TVs, Plaintiffs and members of the Class have suffered an ascertainable loss.

309.  Defendants' violation of the ICFA entitles Plaintiffs and members of the Class under the statute to statutory and actual damages, punitive damages, injunctive relief, and attorneys' fees and costs

## COUNT XV

**(By Plaintiff St. Angel, Individually, And On Behalf Of All Members Of The Class Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of Illinois During the Class Period Against Defendants For Unjust Enrichment)**

310.  Plaintiff St. Angel hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

311.  This Count is brought against Defendants pursuant to Illinois' common law doctrine of unjust enrichment.

312.   At all times relevant hereto, Defendants manufactured and sold the Philips/Magnavox Flat Screen TVs with the design defect alleged herein. The Philips/Magnavox Flat Screen TVs are defectively designed because under normal operation, the Philips/Magnavox Flat Screen TVs fail.

313.   Defendants had knowledge of the existence of this design defect at all relevant times.

314.   Despite Defendants' knowledge of the design defect, Defendants have failed to disclose the existence of this defect -- a clearly material fact -- to Plaintiff and Class members, at the times each of them purchased their Philips/Magnavox Flat Screen TVs.

315.   Defendants were indirectly enriched by Plaintiff and members of the Class, who, without knowledge of the design defect, made payments for their Philips/Magnavox Flat Screen TVs.

316.   Plaintiff's and Class members' payments to Defendants for the Philips/Magnavox Flat Screen TVs impoverished Plaintiff and the Class.

317.   Defendants have no justification for the enrichment conferred upon them by Plaintiff and other Class members since the Philips/Magnavox Flat Screen TVs were not capable of normal operation and usage.

318.   Any express warranty provided by Defendants at the time of sale does not cover design defects, and therefore, does not preclude Plaintiff's unjust enrichment claim.

319.   Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Defendants must pay restitution in a manner established by the Court.

320.   Failing to require Defendants to provide remuneration under these circumstances would result in them being unjustly enriched at the expense of Plaintiff and members of the Class.

321.   Defendants were and continue to be unjustly enriched at the expense of Plaintiff and members of the Class.

322.   Defendants' retention (without an offsetting return payment) of the benefit conferred upon them by Plaintiff and members of the Class would be unjust and inequitable.

## COUNT XVI

**(By Plaintiffs Hennessy And Umble, Individually, And On Behalf Of All Members Of The Class Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of Pennsylvania During the Class Period Against Defendants For Breach Of The Implied Warranty Of Merchantability, Pursuant To 13 Pa. Cons. Stat. § 2314, et seq.)**

323.   Plaintiffs Hennessy and Umble hereby repeat and reallege ¶¶ 1 through 109 above as if fully set forth herein.

324.   This count is brought against Defendants for breach of the implied warranty of merchantability, pursuant to 13 Pa. Cons. Stat. § 2314, et seq.

325.   The Philips/Magnavox Flat Screen TVs are "goods" within the meaning of the Pennsylvania statute that was in effect at all relevant times herein governing the Implied Warranty of Merchantability.

326.   Defendants are "merchants" within the meaning of the Pennsylvania statute that was in effect at all relevant times herein governing the Implied Warranty of Merchantability because Defendants are sellers and manufacturers the Philips/Magnavox Flat Screen TVs.

327.   The Implied Warranty of Merchantability, codified under 13 Pa. Cons. Stat. § 2314, et seq., requires, among other things, that the Philips/Magnavox Flat Screen TVs pass without objection in the trade and are fit for the ordinary purposes for which the Philips/Magnavox Flat Screen TVs are used.

328.   The Philips/Magnavox Flat Screen TVs are defectively designed because normal operation and usage of the television set exposes the circuit boards, including the PSB and SSB, to excessive heat and voltage, which, in turn, causes the PSB and SSB to fail and shut down, and therefore, the Philips/Magnavox Flat Screen TVs to fail.

329.   As a result of the design defect described herein, the Philips/Magnavox Flat Screen TVs were not merchantable at the time of sale and do not function in their ordinary capacity.

330.   Defendants' limits on its express warranty are unconscionable. Defendants knowingly sold a defective product without conspicuously informing consumers about the defect.  Defendants possessed actual superior knowledge of the defect at all relevant times based on pre-market testing, complaints posted on the Internet, and complaints made to the Defendants at their call centers.

331.   Defendants concealed material information (that the Philips/Magnavox Flat Screen TVs would prematurely fail) from Plaintiff and Class members.  Defendants acted intentionally with the purpose of maximizing profit.

332.   The time limits contained in the Defendants' written limited warranties are grossly inadequate to protect the Plaintiff and members of the Class.  Among other things, Plaintiff and members of the Class had no meaningful choice in determining those time limitations; the warranties were written by Defendants, without input of the Plaintiff or Class members; the terms of the limited warranties unreasonably favored Defendants by creating a ninety-day/one-year warranty limitation on a product consumers could

reasonably expect to last over 60,000 hours; a gross disparity in bargaining power existed between Defendants and Class members; and Defendants knew or should have known that the Philips/Magnavox Flat Screen TVs were defective at the time of sale and would fail well before the end of their useful lives, thereby rendering the time limitations insufficient, inadequate, and unconscionable.

