# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# NEWARK DIVISION

**In re PHILIPS/MAGNAVOX
TELEVISION LITIGATION**

No. 09-03072 (CCC) (JAD)

Class Action

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFFS' UNOPPOSED MOTION FOR
# PRELIMINARY APPROVAL OF THE SETTLEMENT
# AGREEMENT AND PROVISIONAL
# CLASS CERTIFICATION

**HORWITZ, HORWITZ
& PARADIS**
Michael A. Schwartz
Justin Shane
570 Seventh Avenue, 20th Floor
New York, NY 10018
Tel: (212) 986-4500
Fax: (212) 986-4501

**COHEN MILSTEIN SELLERS &
TOLL PLLC**
Andrew N. Friedman
Douglas J. McNamara
1100 New York Ave, NW
Suite 500, West Tower
Washington, D.C. 20005
Tel.: (202) 408-4600

**CHIMICLES & TIKELLIS LLP**
Steven A. Schwartz (*pro hac vice*)
Benjamin F. Johns (NJ ID No. 03818-2005)
361 W. Lancaster Avenue
Haverford, PA  19041
Office: (610) 642-8500
Fax: (610) 649-3633

*Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...........................................................................................1

II.     FACTUAL BACKGROUND ........................................................................1

        A.      History of the Litigation.....................................................................1

        B.      The Settlement Agreement ................................................................5

        C.      Confirmatory Discovery ..................................................................14

III.    ARGUMENT ...............................................................................................15

        A.      The Settlement Should Be Preliminarily Approved By the Court........18

        B.      Certification of the Proposed Class for Purposes
                of Settlement Only is Appropriate ..................................................20

                1.      *Numerosity Under Rule 23(a)(1)* ........................................21

                2.      *Commonality Under Rule 23(a)(2)* ......................................22

                3.      *Typicality Under Rule 23(a)(3)*..........................................23

                4.      *Adequacy of Representation Under Rule 23(a)(4)* .............24

                5.      *The Requirements of Rule 23(b)(3) Are Met* ......................25

        C.      The Court Should Approve the Notice Plan .....................................27

        D.      Final Approval Hearing Should be Scheduled..................................29

IV.     CONCLUSION............................................................................................30

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Amchem Products v. Windsor,*
    521 U.S. 591 (1997)............................................................................................20, 25

*In re Am. Med. Sys., Inc.,*
    75 F.3d 1069 (6th Cir. 1996) ........................................................................25

*Armstrong v. Board of Sch. Directors,*
    616 F.2d 305 (7th. Cir. 1980) ......................................................................17

*Augustin v. Jablonsky,*
    461 F.3d 219 (2d Cir. 2006)..........................................................................27

*Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation v. Avent*
    *America, Inc.,*
    MDL No. 1967,
    2011 U.S. Dist. LEXIS 2416 (W.D. Mo. Jan. 7, 2011) ....................................12

*Casey v. Coventry Healthcare of Kan.,*
    No. 08-0201-CV-W-DGK,
    2011 U.S. Dist. LEXIS 47663 (W.D. Mo. May 4, 2011) ................................12

*In re Countrywide Finance Corp. Customer Data Sec. Breach Litig.,*
    No. 3:08-MD-01998,
    2009 U.S. Dist. LEXIS 119870 (W.D. Ky. Dec. 22, 2009)............................23, 24, 26, 28

*Curiale v. Lenox Group, Inc.,*
    No. 07-1432,
    2008 U.S. Dist. LEXIS 92851 (E.D. Pa. Nov. 14, 2008)..................................18

*DeBoer v. Mellon Mortgage Co.,*
    64 F.3d 1171 (8th Cir. 1995) ........................................................................28

*Dewey v. Volkswagen of America,*
    728 F. Supp. 2d 546 (D.N.J. 2010) ..............................................................25, 28

*Ehrheart v. Verizon Wireless,*
    609 F.3d 590 (3d Cir. Pa. 2010)....................................................................29

*Fidel v. Farley,*
    534 F.3d 508, 514 (6th Cir. 2008) ................................................................28

*Gautreaux v. Pierce,*
  690 F.2d 616 (7th Cir. 1982) .........................................................16

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975).........................................................18

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) .......................................................20

*In re Inter-Op Hip Prosthesis Liability Litig.,*
  204 F.R.D. 359 (N.D. Ohio 2001) .............................................16, 18

*Jones v. Commerce Bancorp, Inc.,*
  No. 05-5600 (RBK),
  2007 U.S. Dist. LEXIS 52144 (D.N.J. July 16, 2007)......................18

*Little Rock School District v. Pulaski County Special School District No. 1,*
  921 F.2d 1371 (8th Cir. 1990) .......................................................16

*Lucas v. Kmart Corp.,*
  234 F.R.D. 688 (D. Colo. 2006) ...................................................16

*Mancinelli, et al v. Philips Electronics North America,*
  No. 1:09-CV-11354-RWZ (D. Mass.) ..............................................2

*Marcus v. BMW of N. Am., LLC,*
  No. 08-5859 (KSH),
  2010 U.S. Dist. LEXIS 122908 (D.N.J. Nov. 19, 2010)....................20

*Mehling v. New York Life Insurance Co.,*
  246 F.R.D. 467 (E.D. Pa. 2007).....................................................15

*Mullane v. Central Hanover Bank & Trust Co.,*
  339 U.S. 306, 314 (1950)..............................................................28

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  259 F.3d 154 (3d Cir. 2001)...........................................................22

*Ohio Public Interest Campaign v. Fisher Foods, Inc.,*
  546 F. Supp. 1, 7 (N.D. Ohio 1982)................................................18

