# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# NEWARK DIVISION

**In re PHILIPS/MAGNAVOX TELEVISION LITIGATION**

No. 09-03072 (CCC) (JAD)

Class Action

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**HORWITZ, HORWITZ & PARADIS**
Michael A. Schwartz
(admitted *pro hac vice*)
Justin Shane
(admitted *pro hac vice*)
570 Seventh Avenue, 20th Floor
New York, NY  10018
Tel: (212) 986-4500
mschwartz@hhplawny.com
jshane@hhplawny.com

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Andrew N. Friedman
(admitted *pro hac vice*)
Douglas J. McNamara
(admitted *pro hac vice*)
1100 New York Ave, NW
Suite 500, West Tower
Washington, D.C.  20005
Tel.: (202) 408-4600
afriedman@cohenmilstein.com
dmcnamara@cohenmilstein.com

**CHIMICLES & TIKELLIS LLP**
Steven A. Schwartz (admitted *pro hac vice*)
Benjamin F. Johns (NJ ID No. 03818-2005)
361 W. Lancaster Avenue
Haverford, PA  19041
Tel: (610) 642-8500
steveschwartz@chimicles.com
benjohns@chimicles.com

*Counsel for Plaintiffs*

{00036573.1 }

# <u>TABLE OF CONTENTS</u>

I.      Introduction ......................................................................................... 1

II.     The Limited Number Of Objectors
        Favors Approval Of The Settlement ................................................... 5

III.    The Objections to the Settlement Lack Merit ................................... 9

        a.      The Morton Objection Seeks Compensation for
                Problems Outside the Scope of the Settlement .................... 10

        b.      The Remaining Objections Are Based Solely on
                the Amount of the Award and Therefore Lack Merit ......... 12

IV.     Conclusion ........................................................................................ 16

# TABLE OF AUTHORITIES

<u>Cases</u>

*In re American Investors Life Insurance Co.,*
    263 F.R.D. 226 (E.D. Pa. 2009) ...................................................................................7

*In re AremisSoft Corp. Securities Litigation,*
    210 F.R.D. 109 (D. N.J. 2002) ....................................................................................4

*Browning v. Yahoo! Inc.,*
    Case No. 04-01463,
    2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) .........................................14

*Careccio v. BMW of N. America LLC,*
    Civ. No. 08-2619,
    2010 U.S. Dist. LEXIS 42063, 2010 WL. 1752347 (D.N.J. Apr. 29, 2010) ..................13

*In re Cendant Corp. Litigation,*
    264 F.3d 201 (3d Cir. 2001) .......................................................................................7

*In re Countrywide Finance Corp. Customer Data Sec. Breach Litigation,*
    No. 3:08-MD-01998,
    2010 U.S. Dist. LEXIS 87409 (W.D. Ky. Aug. 20, 2010) ..........................................9

*Dewey v. Volkswagen of America,*
    728 F. Supp. 2d 546 (D.N.J. 2010) ........................................................................7, 14

*Garner v. State Farm Mutual Automobile Insurance Co.,*
    No. 08-1365,
    2010 U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010) ..........................................8

*Hainey v. Parrott,*
    617 F. Supp. 2d 668 (S.D. Ohio 2007) .......................................................................8

*Hall v. AT&T Mobility LLC,*
    C.A. No. 07-5325,
    2010 U.S. Dist. LEXIS 109355 (D.N.J. Oct. 13, 2010) ...........................................14

*International Union v. Ford Motor Co.,*
    No. 07-CV-14845,
    2008 U.S. Dist. LEXIS 66899 ( E.D. Mich. Aug. 29, 2008) ......................................9

*McCoy v. Health Net, Inc.,*
    569 F. Supp. 2d 448 (D.N.J. 2008) ...........................................................................11

*Nieto v. Unitron, LP,*
  No. 06-cv-11966,
  2009 U.S. Dist. LEXIS 13230 (E.D. Mich. Feb. 20, 2009) .................................................9

*In re Sony SXRD Rear Projection TV Class Action Litigation,*
  06 Civ. 5173,
  2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) ...................................................11

*Varacallo v. Mass. Mutual Life Insurance Co.,*
  226 F.R.D. 207 (D.N.J. 2005) .....................................................................................3, 9

*In re Warfarin Sodium Antitrust Litigation,*
  391 F.3d 516 (3d Cir. 2004)...........................................................................................3

*Whitford v. First Nationwide Bank,*
  147 F.R.D. 135, 141 (W.D. Ky. 1992)..............................................................................8