333.   Defendants were put on notice of the defect because they had actual knowledge of the existence of the design defect at all relevant times. Furthermore, Plaintiffs provided Defendants with notice of the defect via telephone calls.

334.   The defects in the Philips/Magnavox Flat Screen TVs rendered them non-merchantable because they could not be used for their ordinary purposes and thereby proximately caused the economic damages suffered by Plaintiffs and members of the Class.   The amount of damages will be ascertained at trial.

## COUNT XVII

**(By Plaintiff Hennessey And Umble, Individually, And On Behalf Of All Class Members Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of Pennsylvania During the Class Period Against Defendants For Unjust Enrichment)**

335.   Plaintiffs Hennessey and Umble hereby repeat and reallege ¶¶ 1 through 109 above as if fully set forth herein.   This claim is plead in the

alternative to the warranty and contractual based claims, pursuant to Fed. R. Civ. P. 8(d)(2).

336.  This Count is brought against Defendants pursuant to Washington's common law doctrine of unjust enrichment.

337.  Defendants manufactured and sold the Philips/Magnavox Flat Screen TVs with the design defect alleged herein.  The Philips/Magnavox Flat Screen TVs are defectively designed because under normal operation, the Philips/Magnavox Flat Screen TVs fail.

338.  Defendants had knowledge of the existence of this design defect at all relevant times.

339.  Despite Defendants' knowledge of the design defect, Defendants failed to disclose the existence of this defect -- a clearly material fact -- to Plaintiffs and Class members, at the times each of them purchased their Philips/Magnavox Flat Screen TVs.

340.  Plaintiffs and members of the Class indirectly conferred upon Defendants, without knowledge of the design defect, payment for their Philips/Magnavox Flat Screen TVs, benefits which were non-gratuitous.

341.  Defendants appreciated, or had knowledge of, the non-gratuitous benefits conferred upon it by Plaintiffs and members of the Class.

342.   Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class despite Defendants' knowledge of the design defect in the Philips/Magnavox Flat Screen TVs. Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and members of the Class under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.

343.   Any express warranty provided by Defendants at the time of sale does not cover design defects, and therefore, does not preclude Plaintiffs' unjust enrichment claim.

344.   Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Defendants must pay restitution in a manner established by the Court.

345.   Failing to require Defendants to provide remuneration under these circumstances would result in them being unjustly enriched at the expense of Plaintiff and members of the Class.

346.   Defendants were and continue to be unjustly enriched at the expense of Plaintiff and members of the Class.

347.   Defendants' retention (without an offsetting return payment) of the benefit conferred upon them by Plaintiff and members of the Class would be unjust and inequitable.

## COUNT XVIII

**(By Plaintiff Bray Individually, And On Behalf Of All Class Members Who Purchased A New Philips/Magnavox Flat Screen TV In The State of Ohio During the Class Period Against Defendants For Violation Of The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, et seq., ("CSPA"))**

348.   Plaintiff Bray hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

349.   This count is brought against Defendants pursuant to the Ohio Consumer Sales Practices Act, Ohio Rev. Code. Ann. § 1345.01, et seq., (the "CSPA").

350.   At all relevant times the CSPA was in effect.   The CSPA prohibits "unconscionable act[s] or practice[s] in connection with a consumer transaction."

351.   Plaintiff and Class members reasonably expected their Philips/Magnavox Flat Screen TVs to last well beyond the ninety-day/one-year period included in the warranty.   Most buying guides state that flat screen TVs should last over 60,000 hours.

352.   The CSPA is broad, applying to the sale of consumer goods "to an individual for purposes that are primarily personal, family, or household [uses]."   Ohio Rev. Code Ann. § 1345.01(A).   Accordingly, the conduct at issue in this case clearly falls within the scope of the CSPA.

353.   The CSPA prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions.   Ohio Rev. Code Ann. § 1345.02(A).   The CSPA further provides that "a consumer" has a private cause of action for violations of the statute and expressly allows for class actions.  Ohio Rev. Code Ann. § 1345.09.

354.  Defendants' conduct, as alleged herein, has been unfair, deceptive, and unconscionable for purposes of the CSPA.  In particular, Defendants advertised its  Philips/Magnavox Flat Screen TVs as being of high quality – which falsely implied that these products would work properly, be free from defects, and were worth purchasing at a premium – and failed to disclose material facts, namely, that its Philips/Magnavox Flat Screen TVs suffered from the TV Problem.

355.   Defendants acted in the face of prior notice that this conduct was deceptive, unfair, or unconscionable.  Indeed, it is well established in CSPA jurisprudence that material omissions and misrepresentations concerning a product constitutes a violation of the statute.   It is also considered a deceptive act or practice for purposes of the CSPA if a supplier makes representations, claims, or assertions of fact in the absence of a reasonable basis in fact.  *See* Ohio Admin. Code. § 109:4-3-10(A).