*In re OSB Antitrust Litigation,*
  No. 06-826, 2007 U.S. Dist. LEXIS 56584 (E.D.Pa. Aug. 3, 2007) .................................21

*Inmates of the Northumberland County*,
No. 08-cv-345,
2009 U.S. Dist. LEXIS 126479 (M.D. Pa. Mar. 17, 2009)................................22

*Petrovic v. Amoco Co.*,
200 F.3d 1140 (8th Cir. 1999) ......................................................................16

*In re Philips/Magnavox TV Litig.*,
No. 09-3072 (PGS), 2010 U.S. Dist. LEXIS 91343 (D.N.J. Sept. 1, 2010) ......................3

*In re Prudential Insurance Co. America Sales Practice Litigation Agent Actions*,
148 F.3d 283 (3d Cir. 1998)........................................................................17, 21

*Ritti v. U-Haul Int'l., Inc.*,
No. 05-4182,
2006 U.S. Dist. LEXIS 23393 (E.D.Pa. Apr. 26, 2006) ...................................23

*Rock, et al. v. Philips Electronics North America Corporation*,
No. 09-cv-11327-RWZ (D. Mass.) ..................................................................2

*Senter v. General Motors Corp.*,
532 F.2d 511 (6th Cir. 1976) ........................................................................23

*Tardiff v. Knox County*,
365 F.3d 1 (1st Cir. 2004)..............................................................................27

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)...................................................................................22

*Walsh v. Great Atlantic & Pac. Tea Co.*,
726 F.2d 956 (3d Cir. 1983)..........................................................................15

*Williams v. First National Bank*,
216 U.S. 582 (1910).......................................................................................17

*In re Wireless Telephone Federal Cost Recovery Fees Litig.*,
No. 4:03-MD-015,
2004 WL 3671053 (W.D. Mo. April 20, 2004) ...............................................28

*Zinberg v. Washington Bancorp, Inc.*,
138 F.R.D. 397 (D.N.J. 1990).......................................................................21

## **Statutes**

28 U.S.C. § 1404 ................................................................................................2

28 U.S.C. § 1715(d) .........................................................................................13

Fed. R. Civ. P. 23 ...................................................................................... *passim*

Fed. R. Civ. P. 30(b)(6) ......................................................................................4

Fed. R. Civ. P. 42 ...............................................................................................3

## **Miscellaneous**

Fed. Jud. Ctr., *Manual for Complex Litig.*, § 30.212 (3d ed. 1995) ...........................27

Fed. Jud. Ctr., *Manual for Complex Litig.*, § 30.41 (3d ed. 1995) .............................16

Fed. Jud. Ctr., *Manual for Complex Litig.*, § 30.44 (3d ed. 1995) .............................29

# I.  INTRODUCTION

Plaintiffs submit this memorandum in support of their unopposed motion seeking an Order preliminarily approving the proposed settlement memorialized in the Stipulation of Class Action Settlement (the "Settlement Agreement" or "SA"), [1] which was executed on September 15, 2011.  The Settlement Agreement and its exhibits are attached hereto at Exhibit A.  As detailed below, the Court should preliminarily approve the Settlement Agreement because, among other things, it provides substantial benefits to Settlement Class Members, includes a comprehensive Notice Plan, and satisfies the requirements of Fed. R. Civ. P. 23(e).

# II.  FACTUAL BACKGROUND

## A.    History of the Litigation.

Plaintiffs filed the above-captioned action against Philips Electronics North America, Inc. ("Philips") and Funai Corporation, Inc. ("Funai").[2]  Each of the cases were ultimately consolidated into this class action alleging that certain flat screen televisions sold by the Defendants suffer from a design defect that inevitably causes internal components, called capacitors, installed on power supply boards to overheat and become inoperable.  All of the Plaintiffs covered by the

---

[1]    The capitalized terms used in this brief are defined in Section A of the Settlement Agreement.

[2]    As discussed below, all of Plaintiffs' claims against Funai were dismissed by Judge Sheridan on September 1, 2010.  *See* Docket Entry No. 75.  Accordingly, Funai is no longer a party to this litigation and is not a signatory to the SA.

Settlement purchased a Philips or Magnavox plasma television that failed after the one year warranty had expired.[3]  Plaintiffs sought class action status on behalf of a nationwide class of similarly-situated persons who purchased a similar television that suffered from the same alleged capacitor defect.

The first case was filed in this Court on June 24, 2009, and was assigned to the Honorable Peter Sheridan.  On July 20, 2009, a second related action was filed in this Court.  Then, on August 7 and 12, 2009, two additional actions were filed in the United States District Court for the District of Massachusetts.  *Rock, et al. v. Philips Electronics North America Corporation,* No. 09-cv-11327-RWZ (D. Mass.); *Mancinelli, et al v. Philips Electronics North America,* No. 1:09-CV-11354-RWZ (D. Mass.).  After Philips filed a motion with the Judicial Panel on Multidistrict Litigation seeking to transfer the latter two cases to this Court, counsel for the Plaintiffs in the two Massachusetts cases filed stipulations to transfer those actions to this Court pursuant to 28 U.S.C. § 1404.  On October 6, 2009, Judge Zobel granted those requests.