## **Statutes**

28 U.S.C. § 1715..................................................................................................................8

Fed. R. Civ. P. 23(e) ............................................................................................................5

## I.     Introduction

Plaintiffs[1] submit this Reply Memorandum of Law in Support of Their Unopposed Motion For Final Approval of Class Action Settlement (the "Settlement Agreement") between Defendant Philips Electronics North America Corporation ("Philips" or "Defendant") and the Plaintiffs and Settlement Class Members.  *See* Docket Entry No. 138. The Motion seeks (1) final certification of the Settlement Class; (2) the Court's final approval of the Settlement; and (3) the Court's final approval that the Notice Program has met the requirements of Rule 23 and has constituted the best notice practicable under the circumstances.

The Parties have entered into a Settlement that achieves an excellent result for the Settlement Class in this Action involving certain Philips and Magnavox-branded flat screen televisions.  The Settlement Stipulation provides the opportunity for Settlement Class Members to obtain significant monetary relief, including cash refunds and vouchers.  The amount and type of relief is appropriately tailored to the circumstances of each respective

---

[1]     Unless otherwise stated, all capitalized terms shall have the same meaning as set forth in the Stipulation of Class Action Settlement ("Settlement Stipulation" or "Settlement") signed by the Parties on September 15, 2011 and previously filed with this Court.  The Settlement Agreement and its exhibits were filed with the Court on September 16, 2011. *See* Docket Entry No. 131.

Settlement Class Member—a group of consumers who may not have received any other benefit without this litigation.

As noted in Plaintiffs' moving brief, the Settlement is the result of extensive and hard fought arms'-length negotiations between the parties after nearly a year of discovery, including inspections of the Televisions of each of the current named Plaintiffs and the review of more than 170,000 pages of documents produced in the litigation.  After discovery was substantially complete, the parties submitted a joint request seeking a temporary stay to explore whether, and on what terms, the claims brought in this Action could be resolved in a fair and reasonable manner.  Magistrate Judge Dickson granted the request on July 25, 2011 and the settlement negotiations quickly intensified, with numerous teleconferences and exchanges of draft term sheets.  After these extended and intense negotiations, as well as a full day mediation session before the highly-respected Judge Nicholas Politan (Ret.), the Parties submitted their Settlement Stipulation, and the Court granted Preliminary Approval of the Settlement on October 3, 2011.  *See* Docket Entry No. 133.

In the nearly two months since notice concerning the Settlement Agreement was sent to Settlement Class Members, the Settlement has received almost entirely positive support.  More than 65,000 individuals

2

were directly provided notice of the settlement, and millions more were exposed to internet advertisements and publication in *USA Today*, directed to consumers throughout the United States.  And, with the deadline to opt-out or object to the Settlement passing on November 25, 2011, only a miniscule percentage offered any disapproval:  only six objections and thirteen opt-outs were received from purported Settlement Class Members.[2] The fact that so few Settlement Class Members objected to the Settlement strongly supports a finding that the settlement is fair, reasonable and accurate.  *See*, *e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (presumption of fairness applies to proposed class action settlements when, *inter alia*, "only a small fraction of the class object[s]").

In addition to the presumption of fairness, none of the objections has any merit.  As a threshold matter, the objectors do not address (1) that Philips vigorously defended its position that no design defect existed in its

---

[2]      Plaintiffs' Counsel also received a letter from Mr. Michael Fiorito. The letter requests information regarding whether a consumer is able to file a claim without providing the Claims Administrator a serial number, model number or proof of purchase (other than a cancelled personal check).  The letter seeks only the ability to file a Claim Form—it does not object to the Settlement.  *See* Declaration of Douglas McNamara (Exhibit 1).  Attempts to contact Mr. Fiorito were limited due to his failure to include a phone number.  However, even if construed as an objection, courts have found "unpersuasive the objections that the requirement of submitting documentation in support of a claim is unfair."  *See*, *e.g.*, *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 242 (D.N.J. 2005).

flat screen televisions and (2) Philips' position that Plaintiffs have offered no evidence (i) that Philips' had knowledge of any design defect or (ii) that any design defect in fact existed in Philips' flat screen televisions.  At best, discovery suggested issues with components Philips received from a single supplier during a limited period of time.  Given the results of both pre-settlement and confirmatory discovery, there was significant risk to the Plaintiffs in further litigating the case.  *See*, *e.g.*, *In re AremisSoft Corp. Secs. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) (finding settlement fair "in light of the attendant risks of litigation.").