356.   As a direct and proximate result of Defendants' violations of the CSPA, Plaintiff and members of the Class have been injured.

357.   Defendants' conduct constitutes a violation of the CSPA and entitled Plaintiff and members of the Class to relief under the statute of statutory damages, declaratory and injunctive relief, rescission, and attorneys' fees and costs.

## COUNT XIX
**(By Plaintiff Bray Individually, And On Behalf Of All Class Members Who Purchased A New Philips/Magnavox Flat Screen TV In The State of Ohio During the Class Period Against Defendants For Negligent Design and Failure to Warn)**

358.   Plaintiff Bray hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

359.   This count is brought against Defendants for negligent design and failure to warn.

360.   Defendants knew – or by the exercise of reasonable care should have known – that the Philips/Magnavox Flat Screen TVs would have and had the design defects alleged herein.

361.   Defendants knew that Plaintiff and members of the Class, who used the Philips/Magnavox Flat Screen TVs for their intended use, were members of a foreseeable class of persons who were and are at risk of

suffering serious inconvenience and expense solely because of the defect described herein.

362.   At the time Defendants manufactured, distributed, and/or sold the Philips/Magnavox Flat Screen TVs, it owed a non-delegable duty to persons like Plaintiff and members of the Class to exercise ordinary and reasonable care to properly design the Philips/Magnavox Flat Screen TVs, and it owes a continuing duty to warn about the problem and to repair and/or recall the defective TVs.

363.   Defendants had a pre-sale duty to warn potential purchasers that the Philips/Magnavox Flat Screen TVs carried with them greater risks of failure than an ordinary consumer would expect when using the Philips/Magnavox Flat Screen TVs in their intended or reasonably foreseeable manner.

364.   Defendants failed to use appropriate design, engineering, and parts in manufacture – and Defendants in other respects breached its duties by being wantonly reckless, careless, and negligent.

365. As a direct and proximate result of Defendants' wanton recklessness, carelessness, and negligence, Plaintiff and Class members suffered damages and losses, and Plaintiff and members of the Class will

have to spend monies to repair and/or replace the defective
Philips/Magnavox Flat Screen TVs.

366.   Plaintiff and Class members have not committed any
contributory negligence.

## COUNT XX

**(By Plaintiffs Margrif and Rock, Individually, And On Behalf Of All
Members Of The Class Who Purchased A New Philips/Magnavox Flat
Screen TV In The State Of Michigan During the Class Period Against
Defendants For Violations Of Mich. Consumer Protection Act §§
445.901, et seq.)**

367.   Plaintiffs Margrif and Rock hereby repeat and reallege ¶¶ 1
through 109 above as if fully set forth herein

368.   This count is brought against Defendants pursuant to the
Michigan Consumer Protection Act, §§ 445.901, et seq.

369.   At all time relevant herein, the Michigan Consumer Protection
Act was in effect.  The Michigan Consumer Protection Act prohibits "unfair,
unconscionable, or deceptive methods, acts, or practices in the conduct of
trade or commerce."

370.   Plaintiff and Class members reasonably expected their
Philips/Magnavox Flat Screen TVs to last well beyond the ninety-day/one-
year period included in the warranty.  Most buying guides state that flat
screen TVs should last over 60,000 hours.

371.   Defendants developed, manufactured, marketed and sold the Philips/Magnavox Flat Screen TVs. The Philips/Magnavox Flat Screen TVs are defective because normal operation and usage of the TVs exposes the capacitors that are found on the PSB, SSB and other "boards" within the Philips/Magnavox Flat Screen TVs to excessive heat and voltage during normal operation, which, in turn, causes the capacitors on the PSB, SSB and other "boards" to fail and thereby causes the Philips/Magnavox Flat Screen TV to exhibit the TV Problem and fail.

372.   Defendants had knowledge of the design defect at all relevant times as a result of numerous consumer complaints and warranty claims relating to the "Red Blinking Light" problem and total system failure.

373.   In addition, Defendants had actual knowledge as a result of their design and testing the Philips/Magnavox Flat Screen TVs, during which Defendants became aware that the Flat Screen TVs operate at high temperatures and high voltage which affect the performance and life of the components found on the internal circuit boards, including the capacitors that are found on the PSB and SSB, in the Philips/Magnavox Flat Screen TVs.

374.   Defendants failed to disclose to Plaintiffs and members of the Class the material fact that the Philips/Magnavox Flat Screen TVs were

defective and would prematurely fail. Defendants' failure to disclose this information constituted a deceptive act or practice that violated Michigan's Consumer Protection Act, § 445.903.

375.   Defendants' sales of the Philips/Magnavox Flat Screen TVs without disclosure of the defect were acts that occurred in or affected commerce.

376.   Had Defendants informed Plaintiffs and members of the Class about the defect, Plaintiffs and members of the Class would not have purchased the defective Philips/Magnavox Flat Screen TVs.  Defendants, at all relevant times, knew or should have known that Plaintiff and members of the Class did not know or could not have reasonably discovered the defect prior to their purchases.