Once all four of the related actions were pending in this Court, Plaintiffs' Counsel conferred, and ultimately submitted a motion that sought to (a) consolidate those actions pursuant to FED. R. CIV. P. 42 and Local Civ. Rule 42.1,

---

[3]     As filed, the case involved claims asserted on behalf of Plaintiffs who bought both plasma and LCD televisions.  The settlement is limited to purchasers of plasma televisions, and the claims of LCD television purchasers are not being released.

and (b) appoint interim lead counsel pursuant to FED. R. CIV. P. 23(g). *See* Docket Entry No. 30. At a Status Conference on November 30, 2011, Judge Sheridan signed an order consolidating the actions and appointing the law firms of Cohen Milstein Sellers & Toll PLLC and Horwitz, Horwitz & Paradis to serve as Interim Co-Lead Counsel, and Chimicles & Tikellis LLP as Liaison Counsel for Plaintiffs and the proposed Class. *See id.* at No. 33.

On December 30, 2009, Plaintiffs filed the operative Consolidated Complaint against Philips and Funai. *See* Docket Entry No. 43. On February 16, 2010, each Defendant filed a separate motion to dismiss the complaint.[4] *See id.* at Nos. 47, 48. Plaintiffs filed memoranda in opposition, and both Defendants then filed a reply brief. *See id.* at Nos. 54, 55, 58, 59. The Court heard oral argument on the Defendants' motions to dismiss on July 7, 2010. Then, on September 1, 2010, the Court issued an Opinion and Memorandum addressing these motions. *In re Philips/Magnavox TV Litig.*, No. 09-3072 (PGS), 2010 U.S. Dist. LEXIS 91343 (D.N.J. Sept. 1, 2010). In pertinent part, the Court dismissed Plaintiffs' breach of warranty and unjust enrichment claims against Philips, but permitted the consumer fraud claims against Philips to go forward. *See id.* at *30. The Court dismissed all claims against Funai. *Id.*

---

[4]     Philips also filed a motion to strike the class allegations in the complaint on June 25, 2009, but that motion was subsequently withdrawn. *See* Docket Entry No. 62.

Shortly after the Court issued the motion to dismiss opinion, the parties commenced discovery.[5]  This discovery practice included the following:

- Plaintiffs' counsel gathered and made available for inspection the Televisions of each of the current named plaintiffs.  Plaintiffs' counsel also provided discovery responses for all of the Plaintiffs that survived the motion to dismiss.

- Counsel for Philips took the depositions of eight of the named Plaintiffs.

- Plaintiffs' counsel served numerous discovery requests on Philips, and received and reviewed more than 170,000 pages of documents produced by Philips.

- Plaintiffs' counsel also served third party subpoenas and interviewed multiple non-party witnesses.

- Plaintiffs' counsel took one FED. R. CIV. P. 30(b)(6) deposition of a Philips designee, and three additional fact witness depositions.

- Prior to the discovery stay, Plaintiffs prepared and served a request to serve a preservation subpoena on a third party, which the Court granted.  *See* Docket Entry Nos. 37, 38, 45.

- Plaintiffs' counsel and Philips' Counsel participated in numerous conferences with then-Magistrate Judge Salas, negotiated a discovery and motion practice schedule, and filed competing letters regarding the scope of discovery.

- Plaintiffs' counsel filed a motion to compel certain documents from former party Funai.  After conducting oral argument on March 29, 2011, Plaintiffs' motion was denied as moot after Philips agreed to produce the requested documents.

- Plaintiffs' counsel also received and responded to inquiries from numerous putative class members.

---

[5]    Judge Sheridan had previously stayed discovery at the November 30, 2009 Status Conference.  *See* Docket Entry Nos. 33, 107.

On June 21, 2011, Chief Judge Brown issued an order reassigning this case from Judge Sheridan to this Court. *See* Docket Entry No. 125. This order also reassigned the case from then-Magistrate Judge Salas to Magistrate Judge Dickson. *Id.* On July 25, after discovery was substantially complete, the parties submitted a joint letter to the Court seeking a temporary stay to explore the potential resolution of the case. *Id.* at No. 126. On July 27, Magistrate Judge Dickson granted that request, and scheduled a telephone status conference with the Court for September 30, 2011.

### B.    The Settlement Agreement.

Beginning shortly before the request was made to Magistrate Judge Dickson to stay the case, the parties commenced informal settlement discussions. These negotiations quickly intensified, and included several teleconferences and exchanges of draft term sheets. On August 18, 2011, the parties participated in an all-day mediation session before the Hon. Nicholas Politan, a retired United States District Judge. At that mediation session, the parties first agreed upon the terms for an agreement to settle this case, and subsequently negotiated an appropriate request for incentive awards and Plaintiffs' attorneys' fees and expenses.[6]

---

[6]    Both at, and subsequent to, the August 18th mediation, the parties exchanged information and engaged in confirmatory discovery to ensure that the terms of the settlement are fair, reasonable, and adequate. *See* Section I(C), *infra.*

As set forth in the Settlement Agreement, Plaintiffs' Counsel and counsel for Philips negotiated a proposed Settlement that, if approved, will provide substantial benefits to Class Members.  The SA is on behalf of the following Settlement Class: all consumers in the United States that purchased new or received as a gift a new Philips or Magnavox branded Plasma TV with a serial number reflecting a manufacturing date between November 1, 2005 through December 31, 2006, and which bear one of the model numbers below:[7]

| | |
|---|---|
| 50PF9830A/37 | 42PF9630A/37 |
| 50PF9731D/37 | 42PF7321D/37 |
| 50PF9631D/37 | 42PF7320A/37 |
| 50PF9630A/37 | 42PF7220A/37 |
| 50PF9431D/37 | 42PF5321D/37 |
| 50PF7321D/37 | 50MF231D/37 |
| 50PF7320A/37 | 50PF7220A/37 |

The settlement makes available valuable benefits, which will be made available to all Class Members who purchased one of these Philips Plasma TVs, including those that have not yet had the problem manifest.   As summarized below, the actual relief that a given Class Member will be entitled to receive depends on factors such as: (i) whether they have previously paid to have their television repaired; (ii) whether they have actually experienced the alleged capacitor problem; and (iii) whether they previously contacted Philips to complain

---

[7]     These fourteen models were included in the SA because the litigation and confirmatory discovery pointed to those models as an accurate indication of the scope of the alleged TV Problem.

about the problems at issue in this case.  Settlement Class Members are segmented into one of five categories based on these and other factors.