Four of the six objectors complain that the Settlement should reimburse class members for what they spent on their televisions.  Another objector complains he would not be reimbursed 100% of his repair costs. These types of complaints, however, have repeatedly been rejected by courts.  More importantly, these objectors ignore that the televisions subject to the Settlement were manufactured half a decade ago and have a current "Blue Book" value that is a small fraction of what consumers originally paid for the televisions.  Finally, the settlement provides $165 voucher/$65 cash for repair costs; the $165 was based upon the average market costs for repair.  In light of the risks in litigation discussed above, the reduced compensation for repairs is fair and reasonable.

4

The remaining objector complains that the Settlement does not cover problems with the *small signal board* of her Philips plasma television – but that is a problem by definition outside the scope of the Settlement (which includes only capacitors on *power supply boards* or "PSBs," an entirely different board) and thus irrelevant to determining whether the Settlement is fair, adequate and reasonable under Fed. R. Civ. P. 23(e).  As such, this objection also provides no basis to reject the Settlement.

As discussed below, the valuable monetary and injunctive relief afforded to the Settlement Class is fair, reasonable and adequate given the circumstances of this Action.  Plaintiffs therefore move this Court for a final order and judgment:  (1) certifying the Settlement Class; and (2) granting final approval of the Settlement Stipulation including final approval of the Notice Program.

## II.    The Limited Number Of Objectors Favors Approval Of The Settlement

Since the comprehensive notice program was initiated in early October, Class support for the Settlement has been overwhelmingly favorable.  In addition to publishing notice in *USA Today*, through a press release on PR newswire, and creating a Search Engine Marketing campaign to direct web traffic to the dedicated Settlement website, Dahl sent

5

notifications to 65,361 potential Class Members.[3]  Declaration of Jeffrey

Dahl Regarding Status of the Notice Program ("Second Dahl Decl.") ¶ 4

(Exhibit 2).  Additionally the toll-free telephone number established to assist

Class members has received 3,813 calls.  *Id*. at ¶ 5.  Philips Senior Counsel

also sent letters related to the settlement to the general counsel's office of ten

retailers that sold the televisions (Exhibit 3).

     Even more significantly, the time to opt-out or object to the

Settlement closed on November 25, 2011, and Dahl has received just

thirteen requests from Class members to opt-out of the Settlement.  Second

Dahl Decl. at ¶ 6.  Dahl has received only five written objections from

Settlement Class Members, which are attached to the Second Dahl Decl. as

---

[3]    The Class Notice Program is set forth in detail in Declaration of
Jeffrey Dahl Regarding Implementation of the Notice Program, which was
submitted to the Court as Exhibit D to Plaintiffs' Memorandum of Law in
Support of Their Motion For Final Approval of Class Action Settlement
(Docket No. 138-4).  On October 6, 2011, Dahl mailed postcard notifications
of the Settlement Agreement to 22,652 potential Class Members, and sent
electronic mail notifications to 42,939 potential Class Members on October
6, 2011.  Declaration of Jeffrey Dahl Regarding Implementation of the
Notice Program ("Dahl Decl.") at ¶ 6.  On October 14, 2011, Dahl sent out
10,514 additional postcard notifications to potential Class Members whose
emails were returned as not delivered or undeliverable.  Dahl Decl. at ¶ 7.  In
addition to the mailed and emailed notices, Philips published a Short Form
Notice in the weekend addition of USA Today on October 7, 2011 and
distributed a press release on PR Newswire regarding the Settlement (Dahl.
Decl. at ¶¶ 11, 13), and Dahl established a dedicated Settlement Website and
a Search Engine Marketing campaign to provide notice to potential
Settlement Class Members by directing them to the Settlement Website.
Dahl Decl. at ¶¶ 8, 14.

Exhibits A-E.[4]  In addition to those five objections, Co-Lead Counsel has received a written objection from Raymond Guadalupe, which is attached to the Declaration of Douglas J. McNamara ("McNamara Decl.") as Exhibit B.[5]  Thus, of the 65,361 individuals to whom Dahl sent notice of the Settlement (which is, itself, a subset of those provided with notice), only .009% have objected to the Settlement.

The fact that so few potential Class members have objected to the Settlement supports a finding that the settlement is fair, reasonable and accurate.  *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement, and the objectors' arguments otherwise are not convincing."); *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 574 (D.N.J. 2010) ("The small number of objections to the settlement itself may be indicative of endorsement."); *In re American Investors Life Ins. Co.*, 263 F.R.D. 226, 239 (E.D. Pa. 2009) ("The

---

[4]      Each of these objectors has either downloaded or requested claim forms from Dahl, and the Morton objectors have submitted a claim form. Second Dahl Decl. at ¶¶ 8-11.