377.   By paying monies for these defective Philips/Magnavox Flat Screen TVs, Plaintiffs and members of the Class have suffered an ascertainable loss.

378.   Defendants' conduct constitutes a violation of the Michigan Consumer Protection Act and entitles Plaintiffs and members of the Class to relief under this statute to statutory and actual damages.

## **COUNT XXI**

**(By Plaintiffs Margrif And Rock Individually, And On Behalf Of All Class members Who Purchased A New**

**Philips/Magnavox Flat Screen TV In The State Of Michigan
During the Class Period Against Defendants For Breach Of
The Implied Warranty Of Merchantability, Pursuant To
Mich. CLS § 440.2314)**

379.   Plaintiffs Margrif and Rock hereby repeat and reallege ¶¶ 1 through 109 above as if fully set forth herein.

380.   This count is brought against Defendants for breach of the implied warranty of merchantability, pursuant to Mich. CLS § 440.2314.

381.   The Philips/Magnavox Flat Screen TVs are "goods" within the meaning of that term under the Michigan statute that was in effect at all relevant times herein governing the Implied Warranty of Merchantability.

382.   Defendants are "merchants" within the meaning of that term under the Michigan statute that was in effect at all relevant times herein governing the Implied Warranty of Merchantability because Defendants are sellers and manufacturers of the Philips/Magnavox Flat Screen TVs.

383.   The Implied Warranty of Merchantability, codified under Mich. CLS § 440.2314, requires, among other things, that the Philips/Magnavox Flat Screen TVs pass without objection in the trade and are fit for the ordinary purposes for which the Philips/Magnavox Flat Screen TVs are used.

384.   The Philips/Magnavox Flat Screen TVs are defectively designed because normal operation and usage of the television set exposes

the circuit boards, including the PSB and SSB to excessive heat and voltage, which, in turn, causes the PSB and SSB to fail and shut down, and therefore, the Philips/Magnavox Flat Screen TVs to fail.

385.  As a result of the design defect described herein, the Philips/Magnavox Flat Screen TVs were not merchantable at the time of sale and do not function in their ordinary capacity.

386.  Defendants' limits on its express warranty are unconscionable. Defendants knowingly sold a defective product without conspicuously informing consumers about the defect.  Defendants possessed actual superior knowledge of the defect at all relevant times based on pre-market testing, complaints posted on the Internet, and complaints made to Defendants at their call centers.

387.  Defendants  concealed  material  information  (that  the Philips/Magnavox Flat Screen TVs would prematurely fail) from Plaintiff and Class members.  Defendants acted intentionally with the purpose of maximizing profit.

388.  The time limits contained in the Defendants' written limited warranties are grossly inadequate to protect the Plaintiff and members of the Class.  Among other things, Plaintiff and members of the Class had no meaningful choice in determining those time limitations; the warranties were

written by Defendants, without input of the Plaintiff or Class members; the terms of the limited warranties unreasonably favored Defendants by creating a ninety-day/one-year warranty limitation on a product consumers could reasonably expect to last over 60,000 hours; a gross disparity in bargaining power existed between Defendants and Class members; and Defendants knew or should have known that the Philips/Magnavox Flat Screen TVs were defective at the time of sale and would fail well before the end of their useful lives, thereby rendering the time limitations insufficient, inadequate, and unconscionable.

389.   Defendants were put on notice of the defect because they had actual knowledge of the existence of this design at all relevant times. Furthermore, Plaintiffs provided Defendants with notice of the defect via telephone calls.

390.   The defects in the Philips/Magnavox Flat Screen TVs rendered them non-merchantable because they could not be used for their ordinary purposes and thereby proximately caused the economic damages suffered by Plaintiffs and members of the Class.   The amount of damages will be ascertained at trial.

## COUNT XXII

**(By Plaintiffs Rock And Margrif, Individually, And On Behalf Of All Class members Who Purchased A New Philips/Magnavox Flat Screen**

**TV In The State Of Michigan During the Class Period Against**
**Defendants For Unjust Enrichment)**

391.    Plaintiffs Rock and Margrif hereby repeat and reallege ¶¶ 1 through 109 above as if fully set forth herein.  This count is plead as an alternative to the warranty and contractual based claims, pursuant to Fed. R. Civ. P. 8(d)(2).

392.    This Count is brought against Defendants pursuant to Michigan's common law doctrine of unjust enrichment.

393.    Defendants manufactured and sold the Philips/Magnavox Flat Screen TVs with the design defect alleged herein.  The Philips/Magnavox Flat Screen TVs are defectively designed because under normal operation, the Philips/Magnavox Flat Screen TVs fail.

394.    Defendants had knowledge of the existence of this design defect at all relevant times.

395.    Despite Defendants' knowledge of the design defect, Defendants failed to disclose the existence of this defect -- a clearly material fact -- to Plaintiff and Class members, at the times each of them purchased their Philips/Magnavox Flat Screen TVs.

396.    Defendants were indirectly enriched by Plaintiff and members of the Class, who, without knowledge of the design defect, made payments for their Philips/Magnavox Flat Screen TVs.