All Settlement Class Members must (a) submit a timely, valid and written Claim Form, (b) provide proof that they purchased new or received as a gift a new covered Philips Plasma TV in the United States, and (c) provide an attestation that they never previously obtained any refund or other compensation from any Philips-related entity or any retailer in connection with the Philips Plasma TV for which they seek relief.  The five specific categories enumerated in the Settlement (and the settlement consideration available to each) are summarized in the following chart.

| Category | Description | Settlement Consideration |
|---|---|---|
| A | Includes any Settlement Class Member who can provide acceptable proof that they purchased new or received as a gift a new Philips Plasma TV in the United States, provides an attestation that they called Philips regarding a problem with their Philips Plasma TV (and Philips must have a record of the call), and provides proof that, before the submission of a Claim Form, the Philips Plasma TV was repaired and that the repair consisted of the replacement of either the Power Supply Board or a damaged or non-functioning | Choice of (1) a voucher for the greater of (a) 80% of the amount in Schedule A that corresponds to that Class Member's Philips Plasma TV or (b) the amount paid by the Class Member to replace the Power Supply Board or a damaged or non-functioning capacitor on the Power Supply Board (up to a total voucher amount of $160, if Claimant can prove repair costs and payment of at least that level) OR (2) a cash payment in the amount of $65 for each Philips Plasma TV for which the required proof is provided. |

| | | |
|---|---|---|
| | capacitor on the Power Supply Board, including proof of the cost of the repairs and payment of that amount. | |
| B | Includes any Settlement Class Member who can provide acceptable proof that they purchased new or received as a gift a new Philips Plasma TV in the United States, provides proof that, before submission of a Claim Form, the Philips Plasma TV was repaired and that the repair consisted of the replacement of either the Power Supply Board or a damaged or non-functioning capacitor on the Power Supply Board, including proof of the cost of the repairs and payment of that amount. | Choice of (1) a voucher for the greater of (a) 70% of the amount in Schedule A that corresponds to that Class Member's Philips Plasma TV or (b) the amount paid by the Class Member to replace the Power Supply Board or a damaged or non-functioning capacitor on the Power Supply Board (up to a total voucher amount of $145, if Claimant can prove repair costs and payment of at least that level) OR (2) a cash payment in the amount of $55 for each Philips Plasma TV for which the required Proof is provided. |
| C | Includes any Settlement Class Member who can provide acceptable proof that they purchased new or received as a gift a new Philips Plasma TV in the United States, provides an attestation that they called Philips regarding a problem with the Philips Plasma TV (and Philips must have a record of the call), and provides an attestation (in an | A voucher for 50% of the amount in Schedule A that corresponds to that Class Member's Philips Plasma TV for each Philips Plasma TV for which the required Proof is provided. |

|   | | |
|---|---|---|
|   | open-ended manner) that the Philips Plasma TV failed as a result of a problem with the Power Supply Board or a damaged or non-functioning capacitor on the Power Supply Board and that the Philips Plasma TV was never repaired. | |
| D | Includes any Settlement Class Member who can provide acceptable proof that they purchased new or received as a gift a new Philips Plasma TV in the United States, provides an attestation (in an open-ended manner) that the Philips Plasma TV failed as a result of a problem with the Power Supply Board or a damaged or non-functioning capacitor on the Power Supply Board and that the Philips Plasma TV was never repaired. | A voucher for 30% of the amount in Schedule A that corresponds to that Class Member's Philips Plasma TV for each Philips Plasma TV for which the required Proof is provided. |
| E | Includes any Settlement Class Member who provides an attestation that they still own the Philips Plasma TV. | A voucher for 20% of the amount in Schedule A that corresponds to that Class Member's Philips Plasma TV. |

As referenced in the chart above, "Schedule A" contains averaged and rounded values from an independent third-party estimating the value of each of the

9

fourteen models, depending on the age and model of a particular Class Members' TV.[8]  The Schedule is below:

| Model | Amount |
|-------|--------|
| 50PF9731D/37 | $135 |
| 50PF9431D/37 | $125 |
| 50PF9631D/37 | $120 |
| 50PF7321D/37 | $110 |
| 50PF9830A/37 | $90 |
| 50PF7320A/37 | $85 |
| 42PF7220A/37 | $85 |
| 50MF231D/37 | $80 |
| 42PF5321D/37 | $80 |
| 42PF7321D/37 | $75 |
| 50PF7220A/37 | $75 |
| 50PF9630A/37 | $65 |
| 42PF9630A/37 | $55 |
| 42PF7320A/37 | $45 |

---

[8]    If there was no Blue Book value for a specific model, approximations for the Blue Book values were estimated.