[5]      After Co-Lead Counsel explained the basis for the Settlement and the significant risks Plaintiffs faced by going to trial, Mr. Guadalupe expressed his gratitude to Plaintiffs and agreed to file a claim.  McNamara Decl. at ¶¶ 4-5.

disparity between the number of potential class members and the number of

objectors creates a strong presumption in favor of the settlement."); *Hainey*

*v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007) ("Generally… a small

number of objections, particularly in a class of this size, indicates that the

settlement is fair, reasonable and adequate. Moreover, the trial court should

not withhold approval of the settlement merely because some class members

object to it.") (citing *Whitford v. First Nationwide Bank*, 147 F.R.D. 135,

141 (W.D. Ky. 1992)).

Moreover, Defendant provided notice[6] to all of the appropriate state

and federal officials as required by the Class Action Fairness Act of 2005

("CAFA"), 28 U.S.C. § 1715, and none of these officials filed an objection

to the settlement.  Courts routinely cite this fact as supporting final

approval.  *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.,* No. 08-1365,

2010 U.S. Dist. LEXIS 49477, at *37 (N.D. Cal. Apr. 22, 2010) ("Although

CAFA does not create an affirmative duty for either state or federal officials

to take any action in response to a class action settlement, CAFA presumes

that, once put on notice, state or federal officials will raise any concerns that

they may have during the normal course of the class action settlement

---

[6]     *See* Declaration of Michael H. Steinberg, attached as Exhibit F to
Plaintiffs' Memorandum of Law in Support of Their Motion for Final
Approval of Class Action Settlement.  Docket # 138-6.

procedures."); *Nieto v. Unitron, LP*, No. 06-cv-11966, 2009 U.S. Dist.
LEXIS 13230, at *4 (E.D. Mich. Feb. 20, 2009); *In re Countrywide Fin.
Corp. Customer Data Sec. Breach Litig*., No. 3:08-MD-01998, 2010 U.S.
Dist. LEXIS 87409, at *13 (W.D. Ky. Aug. 20, 2010); *Int'l Union v. Ford
Motor Co*., No. 07-CV-14845, 2008 U.S. Dist. LEXIS 66899, at *50 ( E.D.
Mich. Aug. 29, 2008).

### III.    The Objections to the Settlement Lack Merit

The objections to the Settlement provide no basis to reject the
Settlement. "This Court's role is to determine whether the proposed relief is
fair, reasonable and adequate, not whether some other relief would be more
lucrative to the Class." *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D.
207, 242 (D.N.J. 2005).  The six objectors do not challenge the fairness,
adequacy or reasonableness of the Settlement.  Instead, their arguments
amount to little more than that the Settlement should be better or that they
should be paid more.  Thus "[t]hese objectors are not taking into account
that a Settlement is a compromise, 'a yielding of the highest hopes in
exchange for certainty and resolution.'" *Id.* (internal citations omitted).
This is not a valid basis to reject the Settlement.

### a.     The Morton Objection Seeks Compensation for Problems Outside the Scope of the Settlement

Of the five written objections received, it is immediately apparent that at least one of the objectors' televisions failed for reasons other than what the Settlement seeks to address.  Paragraph 4 of objector Martha Morton's letter states that the Philips-authorized service center "said that the small signal board needed replacing and gave me an estimate of $914.50 to repair the television."  Second Dahl Decl., Ex. A.  The receipt attached to Ms. Morton's letter likewise confirms that the small signal board of her television caused the television to fail.  *Id.*

As made clear in the Class Notice, the Settlement addresses problems with the capacitors only on the power supply boards of certain Philips or Magnavox-brand plasma televisions.  The nature of the problem addressed by the Settlement is the result of a significant amount of pre-settlement and confirmatory discovery that led Plaintiffs to conclude that the common capacitor problem originally complained of was limited to the power supply boards on the television models covered by the Settlement.  *See* Friedman Decl. at ¶ 20.[7]  That Ms. Morton's television suffered from an unrelated

---

[7]     The Declaration of Andrew Friedman was submitted to the Court as Exhibit B to Plaintiffs' Memorandum of Law in Support of Their Motion for Final Approval of Class Action Settlement.

problem that is not common to the Class is no reason to reject the
Settlement.