397.   Plaintiffs' and Class members' payments to Defendants for the Philips/Magnavox Flat Screen TVs impoverished Plaintiffs and the Class.

398.   Defendants have no justification for the enrichment conferred upon it by Plaintiffs and other Class members since the Philips/Magnavox Flat Screen TVs were not capable of normal operation and usage.

399.   Any express warranty provided by Defendants at the time of sale does not cover design defects, and therefore, does not preclude Plaintiff's unjust enrichment claim.

400.   Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Defendants must pay restitution in a manner established by the Court.

401.   Failing to require Defendants to provide remuneration under these circumstances would result in them being unjustly enriched at the expense of Plaintiff and members of the Class.

402.   Defendants were and continue to be unjustly enriched at the expense of Plaintiff and members of the Class.

403.   Defendants' retention (without an offsetting return payment) of the benefit conferred upon them by Plaintiff and members of the Class would be unjust and inequitable.

## COUNT XXIII

**(By Plaintiff Youngblood, Individually, And On Behalf  Of All Members Of The Class Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of Washington During the Class Period Against Defendants For Violations Of Rev. Code Wash. § 19.86.20)**

404.   Plaintiff Youngblood hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

405.   This count is brought against Defendants pursuant to Rev. Code Wash. § 19.86.20.

406.   At all times relevant herein, the Rev. Code. Wash. § 19.86.20 was in effect.  Rev. Code. Wash. § 19.86.20 prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

407.   Plaintiff and Class members reasonably expected their Philips/Magnavox Flat Screen TVs to last well beyond the ninety-day/one-year period included in the warranty.  Most buying guides state that flat screen TVs should last over 60,000 hours.

408.   Defendants developed, manufactured, marketed and sold the Philips/Magnavox Flat Screen TVs. The Philips/Magnavox Flat Screen TVs are defective because normal operation and usage of the TVs exposes the capacitors that are found on the PSB, SSB and other "boards" within the Philips/Magnavox Flat Screen TVs to excessive heat and voltage during normal operation, which, in turn, causes the capacitors on the PSB, SSB and

other "boards" to fail and thereby cause the Philips/Magnavox Flat Screen TVs to exhibit the TV Problem and fail.

409.   Defendants had knowledge of the design defect at all relevant times as a result of numerous consumer complaints and warranty claims relating to the "Red Blinking Light" problem and total system failure.

410.   In addition, Defendants had actual knowledge as a result of their design and testing the Philips/Magnavox Flat Screen TVs, during which Defendants became aware that the Flat Screen TVs operate at high temperatures and high voltage which affect the performance and life of the components found on the internal circuit boards, including the capacitors that are found on the PSB and SSB, in the Philips/Magnavox Flat Screen TVs.

411.   Defendants failed to disclose to Plaintiff and members of the Class the material fact that the Philips/Magnavox Flat Screen TVs were defective and would prematurely fail.  Defendants' failure to disclose this information constituted a deceptive act or practice that violated Washington's Consumer Protection Act, Rev. Code Wash. § 19.86.20.

412.   Defendants' sales of the Philips/Magnavox Flat Screen TVs without disclosure of the defect were acts that occurred in or affected commerce.

413.   Had Defendants informed Plaintiff and members of the Class about the defect, Plaintiff and members of the Class would not have purchased the defective Philips/Magnavox Flat Screen TVs. Defendants, at all relevant times, knew or should have known that Plaintiff and members of the Class did not know or could not have reasonably discovered the defect prior to their purchases.

414.   By paying monies for these defective Philips/Magnavox Flat Screen TVs, Plaintiffs and members of the Class have suffered an ascertainable loss.

415.   Defendants' conduct constitutes a violation of Washington's Consumer Protection Act and entitles Plaintiff and members of the Class to relief under this statute of statutory and actual damages, injunctive relief and attorneys' fees and costs.

## **COUNT XXIV**

**(By Plaintiff Youngblood, Individually, And On Behalf Of All Class Members Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of Washington During the Class Period Against Defendants For Unjust Enrichment)**

416.   Plaintiff Youngblood hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

417.   This Count is brought against Defendants pursuant to Washington's common law doctrine of unjust enrichment.

418.   Defendants manufactured and sold the Philips/Magnavox Flat Screen TVs with the design defect alleged herein.  The Philips/Magnavox Flat Screen TVs are defectively designed because under normal operation, the Philips/Magnavox Flat Screen TVs fail.

419.   Defendants had knowledge of the existence of this design defect at all relevant times.

420.   Despite Defendants' knowledge of the design defect, Defendants have failed to disclose the existence of this defect -- a clearly material fact -- to Plaintiff and Class members, at the times each of them purchased their Philips/Magnavox Flat Screen TVs.

421.   Plaintiff and members of the Class indirectly conferred upon Defendants, without knowledge of the design defect, payment for their Philips/Magnavox Flat Screen TVs, benefits which were non-gratuitous.

422.   Defendants appreciated, or had knowledge of, the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

423.   Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class despite Defendants' knowledge of the design defect in the Philips/Magnavox Flat Screen TVs. Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff

and members of the Class under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.