As an example, if a Class Member purchased television model 50PF9731D/37 and is a member of Category C, they will be entitled to a voucher worth $67.50 (*i.e.,* 50% of the $135 value that corresponds to this TV model in Schedule A).[9]   The Settlement Administrator will be responsible for making these calculations, and will be available to answer any questions Class Members may have.   The total cash payments available to Class Members under the Settlement Agreement is capped at $4 million.[10]   However, there is no capped limit on the number of vouchers to be distributed in the aggregate to the Settlement Class Members and there is no limit on the value of the voucher payments under the Settlement.[11]

The parties have selected Dahl, Inc. ("Dahl") as the proposed Settlement Administrator.   Dahl has extensive experience in this role, having recently being appointed as a class action settlement administrator by district courts in *Casey v. Coventry Healthcare of Kan.*, No. 08-0201-CV-W-DGK, 2011 U.S. Dist. LEXIS

---

[9]      As set forth in the SA, these vouchers will be fully-transferrable, and can be used on a wide-variety of Philips' products.  Settlement Class Members in Categories A and B will also have the option of receiving a cash payment in lieu of a voucher.

[10]      If the Settlement Cap is reached, there will be a proration of the cash payment amounts to ensure compliance with this limitation.

[11]      Except for those in Class E (where only one voucher is allowed per household and/or address), Settlement Class Members may submit, subject to proof, up to three Claim Forms and are limited to three vouchers and/or cash payments pursuant to the Settlement Agreement.

47663, at *15 (W.D. Mo. May 4, 2011) and *Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig. v. Avent Am., Inc*., MDL No. 1967, 2011 U.S. Dist. LEXIS 2416, 45-46 (W.D. Mo. Jan. 7, 2011).  A copy of the Dahl's resume is attached hereto as Exhibit B.  As discussed in the SA, subject to Court approval, Dahl will be responsible for providing notice to class members and administering the settlement (subject to oversight by Plaintiffs' counsel and counsel for Philips).

The SA also contains a robust notice plan.  It will include providing direct individualized notification, via e-mail or first class U.S. mail, to all prospective Settlement Class Members for whom Philips has contact information.  These Class Members will be provided with a copy of the proposed Claim Form (Settlement Exhibit 3) and Long Form Notice (Settlement Exhibit 4).  Class Counsel will also issue a Press Release and Philips will cause the Short Form Notice (Settlement Exhibit 5) to be published in USA Today.  During the following week, they will conduct internet advertising targeting potential class members through keyword services provided by Google and Yahoo.  Dahl will also maintain a Settlement Website and a toll-free number dedicated to the Settlement.  Dahl has also created postcards (to be sent to purchasers that registered their televisions) (Settlement Exhibit 6) and an email notice that contains a link to the settlement website

(Settlement Exhibit 7).  In addition, Plaintiffs' Counsel have agreed to post

information about the settlement on their respective law firm websites.[12]

A summary of the pertinent deadlines contemplated by the parties is set forth

below:

| 70 days before Final Approval Hearing | Last day to complete class notice (the "Notice Date"). |
|---|---|
| 60 days before Final Approval Hearing | Last day to file papers in support of final approval of the Settlement and any application for attorneys' fees and expenses, and incentive awards for the Class Representatives. |
| 21 days before Final Approval Hearing | Last day to file comments in support of or in objection to the Settlement, the fee application and the proposed Incentive Awards and the last day for Class Members to request exclusion from the Settlement Class (the "Opt-Out and Objection Date"). |
| 11 days before Final Approval Hearing | Last day for responses to any objections to the Settlement and/or fee application |
| _____, 2012 <br><br> at _____am/pm | Final Approval Hearing |
| 75 days after Final Approval Hearing | Date by which all claims must be received by Claims Administrator (the "Claims Deadline"). |

Finally, Philips has agreed to not oppose an application by Class Counsel

seeking the payment of attorneys' fees and expenses in the aggregate amount of no

more than $1,575,000.  Philips has also agreed not to oppose (and shall pay, if

approved by the Court), an application of an incentive award to the Class

---

[12]     Philips will also provide the requisite notification to the applicable federal official(s) and state attorneys general, in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715(d).

Representatives in the amount of $750 each.  Plaintiffs will file an application

seeking Court approval of these payments prior to the deadline by which Class

Members have to file objections.  Philips' obligations to pay Class Counsel's

Court-approved fees and expenses and the incentive awards to the Class

Representatives shall not reduce or impact the Settlement Consideration the Class

is to receive.  This information will be clearly communicated to Settlement Class

Members in the various notices.

### C.     Confirmatory Discovery

In addition to the extensive discovery undertaken before mediation,

immediately following the mediation on August 15, 2011, Philips' counsel made

available to Plaintiffs' counsel documents explaining how the fourteen selected

models were identified as those appropriate for settlement.   Plaintiffs' counsel

reviewed an expert declaration, which details how, during inspections of Plaintiffs'

television sets and subsequent investigation, Philips discovered a problem with a

subcomponent of their plasma televisions that were purchased from a third party --

specifically, a faulty capacitor that appears on only certain power supply boards

provided to Philips by that third party.  Plaintiffs' counsel also conducted a

telephonic interview with a former employee of Philips who worked at the

company for over 35 years, and who oversaw investigations of potential product

problems, including on Philips' television products.  This employee explained that

Philips could not track every model that had the faulty capacitor, but could narrow down the power supply boards that would likely have had the defective capacitors. In conjunction with this investigation, the Plaintiffs' own televisions, internal Philips' documents showing when certain boards were used, and Philips' call and warranty repair data for the Philips' plasma televisions, the parties narrowed down the plasma models likely to have had the faulty capacitors, erring on the side of inclusion.  Confirmatory discovery also supported that no higher than expected complaints or repair data supported inclusion for other Philips plasma models, nor any of their LCD televisions.