Moreover, numerous courts have concluded that objections to the
scope of the problem addressed by the settlement or definition of the class
do not challenge the fairness, reasonableness, or adequacy of the settlement
and therefore lack merit.  *See McCoy v. Health Net, Inc.*, 569 F. Supp. 2d
448, 471 (D.N.J. 2008) ("Ms. Nuttall apparently objects to the class
definitions and the scope of the actions, not to the fairness, adequacy, or
reasonableness of the instant Settlement. … As a result, the Court finds that
this objection is not grounds for rejecting the instant Settlement."); *In re
Sony SXRD Rear Projection TV Class Action Litig.*, 06 Civ. 5173, 2008 U.S.
Dist. LEXIS 36093, at *27-28 (S.D.N.Y. May 1, 2008) ("While the Court
makes no judgment as to the merits of the claims, these objections do not
affect the reasonableness of the Settlement reached by the parties to this
action.  The failure of a settlement to compensate non-members of the class
is not a ground for rejection of the settlement.").

To address the separate problem with her small signal board, Ms.
Morton could have simply opted-out of the Settlement.  Instead, Ms. Morton
filed a Claim Form on behalf of her husband, Mr. Harvey Morton.  *See*
Second Dahl. Decl. 11.  Because Ms. Morton's complaint challenges the

scope of a hard-fought settlement that followed nearly a year of fact discovery instead of challenging the fairness, reasonableness or adequacy of the Settlement, her objection provides no basis to reject the Settlement.[8]

> **b.   The Remaining Objections Are Based Solely on the Amount of the Award and Therefore Lack Merit**

The McLaughlin, Parekh, Guadalupe, Manz, and Dishman objectors appear to base their objections solely on the amount of the Settlement Award, although the relief requested differs in each objection.  Focusing just on repair costs, Mr. Manz and Ms. Parekh note that the settlement does not provide the actual cost of repair.  Second Dahl Decl., Exs. B and E..  Ms. Parekh does not however state that she obtained an estimate for the repair of her Philips television, or what the alleged cost to repair her Philips televisions is.  Mr. Manz requested at least $450 for the cost of his two repairs of his set.  Second Dahl Decl., Ex. E.  However, that repair amount far exceeds the customary costs associated with replacing the power supply board as gleaned through discovery.  McNamara Decl. at ¶13.

The other objections are even vaguer.  Mr. McLaughlin suggests that the Defendant "[m]ake it right for the consumer by AT LEAST replacing or

---

[8]   Despite the fact that her television is not covered by the Settlement, counsel for the Parties have attempted to assist Ms. Morton in finding a replacement signal board for her set, so she may inexpensively get it repaired.  McNamara Decl. at ¶ 12.

re-embersing [sic] us ALL of our money so that we can replace it."[9]  Second

Dahl Decl., Ex. C.  The Dishmans state that "[w]e have expended more

monies than the proposed amount and we do not feel that we are being justly

compensated," but do not specify what compensation would be more

appropriate.  Second Dahl Decl., Ex. D.  Finally Mr. Guadalupe requests that

the Court "see what you can do for me."  McNamara Decl., Ex. B.  But Mr.

Guadalupe also attests that his Television failed "8 to 9 months" after he

received it as a gift, *id.*, and that he did not contact Philips after it failed.

McNamara Decl., at ¶ 5.  If this had been accurate, Mr. Guadalupe could

have simply called Philips at that time, and repairs would have been covered

under the original manufacturer's warranty.

While each of these objectors seek additional compensation for what

they paid for their televisions or for the repairs to their television, "full

compensation is not a prerequisite for a fair settlement."  *Careccio v. BMW*

*of N. Am. LLC*, Civ. No. 08-2619, 2010 U.S. Dist. LEXIS 42063, 2010 WL

1752347, at *6 (D.N.J. Apr. 29, 2010).   This Court and others have

repeatedly noted that objections based solely on the amount of the award

---

[9]      Mr. McLaughlin also asserts that "I was also informed that there were
no capacitors to fix the problem that causes my $1800 unit to operate
improperly."  The parties are unaware of any problem with the supply of
capacitors necessary to perform the repairs described in Paragraphs D(1) of
the Settlement Stipulation and have attempted to contact Mr. McLaughlin
concerning this assertion.  McNamara Decl. at ¶ 10.

lack merit.  *See Hall v. AT&T Mobility LLC*, C.A. No. 07-5325, 2010 U.S.