424.   Any express warranty provided by Defendants at the time of sale does not cover design defects, and therefore, does not preclude Plaintiff's unjust enrichment claim.

425.   Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Defendants must pay restitution in a manner established by the Court.

426.   Failing to require Defendants to provide remuneration under these circumstances would result in them being unjustly enriched at the expense of Plaintiff and members of the Class.

427.   Defendants were and continue to be unjustly enriched at the expense of Plaintiff and members of the Class.

428.   Defendants' retention (without an offsetting return payment) of the benefit conferred upon them by Plaintiff and members of the Class would be unjust and inequitable.

## COUNT XXV

**(By Plaintiff Sanders, Individually, And On Behalf Of All Member Of The Class Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of Arkansas During the Class Period Against Defendants For Violations Of The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, et seq.)**

429.   Plaintiff Sanders hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

430.   This count is brought against Defendants pursuant to the Arkansas Deceptive Trade Practices Act, Ark. Code. Ann. § 4-88-101, et seq. ("ADTPA").

431.   At all relevant times, the ADTPA was in effect.  The ADTPA Act prohibits "deceptive and unconscionable trade practices."

432.   Plaintiff and Class members reasonably expected their Philips/Magnavox Flat Screen TVs to last well beyond the ninety-day/one-year period included in the warranty.  Most buying guides state that flat screen TVs should last over 60,000 hours.

433.   Defendants developed, manufactured, marketed and sold the Philips/Magnavox Flat Screen TVs. The Philips/Magnavox Flat Screen TVs are defective because normal operation and usage of the TVs exposes the capacitors that are found on the PSB, SSB and other "boards" within the Philips/Magnavox Flat Screen TVs to excessive heat and voltage during

normal operation, which, in turn, causes the capacitors on the PSB, SSB and other "boards" to fail and thereby causes the Philips/Magnavox Flat Screen TVs to exhibit the TV Problem and fail.

434.   Defendants had knowledge of the design defect at all relevant times as a result of numerous consumer complaints and warranty claims relating to the "Red Blinking Light" problem and total system failure.

435.   In addition, Defendants had actual knowledge as a result of their design and testing of the Philips/Magnavox Flat Screen TVs, during which Defendants became aware that the Flat Screen TVs operate at high temperatures and high voltage which affect the performance and life of the components found on the internal circuit boards, including the capacitors that are found on the PSB and SSB, in the Philips/Magnavox Flat Screen TVs.

436.   Defendants failed to disclose to Plaintiffs and members of the Class the material fact that the Philips/Magnavox Flat Screen TVs were defective and would prematurely fail.  Defendants' failure to disclose this information constituted a deceptive and unconscionable trade practice that violated ADTPA, § 4-88-107.

437.  Defendants' sales of the Philips/Magnavox Flat Screen TVs without disclosure of the defect were acts that occurred in or affected commerce.

438.  Had Defendants informed Plaintiffs and members of the Class about the defect, Plaintiffs and members of the Class would not have purchased the defective Philips/Magnavox Flat Screen TV.  Defendants, at all relevant times, knew or should have known that Plaintiff and members of the Class did not know or could not have reasonably discovered the defect prior to their purchases.

439.  By paying monies for these defective Philips/Magnavox Flat Screen TVs, Plaintiffs and members of the Class have suffered an ascertainable loss.

440.  Defendants' conduct constitutes a violation of the ADTPA and entitles Plaintiff and members of the Class to relief under this statute of statutory and actual damages and attorneys' fees.

## COUNT XXVI

**(By Plaintiff Sanders, Individually, And On Behalf Of All Class Members Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of Arkansas During the Class Period For Breach Of The Implied Warranty Of Merchantability, Pursuant to Ark. Code Ann. § 4-2-314)**

441.   Plaintiff Sanders hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

442.   This count is brought against Defendants for breach of the implied warranty of merchantability, pursuant to the Ark. Code Ann. § 4-2-314.

443.   The Philips/Magnavox Flat Screen TVs are "goods" within the meaning of that term under the Arkansas statute that was in effect at all relevant times herein governing the Implied Warranty of Merchantability.

444.   Defendants are "merchants" within the meaning of that term under the Arkansas statute that was in effect at all relevant times herein governing the Implied Warranty of Merchantability because Defendants are sellers and manufacturers of the Philips/Magnavox Flat Screen TVs.

445.   The Implied Warranty of Merchantability, codified under Ark. Code Ann. § 4-2-314, requires, among other things, that the Philips/Magnavox Flat Screen TVs pass without objection in the trade and are fit for the ordinary purposes for which the Philips/Magnavox Flat Screen TVs are used.

446. The Philips/Magnavox Flat Screen TVs are defectively designed because normal operation and usage of the television set exposes the circuit boards, including the PSB and SSB, to excessive heat and voltage,

which, in turn, causes the PSB and SSB to fail thereby causes the Philips/Magnavox Flat Screen TVs exhibit the TV Problem and fail.

447.  As a result of the design defect described herein, the Philips/Magnavox Flat Screen TVs were not merchantable at the time of sale and do not function in their ordinary capacity.