### III.  ARGUMENT

Before a settlement of a class action can be finally approved, the Court must determine "after a hearing" that it is "fair, reasonable, and adequate."  *See* FED. R. CIV. P. 23(e)(2).  The Court must also "direct notice in a reasonable manner to all class members who would be bound by the proposal."  *See* FED. R. CIV. P. 23(e)(1).  "The ultimate approval of a class action settlement depends on 'whether the settlement is fair, adequate, and reasonable.'" *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) (quoting *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983)).  However, "[i]n evaluating a proposed settlement for preliminary approval… the Court is required to determine only whether the proposed settlement discloses grounds to doubt its fairness or other

obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Id.* (citations omitted); *accord, In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001) (preliminary approval should be granted if there are no "grounds to doubt [the settlement's] fairness or other obvious deficiencies") (quoting Fed. Jud. Ctr., *Manual for Complex Litig.*, § 30.41, at 236-37 (3rd ed. 1995)).[13]  As one court has aptly stated, "[t]he purpose of the preliminary approval process is to determine whether there is any reason <u>not</u> to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citations omitted; emphasis supplied); *Gautreaux v. Pierce,* 690 F.2d 616, 621, n.3 (7th Cir. 1982) (the purpose of preliminary approval "is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing").  This approach is consistent with the principle that "[c]ompromises of disputed claims

---

[13]     A proposed class action settlement is entitled to a presumption of fairness. As the leading commentator on class actions has noted, courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."  Newberg on Class Actions § 11:41; *see also Little Rock School Dist.,* 921 F.2d at 1391 (stating that class action settlement agreements "are presumptively valid"); *Petrovic v. Amoco Co.,* 200 F.3d 1140, 1148 (8th Cir. 1999) (holding that a "strong public policy favors agreements, and courts should approach them with a presumption in their favor").

are favored by the courts." *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910);

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283,

317 (3d Cir. 1998); *Little Rock School Dist.* v. *Pulaski County Special School

Dist. No. 1,* 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors

settlements. Courts should hospitably receive them.... As a practical matter, a

remedy that everyone agrees to is a lot more likely to succeed than one to which

the defendants must be dragged kicking and screaming."); *Armstrong v. Board of

Sch. Directors,* 616 F.2d 305, 313 (7th. Cir. 1980) ("In the class action context in

particular, there is an overriding public interest in favor of settlement.... Settlement

of the complex disputes often involved in class actions minimizes the litigation

expenses of both parties and also reduces the strain such litigation imposes upon

already scarce judicial resources.") (citations and internal quotations omitted).

 Because there are no "obvious deficiencies" in the Settlement Agreement,

nor any "grounds to doubt its fairness," the standards for granting preliminary

approval are readily satisfied here.  Plaintiffs respectfully submit that this

Settlement is fair, adequate, and reasonable; that the requirements for final

approval will be satisfied; and that Class Members will be provided with notice in

a manner that satisfies the requirements of due process and FED. R. CIV. P. 23(e).

Therefore, this Court is respectfully requested to enter the proposed order granting

preliminary approval, which will: (i) grant preliminary approval of the proposed

Settlement; (ii) certify the Settlement Class pursuant to the provisions of FED. R.

CIV. P. 23; (iii) schedule a Final Approval Hearing to consider final approval,

pursuant to the schedule set forth above; and (iv) direct that notice of the proposed

Settlement and hearing be provided to Class Members in a manner consistent with

the agreed-upon Notice Plan in the Settlement Agreement.

## A.      The Settlement Should Be Preliminarily Approved By the Court.

Unlike at the final approval stage, "the Court, at [the preliminary approval]

juncture, is not obligated to, nor could it reasonably, undertake a full and complete

fairness review." *In re Inter-Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. at 379.

Instead, "the Court's duty is to conduct a threshold examination the overall fairness

and adequacy of the settlement in light of the likely outcome and the cost of

continued litigation." *Id.* (citing *Ohio Public Interest Campaign v. Fisher Foods,*

*Inc.*, 546 F. Supp. 1, 7 (N.D. Ohio 1982)).  In making this assessment at the

preliminary approval stage, district courts within the Third Circuit typically

consider factors such as: (i) whether the negotiations occurred at arm's length; (ii)

whether there was sufficient discovery; and (iii) whether the proponents of the

settlement are experienced in similar litigation. *See Curiale v. Lenox Group, Inc.*,

No. 07-1432, 2008 U.S. Dist. LEXIS 92851, at *26 (E.D. Pa. Nov. 14, 2008)

(citations omitted).  *See also, Jones v. Commerce Bancorp, Inc.*, No. 05-5600

(RBK), 2007 U.S. Dist. LEXIS 52144, at *5 (D.N.J. July 16, 2007); *Girsh v.*

*Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (considering the complexity of case, reaction of class members, stage of proceedings, risks associated with the litigation, ability of the defendant to withstand a greater settlement, and whether the settlement falls within the range or reasonableness).

In light of these standards, the criteria for granting preliminary approval of this complex class action lawsuit is met.  The settlement was reached as a result of extensive, arm's-length negotiations between experienced counsel, and which culminated in an all-day mediation session with Retired Judge Politan.  As discussed above, the parties have exchanged voluminous discovery in this case, which has confirmed that the settlement is fair and reasonable to Settlement Class members.  Moreover, Court-appointed Co-Lead Counsel, Interim Lead Counsel, as well as counsel for Philips, believe the Settlement is in the best interests of their respective clients.  The Settlement will also remove the uncertainties and risks to both parties from proceeding further in the litigation.  For these reasons, preliminary approval should be granted.

**B.    Certification of the Proposed Class for Purposes of Settlement Only is Appropriate.**

Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998).  As such, Plaintiffs seek the conditional certification of the Settlement Class set forth above and in the Settlement Agreement.