Dist. LEXIS 109355, at *31 (D.N.J. Oct. 13, 2010) ("Thus, the fact that the

Harter Objectors would prefer that all Class members receive greater cash

benefits (and fewer prepaid calling cards), or to extend the two year

injunction to five years has no bearing on whether the terms of the

Settlement Agreement itself are fair and reasonable."); *Browning v. Yahoo!*

*Inc.*, Case No. 04-01463, 2007 U.S. Dist. LEXIS 86266, at *17 (N.D. Cal.

Nov. 16, 2007) ("Finally, some objectors complain that they should get a full

cash refund.  This is tantamount to complaining that the settlement should be

'better,' which is not a valid objection."); *Dewey v. Volkswagen of Am.*, 728

F. Supp. 2d 546, 578-579 (D.N.J. 2010).

In sum, the reimbursement of consumers for the full value of the

televisions in this instance would ignore the fact that the televisions were all

manufactured five to six years ago and have provided most Class members

some use since their purchase.  The present trade-in values for the

televisions range from $135-$45.  *See* Schedule A to the Settlement

Agreement.  Consequently, the parties based the relief in the Settlement on

the trade-in values found on the website "Orion Blue Book Online" rather

than the purchase price of televisions manufactured half a decade ago.

Friedman Aff. at ¶26.  Additional compensation is also contrary to the

voluminous discovery conducted in this Action and the fact that during the course of discovery, Plaintiffs' Counsel *found no evidence* that Philips' had knowledge of any design defect or that any design defect in fact existed in Philips' flat screen televisions.  Thus there was a substantial risk in further litigating the case, as compared to the certainty provided to Settlement Class Members by the Settlement.  Indeed, in conversations with Co-Lead Counsel, the Guadalupe and Parekh objectors have expressed an understanding that full compensation might not be reasonable given the age of the televisions and the risks of going forward with this litigation.  *See* McNamara Aff. at ¶¶ 4-5, 8-9.  Mr. Parekh gave Co-Lead Counsel permission to classify his objection as not taking into account the risks of litigation,[10] and Mr. Guadalupe agreed to file a Claim.  *Id.*

The consideration offered to the Class in the Settlement was the product of intensive negotiation between the parties, including a full day mediation under the auspices of the Honorable Nicolas Politan (Ret.).  The valuable relief takes into account that the Televisions subject to the Settlement were manufactured five to six years ago and that prices for similar televisions have decreased significantly since that time—facts which

---

[10]     Mr. Parekh also stated that he understood that while 100% recovery may not be reasonable, he thought that 70-80% recovery was desirable. McNamara Decl. ¶ 9.

the objectors ignore.  As such, Plaintiffs respectfully request that the Court

not reject the Settlement based on the McLaughlin, Parekh, Guadalupe, and

Dishman objections.

## III.    Conclusion

For the foregoing reasons and for those set forth in Plaintiffs'

Memorandum of Law in Support of Their Motion For Final Approval of

Class Action Settlement, Plaintiffs respectfully request that the Class be

finally certified for settlement purposes and the Settlement and Plan of

Allocation be approved.

Dated:        December 5, 2011            Respectfully submitted,


By: _____

**CHIMICLES & TIKELLIS LLP**
Steven A. Schwartz (admitted *pro hac vice*)
Benjamin F. Johns
(NJ ID No. 03818-2005)
361 W. Lancaster Avenue
Haverford, PA  19041
Tel: (610) 642-8500
steveschwartz@chimicles.com
benjohns@chimicles.com

**HORWITZ, HORWITZ
  & PARADIS**
Michael A. Schwartz
(admitted *pro hac vice*)
Justin Shane
(admitted *pro hac vice*)
570 Seventh Avenue, 20th Floor
New York, NY 10018
Tel: 212-986-4500
mschwartz@hhplawny.com
jshane@hhplawny.com

**COHEN MILSTEIN SELLERS
  & TOLL PLLC**
Andrew N. Friedman
(admitted *pro hac vice*)
Douglas J. McNamara
(admitted *pro hac vice*)
1100 New York Ave, NW
Suite 500, West Tower
Washington, D.C. 20005
Tel.: (202) 408-4600
afriedman@cohenmilstein.com
dmcnamara@cohenmilstein.com

*Counsel for Plaintiffs*

17

Certificate of Service

I, Benjamin F. Johns, certify that I filed the foregoing PLAINTIFFS'

REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION

FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT using the

Court's CM/ECF system, thereby serving it upon all counsel of record in

this case.

By: _____
Benjamin F. Johns

18