448.  Defendants' limits on its express warranty are unconscionable. Defendants knowingly sold a defective product without conspicuously informing consumers about the defect.  Defendants possessed actual superior knowledge of the defect at all relevant times based on pre-market testing, complaints posted on the Internet, and complaints made to Defendants at their call centers.

449.  Defendants concealed material information (that the Philips/Magnavox Flat Screen TVs would prematurely fail) from Plaintiff and Class members.  Defendants acted intentionally with the purpose of maximizing profit.

450.  The time limits contained in the Defendants' written limited warranties are grossly inadequate to protect the Plaintiff and members of the Class.  Among other things, Plaintiff and members of the Class had no meaningful choice in determining those time limitations; the warranties were written by Defendants, without input of the Plaintiff or Class members; the

terms of the limited warranties unreasonably favored Defendants by creating a ninety-day/one-year warranty limitation on a product consumers could reasonably expect to last over 60,000 hours; a gross disparity in bargaining power existed between Defendants and Class members; and Defendants knew or should have known that the Philips/Magnavox Flat Screen TVs were defective at the time of sale and would fail well before the end of their useful lives, thereby rendering the time limitations insufficient, inadequate, and unconscionable.

451.   Defendants were put on notice of the defect because they had actual knowledge of the existence of this design defect at all relevant times. Furthermore, Plaintiff provided notice of the defect via telephone calls.

452.   The defects in the Philips/Magnavox Flat Screen TVs rendered them non-merchantable because they could not be used for their ordinary purposes and thereby proximately caused the economic damages suffered by Plaintiff and members of the Class.   The amount of damages will be ascertained at trial.

## COUNT XXVII

**(By Plaintiff Sanders, Individually, And On Behalf Of All Members Of The Class Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of Arkansas During the Class Period Against Defendants For Unjust Enrichment)**

453.   Plaintiff Sanders hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.  This claim is plead in the alternative to the warranty and contractual based claims, pursuant to Fed. R. Civ. P. 8(d)(2).

454.   This Count is brought against Defendants pursuant to Arkansas' common law doctrine of unjust enrichment.

455.   Defendants manufactured and sold the Philips/Magnavox Flat Screen TVs with the design defect alleged herein.  The Philips/Magnavox Flat Screen TVs are defectively designed because under normal operation, the Philips/Magnavox Flat Screen TVs fail.

456.   Defendants had knowledge of the existence of this design defect at all relevant times.

457.   Despite Defendants' knowledge of the design defect, Defendants failed to disclose the existence of this defect -- a clearly material fact -- to Plaintiff and Class members, at the times each of them purchased their Philips/Magnavox Flat Screen TVs.

458.   Defendants were indirectly enriched by Plaintiff and members of the Class, who, without knowledge of the design defect, made payments for their Philips/Magnavox Flat Screen TVs.

459.   Plaintiff's and Class members' payments to Defendants for the Philips/Magnavox Flat Screen TVs impoverished Plaintiff and the Class.

460.   Defendants have no justification for the enrichment conferred upon it by Plaintiff and other Class members since the Philips/Magnavox Flat Screen TVs were not capable of normal operation and usage.

461.   Any express warranty provided by Defendants at the time of sale does not cover design defects, and therefore, does not preclude Plaintiff's unjust enrichment claim.

462.   Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Defendants must pay restitution in a manner established by the Court.

463.   Failing to require Defendants to provide remuneration under these circumstances would result in them being unjustly enriched at the expense of Plaintiff and members of the Class.

464.   Defendants were and continue to be unjustly enriched at the expense of Plaintiff and members of the Class.

465.   Defendants' retention (without an offsetting return payment) of the benefit conferred upon them by Plaintiff and members of the Class would be unjust and inequitable.

## COUNT XXVIII

**(By Plaintiffs Marshall, Individually, And On Behalf Of All Class Members Who Purchased A New Philips/Magnavox Flat Screen TV In The State Of Montana During the Class**

**Period Against Defendants For Breach Of The Implied
Warranty Of Merchantability, Pursuant To MCA 30-2-314)**

466.   Plaintiff Marshall hereby repeats and realleges ¶¶ 1 through 109 above as if fully set forth herein.

467.   This count is brought against Defendants for breach of the implied warranty of merchantability, pursuant to MCA 30-2-314.

468.   The Philips/Magnavox Flat Screen TVs are "goods" within the meaning of that term under the Montana statute that was in effect at all relevant times herein governing the Implied Warranty of Merchantability.

469.   Defendants are "merchants" within the meaning of that term under the Montana statute that was in effect at all relevant times herein governing the Implied Warranty of Merchantability because Defendants are sellers and manufacturers of  the Philips/Magnavox Flat Screen TVs.

470.   The Implied Warranty of Merchantability, codified under MCA 30-2-314 requires, among other things, that the Philips/Magnavox Flat Screen TVs pass without objection in the trade and are fit for the ordinary purposes for which the Philips/Magnavox Flat Screen TVs are used.