"For the Court to certify a class, the plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b)."  *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 564 (D.N.J. 2010).  *Accord Marcus v. BMW of N. Am., LLC,* No. 08-5859 (KSH), 2010 U.S. Dist. LEXIS 122908, at *4 (D.N.J. Nov. 19, 2010).  The four requirements FED. R. CIV. P. 23(a) are numerosity, commonality, typicality, and adequacy.  In addition, Plaintiffs seek certification of the Settlement Class pursuant to Rule 23(b)(3), which provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]."  FED. R. CIV. P. 23(b)(3).

As discussed below, these requirements are met for purposes of settlement in this case.

### 1.    *Numerosity Under Rule 23(a)(1).*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Generally, if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40, the numerosity requirement of Rule 23(a) has been met." *In re OSB Antitrust Litig.*, No. 06-826, 2007 U.S. Dist. LEXIS 56584, at *5 (E.D.Pa. Aug. 3, 2007); *see also, Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity."). Here, the Settlement Class consists of hundreds of thousands of geographically dispersed consumers. Numerosity is therefore easily satisfied here.

### 2.    *Commonality Under Rule 23(a)(2).*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "A finding of commonality does not require that all class members share identical claims, and factual differences among the claims of the putative class members do not defeat certification." *In re Prudential Ins. Co. Sales Litig.*, 148 F.3d 283, 310 (3d Cir. 1998). The Supreme Court recently stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a

nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556.

In this case, there exist several common questions of law and fact, such as whether the applicable Philips and Magnavox plasma televisions suffer from a uniform design defect, whether Philips had a duty to disclose this alleged defect to Settlement Class Members, whether Philips' warranty limitations on the plasma televisions are unconscionable or otherwise unenforceable under the circumstances, and whether Plaintiffs have actionable claims under the asserted consumer fraud statutes. Commonality is therefore satisfied.

### 3. *Typicality Under Rule 23(a)(3).*

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. FED. R. CIV. P. 23(a)(3). "If the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established." *Inmates of the Northumberland County*, No. 08-cv-345, 2009 U.S. Dist. LEXIS 126479, at *71 (M.D. Pa. Mar. 17, 2009) (quoting *Newton*

*v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154, 183-84 (3d Cir.

2001)).

Here, all of Plaintiffs' claims arise out of the same alleged conduct by

Philips related to its design, manufacture and sale of the allegedly defective plasma

televisions (and its alleged failure to disclose that material fact).  This requirement

is therefore met.

### 4. ***Adequacy of Representation Under Rule 23(a)(4).***

The final requirement of Rule 23(a) is that "the representative part[y] will

fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).

"There are two criteria for determining whether the representation of the class will

be adequate: 1) The representative must have common interests with unnamed

members of the class, and 2) it must appear that the representatives will vigorously

prosecute the interests of the class through qualified counsel."  *In re Countrywide*

*Fin. Corp. Customer Data Sec. Breach Litig*., No. 3:08-MD-01998, 2009 U.S.

Dist. LEXIS 119870, at *19 (W.D. Ky. Dec. 22, 2009) (quoting *Senter v. General*

*Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)).

In addressing the adequacy of the proposed class representative, district

courts examine whether he or she "has the ability and incentive to represent the

claims of the class vigorously, that he or she has obtained adequate counsel, and

that there is no conflict between the individual's claims and those asserted on

behalf of the class." *Ritti v. U-Haul Int'l., Inc.*, 05-4182, 2006 U.S. Dist. LEXIS 23393, at *15 (E.D.Pa. Apr. 26, 2006). Here, each of the Class Representatives are adequate, in that they purchased one of the plasma televisions subject to the Settlement Agreement and were allegedly injured in the same manner based on the same alleged defect. They have also each actively participated in the discovery in this case, and have been in constant communication with their attorneys regarding the litigation.

With respect to the adequacy of Class Counsel, they have invested considerable time and resources into the prosecution of this action. Class Counsel have a wealth of experience in litigating complex class action lawsuits and were able to negotiate an outstanding Settlement for the Class in this case. Plaintiffs' counsel have extensive experience litigating complex class action cases such as this; the firm resumes of Class Counsel are submitted herewith as Exhibit C. The adequacy requirement is, accordingly, met here.

### 5. *The Requirements of Rule 23(b)(3)Are Met.*

Plaintiff seeks to certify the Settlement Class under Rule 23(b)(3), which has two components: predominance and superiority. *See* FED. R. CIV. P. 23(b)(3). "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common

issues 'predominate' over individual issues.'" *In re Countrywide Fin. Corp.*

*Customer Data Sec. Breach Litig.*, 2009 U.S. Dist. LEXIS 119870, at *25 (quoting

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996)).  When assessing

predominance and superiority, the court may consider that the class will be

certified for settlement purposes only, and that a showing of manageability at trial

is not required.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618 (1997)

("Confronted with a request for settlement-only class certification, a district court

need not inquire whether the case, if tried, would present intractable management

problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no

trial.").

        "To determine whether common issues predominate over questions affecting

only individual members, the Court must look at each claim upon which the

plaintiffs seek recovery … determine whether generalized evidence exists to prove

the elements of the plaintiffs' claims on a simultaneous, class-wide basis, or

whether proof will be overwhelmed by individual issues."  *Dewey,* 728 F. Supp. 2d

at 568.  With respect to superiority, the Court "considers whether or not a class

action is a superior method of fairly and efficiently adjudicating the controversy."