471.   The Philips/Magnavox Flat Screen TVs are defectively designed because normal operation and usage of the TVs exposes the circuit boards, including the PSB and SSB to excessive heat and voltage, which, in

turn, causes the PSB and SSB to fail and thereby causes the Philips/Magnavox Flat Screen TVs exhibit the TV Problem and fail.

472.   As a result of the design defect described herein, the Philips/Magnavox Flat Screen TVs were not merchantable at the time of sale and do not function in their ordinary capacity.

473.   Defendants' limits on its express warranty are unconscionable. Defendants knowingly sold a defective product without conspicuously informing consumers about the defect.  Defendants possessed actual superior knowledge of the defect at all relevant times based on pre-market testing, complaints posted on the Internet, and complaints made to Defendants at their call centers.

474.   Defendants concealed material information (that the Philips/Magnavox Flat Screen TVs would prematurely fail) from Plaintiff and Class members.  Defendants acted intentionally with the purpose of maximizing profit.

475.   The time limits contained in the Defendants' written limited warranties are grossly inadequate to protect the Plaintiff and members of the Class.   Among other things, Plaintiff and members of the Class had no meaningful choice in determining those time limitations; the warranties were written by Defendants, without input of the Plaintiff or Class members; the

terms of the limited warranties unreasonably favored Defendants by creating a ninety-day/one-year warranty limitation on a product consumers could reasonably expect to last over 60,000 hours; a gross disparity in bargaining power existed between Defendants and Class members; and Defendants knew or should have known that the Philips/Magnavox Flat Screen TVs were defective at the time of sale and would fail well before the end of their useful lives, thereby rendering the time limitations insufficient, inadequate, and unconscionable.

476.   Defendants were put on notice of the defect because they had actual knowledge of the existence of this design defect at all relevant times. Defendants were also put on notice of the defect because they had actual knowledge of the existence of this design defect at all relevant times. Furthermore, Plaintiff provided Defendants with notice of the defect via telephone calls.

477.   The defects in the Philips/Magnavox Flat Screen TVs rendered them non-merchantable because they could not be used for their ordinary purposes and thereby proximately caused the economic damage suffered by Plaintiff and members of the Class.   The amount of damages will be ascertained at trial.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court:

a.      Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint the named Plaintiffs as Class representatives, and appoint the undersigned as class counsel;

b.      Order Defendants to pay Plaintiffs and members of the Class an amount of actual and statutory damages, restitution and punitive damages in an amount to be determined at trial;

c.      Issue an injunction or other appropriate equitable relief requiring Defendants to recall or otherwise adequately repair the defective Philips/Magnavox Flat Screen TVs;

d.      Issue an injunction preventing Defendants from continuing to manufacture and sell the Philips/Magnavox Flat Screen TVs without disclosing or fixing the design defect and TV Problem;

e.       Issue an order granting Plaintiffs reasonable costs and attorney's fees; and

f.      Grant such other relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues so triable.

Dated: December 30, 2009

By:   /s/ *Benjamin F. Johns*

**CHIMICLES & TIKELLIS LLP**
Steven A. Schwartz (*pro hac vice*)
Benjamin F. Johns (NJ ID No. 03818-2005)
361 W. Lancaster Avenue
Haverford, PA  19041
Office: (610) 642-8500
Fax: (610) 649-3633

*Liaison Counsel for Plaintiffs*

**HORWITZ, HORWITZ & PARADIS**
Michael A. Schwartz (*pro hac vice*)
Alyson C. Bruns (*pro hac vice*)
405 Lexington Avenue, 61st Floor
New York, NY  10174
Tel:  (212) 986-4500
Fax:  (212) 986-4501

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Andrew N. Friedman (*pro hac vice*)
Douglas J. McNamara (*pro hac vice*)
1100 New York Ave, NW
Suite 500, West Tower
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax:  (202) 408-4699

*Co-Lead Counsel for Plaintiffs*

**SHALOV, STONE, BONNER &
ROCCO, PLLC**
Patrick L. Rocco
Lee S. Shalov
65 Madison Avenue
Suite 333
Morristown, N.J. 07960

**SHEPHERD, FINKELMAN,
MILLER & SHAH, LLP**
James C. Shah
Natalie Finkelman Bennett
475 White Horse Pike
Collingswood, NJ  08107

**DOYLE LOWTHER LLP**
William J. Doyle, II, Esq.
9466 Black Mountain Road, Suite 210
San Diego, CA 92126

**SHAPIRO HABER & URMY LLP**
Edward F. Haber, Esq.
Ian J. McLoughlin, Esq.
Michelle H. Blauner, Esq.
53 State Street, 37th Floor
Boston , MA 02109

**REBEIN LAW FIRM, PLLC**
Paul W. Rebein, Esq.
500 E. Kennedy Blvd., Suite 100
Tampa, FL  33602

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Benjamin F. Johns, hereby certify that on this 30th day of December, 2009, I caused the foregoing Consolidated Complaint to be filed using the Court's CM/ECF system, and thereby electronically served it upon all registered ECF users in this case.

/s/ Benjamin F. Johns
Benjamin F. Johns