*Id.* at 569.  Rule 23(b)(3) provides a non-exhaustive list of factors to be considered

when making this determination.  These factors include: (i) the class members'

interests in individually controlling the prosecution or defense of separate actions;

(ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

Here, there are several common questions of law and fact that predominate over any questions that may affect individual Class Members.[14]  For example, were this case to proceed, the primary issue would be whether Philips is liable to the Class under the claims pled in the Complaint based on the alleged existence of a design defect and its related conduct.  This is an issue subject to "generalized proof," and is a "question that is common to all class members."  *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 U.S. Dist. LEXIS 119870, at *26 ("the proof required [must focus] on Defendant's conduct, not on the conduct of individual class members.")  So too is the case here.  Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied.  *See* FED. R. CIV. P. 23(b)(3).  The Settlement provides members of the Settlement Class with the ability to obtain prompt, predictable, and certain

---

[14]    Philips has agreed to certification of a class for settlement purposes only and, in the event that the Court denies Plaintiffs' request to certify the settlement class, Philips expressly reserves the right to challenge certification on all relevant grounds.

relief, and contains well-defined administrative procedures to assure due process in the application of the Settlement Agreement to each individual claimant. This includes the right of any Class Member who is dissatisfied with the Settlement to object to it, or to exclude themselves. The Settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Philips, or by going forward with this case as a class action. Finally, the Parties are not aware of any other pending lawsuit—class action or otherwise—brought by a Philips or Magnavox television owner against Philips for the conduct alleged in this case, aside from these four consolidated actions. Therefore, "class status here is not only the superior means, but probably the only feasible [way]…to establish liability and perhaps damages." *Augustin v. Jablonsky,* 461 F.3d 219, 229 (2d Cir. 2006) (quoting *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004)).

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

### C.      The Court Should Approve the Notice Plan.

Under FED. R. CIV. P. 23(e), class members who would be bound by a settlement are entitled to reasonable notice of it before the settlement is ultimately approved by the Court. *See* Fed. Jud. Ctr., *Manual for Complex Litig.* (3d ed. 1995) § 30.212. And because Plaintiff here seeks certification of the Settlement

Class under Rule 23(b)(3), "the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 U.S. Dist. LEXIS 119870, at *42-43 (citing FED. R. CIV. P. 23(c)(2)(B)). In order to satisfy these standards and "comport with the requirements of due process, [the] notice must be 'reasonably calculated to reach interested parties.'" *Id.* at *43 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)); *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1176 (8th Cir. 1995) ("Notice of a settlement proposal need only be as directed by the district court... and reasonable enough to satisfy due process." ). "There is no one 'right way' to provide notice as contemplated under Rule 23(e)." *In re Wireless Telephone Federal Cost Recovery Fees Litig.,* No. 4:03-MD-015, 2004 WL 3671053, *8-9 (W.D. Mo. April 20, 2004). It should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petrovic,* 200 F.3d at 1153 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

The Notice Plan in this case is the best notice practicable under the circumstances to reach all Class Members. Philips maintains records of television purchasers from sources such as warranty registration records and call center data.

The Notice Plan in the Settlement Agreement calls for Philips to compile this information into a class list, which will be used by the Claims Administrator to provide all of these Class Members with a direct, individual mailing (via e-mail or U.S. Mail).

In addition to this mailed notice, the Parties have agreed upon a schedule for the Publication Notice to appear in the USA Today, a nationally published newspaper. Relevant information related to the Settlement will also be posted on the Settlement Website for the duration of the Claims Period.

Finally, the substance of the proposed Class Notice—which are attached as Exhibits 4 and 5 to the Settlement Agreement—will include all necessary legal requirements and provide a comprehensive explanation of the Settlement in simple, non-legalistic terms. Accordingly, the Parties respectfully request that the Court approve the Notice Plan.

### D.     Final Approval Hearing Should be Scheduled.

Finally, the Court should schedule a final fairness hearing to decide whether to grant final approval to the Settlement, address Class Counsel's request for attorneys' fees, expenses and an incentive award for the Class Representatives, and determine whether to dismiss this action with prejudice. *See* Fed. Jud. Ctr., *Manual for Complex Litig.* § 30.44 (3d ed. 1995); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 600 (3d Cir. Pa. 2010). The fairness hearing will provide a forum to

explain, describe or challenge the terms and conditions of the class certification

and Settlement, including the fairness, adequacy and reasonableness of the

Settlement.  At that time, Class Counsel will present their application for their fees

and expenses pursuant to FED. R. CIV. P. 23(h), and for the incentive award to

Plaintiffs.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter

an Order: (1) conditionally certifying a class action with respect to the claims

against Defendant pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) for the purpose of

effectuating a class action settlement of the claims against the Defendant; (2)

preliminarily approving the Settlement; (3) directing notice to class members

consistent with the Notice Plan in the Settlement; and (4) scheduling a Final

Approval Hearing.

Dated: September 16, 2011

Respectfully submitted,

By:

**CHIMICLES & TIKELLIS LLP**
Steven A. Schwartz (*pro hac vice*)
Benjamin F. Johns
(NJ ID No. 03818-2005)
361 W. Lancaster Avenue
Haverford, PA  19041
Office: (610) 642-8500
Fax: (610) 649-3633

**HORWITZ, HORWITZ**
  **& PARADIS**
Michael A. Schwartz
Justin Shane
570 Seventh Avenue, 20th Floor
New York, NY 10018
Tel: 212-986-4500
Fax: 212-986-4501

**COHEN MILSTEIN SELLERS**
  **& TOLL PLLC**
Andrew N. Friedman
Douglas J. McNamara
1100 New York Ave, NW
Suite 500, West Tower
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax:  (202) 408-4699

*Counsel for Plaintiffs*