NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE PHILIPS/MAGNAVOX TELEVISION LITIGATION | Civil Action No.: 09-3072 (CCC)<br><br><br>**OPINION** |

**CECCHI**, District Judge.

This matter comes before the Court upon Plaintiffs' Unopposed Motion for Final Approval of the Class Action Settlement and Plaintiffs' Unopposed Motion for Attorneys' Fees, Expenses and Incentive Awards. The Court conducted a fairness hearing on December 15, 2011. Having considered the arguments by all the parties to this matter, including six written objections to the adequacy of relief, the Court sets forth its findings below.

## I. BACKGROUND

### A. Litigation History

This class action involves consolidated claims by Plaintiffs that certain flat screen televisions[1] sold by Philips and Funai Corporation, Inc. (together, "Defendants") suffer from a design defect that causes internal components called capacitors installed on power supply boards to overheat and become inoperable. (Friedman Decl. at ¶ 2, Oct. 14, 2011.)

Plaintiffs filed a series of independent actions in the District of New Jersey and the District of Massachusetts. (Id.) Philips filed a motion with the Judicial Panel on Multidistrict Litigation ("JPML") seeking transfer of the District of Massachusetts cases to the District of

---

[1] The settlement is limited to purchasers of plasma televisions. The claims of LCD television purchasers are not being released.

New Jersey, and counsel for the plaintiffs in the Massachusetts cases filed stipulations to transfer those actions to the District of New Jersey pursuant to 28 U.S.C. § 1404.  (Id. at ¶ 3.)  On October 6, 2009 the JPML issued an order transferring all the actions to the District of New Jersey.  (Id.)  Plaintiffs' counsel then submitted a motion to consolidate the actions pursuant to Fed. R. Civ. P. 42 and Local Civ. R. 42.1 and appoint interim lead counsel pursuant to Fed. R. Civ. P. 23(g).  (Id. at ¶ 4.)  On November 30, 2009 the Honorable Peter Sheridan signed an order consolidating the actions and appointing Cohen Milstein Sellers & Toll PLLC and Horowitz, Horowitz & Paridis as Interim Co-Lead Counsel and Chimicles & Tikellis LLP as Liaison Counsel for Plaintiffs and the proposed class.  (Id. at ¶ 5.)

Fourteen named plaintiffs filed the Consolidated Complaint against the Defendants on December 30, 2009.  (Id. at ¶ 6; Consolidated Compl., Docket Entry No. 44.)  The Complaint alleged (1) consumer protection and consumer fraud violations under various state laws; (2) breaches of implied warranties under various state laws; (3) unjust enrichment; and (4) negligent failure to warn.  (Consolidated Compl.)

On February 16, 2010 the Defendants filed separate motions to dismiss the Complaint.  (Friedman Decl. at ¶ 7, Oct. 14, 2011.)  Judge Sheridan dismissed Plaintiffs' breach of warranty and unjust enrichment claims against Philips, and permitted the consumer fraud claims against Philips to go forward.  In re Philips/Magnavox Television Litig., No. 09-3072(PGS), 2010 U.S. Dist. LEXIS 91343 (D.N.J. Sept. 1, 2010).  The Court dismissed all claims against Funai.  Id.

The parties then commenced extensive discovery, which included the following: Plaintiffs' counsel made available for inspection by Philips the televisions of each of the named Plaintiffs that survived the motion to dismiss.  (Friedman Decl. at ¶ 9, Oct. 14, 2011.)  Plaintiffs also responded to document requests and interrogatories served by Philips.  (Id.)  Plaintiffs

received and reviewed over 175,000 pages of documents from Philips and third parties in response to Plaintiffs' document requests. (Id. at ¶ 10.) The parties also deposed numerous witnesses, including depositions by Philips of eight of the nine remaining plaintiffs. (Id. at ¶¶ 9, 11; Settlement Agreement at 16.)

The case was reassigned to this Judge on June 21, 2011. (Docket Entry No. 125.) Discovery was substantially completed by July 25, 2011 and the parties entered into informal settlement discussions shortly thereafter. (Friedman Decl. at ¶¶ 16, 18, Oct. 14, 2011.) On August 18, 2011 the parties participated in a day-long mediation session before the Honorable Nicholas Politan and agreed on settlement terms. (Id. at ¶ 19; Politan Decl. at ¶ 4.)

### B. Settlement Agreement

#### 1. Terms

The Settlement Class consists of all persons that purchased new or received as a gift a new Philips or Magnavox Plasma TV bearing one of fourteen model numbers and with a serial number reflecting a manufacturing date between November 1, 2005 and December 31, 2006. (Settlement Agreement at 11.) There are approximately 291,000 potential Settlement Class Members. (Friedman Decl. at ¶ 21, Oct. 14, 2011.)

The Settlement Agreement provides benefits to Class Members in five categories. All Class Members were required to submit a timely claim and provide proof that they purchased a new Philips plasma TV or received one as a gift. The Settlement Agreement states:

(A) Any Class Member who shows that he or she reported the television problem to Philips and provides proof of repair to the power supply board will receive either (1) a voucher for the greater of (a) 80 percent of the television's present trade-in value or (b) the amount paid to repair the television up to $160 or (2) a $65 cash payment for each television.

(B) Any Class Member who provides proof of repair to the power supply board, including proof of cost and payment will receive either (1) a voucher for the greater of (a) 70

percent of the television's present trade-in value or (b) the amount paid to repair the television up to $145 or (2) a $55 cash payment for each television.

(C) Any Class Member who shows that he or she reported the television problem to Philips and shows that the television failed as result of a problem with the power supply board or capacitor on the power supply board but was not repaired will receive a voucher for 50 percent of the television's present trade-in value.

(D) Any Class Member who shows that that the television failed as result of a problem with the power supply board or capacitor on the power supply board will receive a voucher for 30 percent of the television's present trade-in value.

(E) Any Class Member who shows that he or she still owns the Philips plasma TV at issue in this litigation will receive a voucher for 20 percent of the television's present trade-in value.

(Settlement Agreement at 17–21.)

Class Members in categories A–D may receive up to three vouchers and/or cash payments per household. Class Members in category E are permitted one voucher per household. (Id. at 21.) Cash payments are capped at $4,000,000; if the cap is reached, cash payments will be prorated to insure compliance with the Settlement. (Id. at 21.) There are no limits on the number of vouchers that can be distributed. (Id.) The vouchers are fully transferrable and may be used to purchase a wide range of Philips products. (Id. at 21–22.)

## 2. Notice Plan

Pursuant to the Settlement Agreement, the Court appointed Dahl, Inc. ("Dahl") as the Claims Administrator to implement the notice plan. Dahl received from Philips' counsel the names, mailing, and e-mail addresses of potential Settlement Class Members. (Dahl Decl. at ¶ 4, Oct. 14, 2011.) From that list, Dahl sent 22,652 court-approved postcard notifications and 42,939 court-approved e-mail notifications to potential Settlement Class Members on October 6, 2011. (Id. at ¶¶ 4, 6.) Dahl followed up on undeliverable e-mails and sent postcard notifications in their place where possible. (Id. at ¶ 7.)

The notices explained that any Settlement Class Members desiring to be excluded from or to object to the fairness, reasonableness or adequacy of the Settlement Agreement, Plan of

4

Allocation, or any terms of the Settlement Agreement should file their requests for exclusion or objections no later than fifteen days before the fairness hearing. (Preliminary Approval Order at ¶¶ 14, 18.) As of the deadline, Dahl received thirteen requests for exclusion from the Settlement Class. (Dahl Decl. at ¶ 5, Dec. 5, 2011.) Six objections were filed. (Id. Exs. A–E; McNamara Decl., Ex. B.) The Court will address the objections below.

Dahl created a dedicated settlement Web site where potential Settlement Class Members could obtain answers to frequently asked questions, view a list of TV models covered by the Settlement, and view and download relevant Settlement materials, including the notice and claim forms. (Id. at ¶ 8.) The Web site also contains contact information for potential Settlement Class Members to acquire additional information or seek assistance in submitting claim forms, and a summary notice in Spanish. (Id.) Dahl also established a toll-free telephone number for potential Settlement Class Members to obtain answers to frequently asked questions and request notice and claim forms through the mail. (Id. at ¶ 9.) Both remained active at least until February 28, 2012, the deadline for filing claims. (Id. at ¶¶ 8, 10.)

A court-approved summary notice was published in the weekend edition of USA Today on October 7, 2011. (Id. at ¶ 11.) A press release was distributed the same day via PR Newswire. (Id. at ¶ 13.) Finally, Dahl created and implemented a search engine marketing campaign, which included search and content based advertising designed to target potential Settlement Class Members. Id. at ¶ 14.

Philips sent notice to major former Philips television retailers requesting that the retailers place a link to the Settlement Web site on their Web sites. (Bezikos Decl. ¶ 3.) In addition, Philips placed a link to the Settlement Web site on its Web site. (Id.)

By October 14, 2011 6,799 claim forms had been downloaded from the Settlement Web site.

### 3. Attorneys' Fees, Expenses, and Incentive Awards

After the parties agreed upon the material terms of the Settlement, they agreed, with the assistance of Judge Politan, that Philips would not oppose a request for attorneys' fees and would pay fees and expenses of no more than $1,575,000.  (Friedman Decl. at ¶ 29, Oct. 14, 2011; Settlement Agreement at 32)  Philips also agreed not to oppose an application for an incentive award to the Class Representatives in the amount of $750 each.[2]  (Friedman Decl. at ¶ 29, Oct. 14, 2011; Settlement Agreement at 33)

### C. Preliminary Approval

On October 3, 2011 the Court issued an order preliminarily approving the Settlement and preliminarily certifying the Settlement Class.  (Docket Entry No. 133.)

## II. CLASS CERTIFICATION

Rule 23 of the Federal Rules of Civil Procedure requires the Court to engage in a two-step analysis to determine whether to certify a class action for settlement purposes.  First, the Court must determine if Plaintiffs have satisfied the prerequisites for maintaining a class action as set forth in Rule 23(a). If Plaintiffs can satisfy these prerequisites, the Court must then determine whether the requirements of Rule 23(b) are met.  See Fed. R. Civ. P. 23(a) advisory committee's note.  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).  Rule

---

[2] The Class Representatives are Mark Mancinell, Doug Seitsinger, Phyllis Juried, Al Margrif, Kathy Rock, and MichaelYoungblood.

23(a) provides that class members may maintain a class action as representatives of a class if they show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (d) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

### A. Rule 23(a) Factors

#### 1. Numerosity

Courts will ordinarily discharge the prerequisite of numerosity if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  Plaintiffs "need not precisely enumerate the potential size of the proposed class, nor [are] plaintiff[s] required to demonstrate that joinder would be impossible."  Cannon v. Cherry Hill Toyota, Inc., 184 F.R.D. 540, 543 (D.N.J. 1999) (citation omitted).  "[G]enerally if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  Stewart v. Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001) (citation omitted).

Numerosity is easily satisfied here because the Settlement Class consists of approximately 291,000 geographically dispersed consumers.

#### 2. Commonality

Plaintiffs must demonstrate that there are questions of fact or law common to the class to satisfy the commonality requirement.  Fed. R. Civ. P. 23(a)(2).  The Supreme Court recently clarified the standard, emphasizing that a plaintiff must show that class members "have suffered the same injury," not merely a violation of the same law.  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S.

147, 157, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).  Furthermore, the Court noted that commonality is satisfied where common questions "generate common <u>answers</u> apt to drive the resolution of the litigation." <u>Id.</u> at 2551 (citation omitted) (emphasis in original); <u>see</u> <u>also</u> <u>Sullivan v. DB Invs., Inc.</u>, 667 F.3d 273, 299 (3d Cir. 2011).  The claims of class members "must depend upon a common contention[,] . . . . [which] must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Wal-Mart</u>, 131 S. Ct. at 2551.  Still, "commonality does not require an identity of claims or facts among class members[;]" rather, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." <u>Newton</u> <u>v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 183 (3d Cir. 2001) (citation omitted).

Several common questions of law and fact exist in this case, including whether the Philips and Magnavox plasma televisions at issue suffer from a uniform design defect, whether Philips had a duty to disclose this alleged defect to Settlement Class Members, whether Philips knew of the alleged defect prior to selling the televisions, and whether Plaintiffs have actionable claims under the asserted consumer fraud statutes.  Thus, commonality is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical of the claims . . . of the class."  "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." <u>Barnes v. Am. Tobacco Co.</u>, 161 F.3d 127, 141 (3d Cir. 1998) (citation omitted).  As with numerosity, the Third Circuit has "set a low threshold for satisfying"

8

typicality, stating that "[i]f the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established . . . ." Newton, 259 F.3d at 183–84; see also Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir. 1994). The typicality requirement "does not mandate that all putative class members share identical claims." 259 F.3d at 184 (citation omitted); see also Hassine v. Jeffes, 846 F.2d 169, 176–77 (3d Cir. 1988).

Here, the claims made by the named Plaintiffs and those made on behalf of Settlement Class Members arise out of the same alleged conduct by Philips related to its design, manufacture, and sale of allegedly defective plasma televisions and its alleged failure to disclose the defect. Consequently, the named Plaintiffs' claims are typical of those brought by the Settlement Class Members at large. See, e.g., In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 342 (3d Cir. 2010) (affirming the district court's certification of the settlement class where "the claims of the class representatives [were] aligned with those of the class members since the claims of the representatives ar[o]se out of the same conduct and core facts"); Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d 123, 130 (3d Cir. 1987) (holding that the district court did not abuse its discretion in finding the typicality requirement met because the claims brought by the named plaintiffs and those brought on behalf of the class "stem from a single course of conduct"). Thus, typicality is also satisfied.

### 4. Adequacy of Representation

Finally, the Court must consider adequacy of representation both as to the named Plaintiffs and their Class Counsel under Rules 23(a) and (g). The class representatives should "fairly and adequately protect the interests of the class." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 630 (3d Cir. 1996). Such class representatives must not have interests antagonistic to those of the class. Id. In order to find an "antagonism between [the named] plaintiff[s']

objectives and the objectives of the [class]," there would need to be a "legally cognizable conflict of interest" between the two groups.  Jordan v. Commonwealth Fin. Sys., Inc., 237 F.R.D. 132, 139 (E.D. Pa. 2006).  In fact, courts have found that a conflict will not be sufficient to defeat a class action "unless the conflict is apparent, imminent, and on an issue at the very heart of the suit."  In re Flat Glass Antitrust Litig., 191 F.R.D. 472, 482 (W.D. Pa. 1999) (quoting In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 514 (S.D.N.Y. 1996)).

Here, there is no indication that the named Plaintiffs' interests are antagonistic to those of the absent Class Members.  The Class Representatives each purchased one of the plasma televisions subject to the Settlement Agreement and were allegedly injured in the same manner based on the same alleged defect.  (Pls.' Final Approval Mem. at 20; Friedman Decl. ¶ 2, Oct. 14, 2011)  Consequently, the adequacy requirement has been met.

Class Counsel Andrew N. Friedman, Douglas J. McNamara, Michael A. Schwartz, Justin B. Shane, Steven A. Schwartz, and Benjamin F. Johns and their respective law firms have extensive experience litigating complex class actions and obtaining class action settlements in consumer protection cases, as evidenced by their resumes.  (Pls.' Preliminary Approval Mem., Ex. C.)  Thus, the Court finds that Class Counsel have the qualifications, experience, and ability to conduct the proposed litigation.

With this last requirement satisfied, it is clear that the Settlement Class in this case has demonstrated compliance with the elements of Rules 23(a) and (g).

### B. Rule 23(b)(3) Factors

The Court must next address the question of whether the class comports with the requirements of Rule 23(b). Under 23(b)(3), the Court must find both that "the questions of law or fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As explained below, the class action in this case readily meets these requirements of predominance and superiority.

### 1. Questions of Law and Fact Common to the Class Predominate

To satisfy the predominance requirement, parties must do more than merely demonstrate a "common interest in a fair compromise"; instead, they must provide evidence that the proposed class is "sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc., 521 U.S. at 623; see also Sullivan, 667 F.3d at 297 (noting that the predominance requirement is "more stringent" than the Rule 23(a) commonality requirement). The Third Circuit has repeatedly held that predominance exists where proof of liability depends on the conduct of the defendant. See Sullivan, 667 F.3d at 298–301 (reaffirming Third Circuit precedent supporting this holding). "[V]ariations in state law do not necessarily defeat predominance[] and . . . concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class." Id. at 297.

In Sullivan the class consisted of consumers who purchased the same product – diamonds – and the complaint alleged that the defendant engaged in a price-fixing conspiracy. Id. at 300. The Third Circuit found that the class members shared a common question of law based on whether the defendant had engaged in a price-fixing conspiracy. Id. The Third Circuit further found that the class members shared common factual questions, such as whether the defendant's activities resulted in price inflation. Id. Proof of liability depended entirely on defendant's conduct. Id.

Here, as in Sullivan, the class consists of consumers who purchased or received as a gift the same product – a plasma Philips or Magnavox television. Despite having claims under the

laws of multiple states, the Class Members share common questions of law and fact, such as whether Philips knowingly manufactured and sold defective televisions without informing consumers and when Philips obtained actual knowledge of the alleged defect.  Furthermore, liability in this case depends on Defendant's alleged conduct in manufacturing and selling the televisions.  Evidence in the record supports the conclusion that common questions predominate over individual questions particular to any putative Class Member.  Consequently, the predominance requirement is satisfied.

### 2. A Class Action is Superior to Other Available Methods

To demonstrate that a class action is "superior to other available methods" for bringing suit in a given case, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication."  Georgine, 83 F.3d at 632 (citing Katz v. Carte Blanche Corp., 496 F.2d 747, 757 (3d Cir. 1974) (en banc)).  One consideration is the economic burden class members would bear in bringing suits on a case-by-case basis.  Class actions have been held to be especially appropriate where "it would be economically infeasible for [individual class members] to proceed individually."  Stephenson v. Bell Atl. Corp., 177 F.R.D. 279, 289 (D.N.J. 1997).  Another consideration is judicial economy.  In a situation where individual cases would each "require[] weeks or months" to litigate, would result in "needless duplication of effort" by all parties and the Court, and would raise the very real "possibility of conflicting outcomes," the balance may weigh "heavily in favor of the class action."  In re Corrugated Container Antitrust Litig., 80 F.R.D. 244, 252–53 (S.D. Tex. 1978); see also Klay v. Humana, Inc., 382 F.3d 1241, 1270 (11th Cir. 2004) (finding a class action to be the superior method because it would be costly and inefficient to "forc[e] individual plaintiffs to repeatedly prove the same facts and make the same legal arguments before different courts"),

12

abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008); Sollenbarger v. Mountain States Tel. & Tel. Co., 121 F.R.D. 417, 436 (D.N.M. 1988) (finding that, in contrast to the multiple lawsuits that members of a class would have to file individually, "[t]he efficacy of resolving all plaintiffs' claims in a single proceeding is beyond discussion").

To litigate the individual claims of even a tiny fraction of the potential Class Members would place a heavy burden on the judicial system and require unnecessary duplication of effort by all parties.  It would not be economically feasible for the Settlement Class Members to seek individual redress.  The litigation of all claims in one action is far more desirable than numerous, separate actions and therefore the superiority requirement is met.

## III. FAIRNESS OF THE CLASS ACTION SETTLEMENT

Under Federal Rule of Civil Procedure 23(e), approval of a class settlement is warranted only if the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Acting as a fiduciary responsible for protecting the rights of absent class members, the Court is required to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished."  In re Cendant Corp. Litig., 264 F.3d 201, 231 (3d Cir. 2001) (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995)). This determination rests within the sound discretion of the Court.  Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975).  In Girsh, the Third Circuit identified nine factors to be utilized in the approval determination.  Id. at 157.  These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability ; (5) the risks of

establishing damages ; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Id. (internal quotation marks, alterations, and citation omitted).

Additionally, a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters, and there are few objectors.  In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).  Finally, settlement of litigation is especially favored by courts in the class action setting.  "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  In re Gen. Motors, 55 F.3d at 784; see also In re Warfarin Sodium Antitrust Litig., 391 F.3d at 535 (explaining that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged").

Turning to each of the Girsh factors, the Court finds as follows:

**A. Complexity, Expense, and Likely Duration of the Litigation**

The first factor, the complexity, expense, and likely duration of the litigation, is considered to evaluate "the probable costs, in both time and money, of continued litigation."  In re Cendant Corp., 264 F.3d at 233 (quoting In re Gen. Motors, 55 F.3d at 812).

The claims advanced on behalf of the Settlement Class involve many complex legal and technical issues that would have required, among other things, expert testimony at trial. Moreover, the case has been vigorously litigated since June 2009, and, absent a settlement, Philips would likely oppose class certification and move for summary judgment on the merits. (Friedman Decl. at ¶ 31, Oct. 14, 2011.)  By reaching a settlement, the parties have avoided the

14

significant expenses connected with further pre-trial motions and preparation of trial experts. Lastly, the Settlement provides immediate and substantial benefits for the Settlement Class.

As a result, this factor strongly weighs in favor of approval of the Settlement. See In re Warfarin Sodium Antitrust Litig., 391 F.3d at 535–36 (finding that the first Girsh factor weighed in favor of settlement because "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial").

**B. Reaction of the Class to the Settlement**

This second factor "attempts to gauge whether members of the class support the settlement." In re Lucent Techs., Inc., Sec. Litig., 307 F. Supp. 2d 633, 643 (D.N.J. 2004) (internal quotation marks and citation omitted). The Third Circuit has found that "[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement." In re Cendant Corp., 264 F.3d at 235.

On October 6, 2011 notice was sent directly to more than 60,000 potential Class Members. The Claims Administrator also placed the notice in a national publication and sent notice via the PR Newswire. By October 14, one week after notice went out, 6,799 claim forms had been downloaded from the Settlement Web site and over 1,000 phone calls came in on the toll-free number established for potential Class Members. (Dahl Decl. at ¶¶ 8–9.) The deadline for objections and opting out of the Settlement passed on November 24, 2011. As of the deadline, only thirteen of the approximately 291,000 Settlement Class Members elected to exercise their opt-out rights. In addition, only six potential Settlement Class Members filed

written objections.[3]  These numbers amount to miniscule fractions of the Settlement Class (approximately .00002% and .00004%).  See In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005) ("such a low level of objection is a 'rare phenomenon'") (citation omitted).  The paucity of negative feedback in the face of an extensive notice plan leads the Court to conclude that the Settlement Class generally and overwhelmingly approves of the Settlement.  See Varacallo v. Mass. Mutual Life Ins. Co., 226 F.R.D. 207, 237–38 (D.N.J. 2005) (finding exclusion and objection requests of .06% and .003%, respectively, "extremely low" and indicative of class approval of the settlement).  Of the objections filed, the Court finds that none are meritorious.

### 1. The Morton Objection Concerns Components Outside the Scope of This Settlement

Ms. Morton filed an objection to the amount of the Settlement.  She provided documentation indicating that the small signal board on her television had failed.  (Second Dahl Decl., Ex. A.)

As made clear in the Class Notice, the Settlement addresses problems with the capacitors on the power supply boards and does not include problems with the signal board.  The problem Ms. Morton had with her television is not within the scope of the Settlement.  (Pls.' Reply Mem. at 5; McNamara Decl. at ¶¶ 11–12)  Even assuming Ms. Morton's television falls within the scope of the Settlement, her objection to the adequacy of relief lacks merit for the same reasons as the objections discussed below.

### 2. Objections to the Adequacy of Relief Do Not Show the Settlement Is Unfair, Unreasonable, or Inadequate

Mr. Manz and Ms. Parekh each objected on the grounds that the Settlement does not fully cover the actual cost of repair.  (Second Dahl Decl., Exs. B and E.)  Mr. McLaughlin objected on

---

[3] The following individuals filed objections: (1) Raymond Guadalupe; (2) Colan and Tracy Dishman; (3) Martha Morton; (4) Uma Parekh; (5) James R. McLaughlin; and (6) Jeff Manz. (McNamara Decl.)

the grounds that the Settlement does not replace the televisions or provide a full reimbursement of the purchase price. (Id. Ex. C.) Mr. and Mrs. Dishman requested a larger award, stating that they had "expended more monies than the proposed amount and we do not feel that we are being justly compensated." (Id. Ex. D). Raymond Guadalupe objected on the grounds that he would only receive $45 for a television that cost $1,800 originally and requested that the Court "see what you can do for me." (McNamara Decl., Ex. B.)

The objections submitted by Class Members do not show that the Settlement is unreasonable or unfair. "This Court's role is to determine whether the proposed relief is fair, reasonable and adequate, not whether some other relief would be more lucrative to the Class. A settlement is, after all, not full relief but an acceptable compromise." Varacallo, 226 F.R.D. at 242 (internal quotation marks and citation omitted). "[F]ull compensation is not a prerequisite for a fair settlement." Careccio v. BMW of N. Am. LLC, No. 08-2619(KSH), 2010 U.S. Dist. LEXIS 42063, at *17 (D.N.J. Apr. 29, 2010). "Moreover, complaining that the settlement should be 'better'. . . is not a valid objection." Dewey v. Volkswagen of Am., 728 F. Supp. 2d 546, 579 (D.N.J. 2010) (internal quotation marks and citation omitted). Objections based solely on the amount of the award lack merit. See Hall v. AT&T Mobility LLC, No. 07-5325(JLL), 2010 U.S. Dist. LEXIS 109355, at *30 (D.N.J. Oct. 13, 2010) ("[The settlement terms] were the result of an arm's length negotiation between Class Counsel and ATTM. Such negotiations resulted in a compromise. . . . Thus, the fact that the Harter Objectors would prefer that all Class members receive greater cash benefits . . . has no bearing on whether the terms of the Settlement Agreement itself are fair and reasonable. After all, a settlement is, by its very nature, a compromise that naturally involves mutual concessions.").

In this case, the televisions subject to the Settlement were manufactured at least five years ago and have current "Blue Book" values that are a small fraction of what consumers originally paid. The compensation for repairs was based upon investigations by counsel during settlement talks as to the average repair costs for replacing power supply boards and capacitors for the television models at issue. (McNamara Decl. at ¶ 13.) Furthermore, the parties agreed upon the various Settlement amounts after arm's length negotiation before Judge Politan. Lastly, any Class Member who objected to the adequacy of relief had the option of opting out of the Settlement and pursuing his or her own case against Philips.

In sum, a very small number of Class Members opted out of or objected to the Settlement. All the objections received lack merit. Thus, this factor strongly weighs in favor of approval.

## C. The Stage of the Proceedings and the Amount of Discovery Completed

The Court should consider the stage of the proceedings and the amount of discovery completed in order to evaluate the degree of case development that Class Counsel have accomplished prior to settlement. "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." In re Cendant Corp., 264 F.3d at 235 (quoting In re Gen. Motors, 55 F.3d at 813). "Generally, post-discovery settlements are viewed as more likely to reflect the true value of a claim as discovery allows both sides to gain an appreciation of the potential liability and the likelihood of success." In re Auto. Refinishing Paint Antitrust Litig., 617 F. Supp. 2d 336, 342 (E.D. Pa. 2007) (citing Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1314 (3d Cir. 1993)).

The Court notes that this case has been vigorously litigated for nearly three years. The parties have substantially completed discovery, which has included inspecting Plaintiffs'

televisions, review of hundreds of thousands of pages of documents, and multiple depositions. In addition, the Settlement was reached after extensive arm's length negotiations and an all-day mediation session with Judge Politan. "Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent." In re Elec. Carbon Prods. Antitrust Litig., 447 F. Supp. 2d 389, 400 (D.N.J. 2006) (citation omitted). Based on the extensive discovery and negotiations, the Court concludes that Class Counsel had a thorough appreciation of the merits of the case prior to settlement. Accordingly, this factor weighs strongly in favor of approval.

### D. Risks of Establishing Liability

The risks of establishing liability should be considered to "examine what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." In re Cendant Corp., 264 F.3d at 237 (quoting In re Gen. Motors, 55 F.3d at 814). "The inquiry requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" In re Safety Components Int'l, Inc. Sec. Litig., 166 F. Supp. 2d 72, 89 (D.N.J. 2001) (quoting In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 319 (3d Cir. 1998)).

Class Counsel have outlined several risks to establishing liability. Notably, Philips claimed that it did not learn of the capacitor problem until Plaintiffs filed suit and Philips investigated the Plaintiffs' televisions. Philips would likely have contested whether the evidence obtained showed that it had pre-sale knowledge of a common defect on power supply boards provided to it by a third party. (Friedman Decl. at ¶ 24, Oct. 14, 2011.) Plaintiffs' success at trial was thus uncertain.

In contrast, the Settlement provides immediate and certain recovery for the Class Members. All Class Members who filed a claim form by the deadline will receive a benefit – a cash payment or fully transferrable voucher. Judge Politan confirmed that the Settlement "is an outstanding result for the Class." (Politan Decl. at ¶ 6.) In light of the uncertainty of success at trial and the certain and immediate benefit the Settlement provides, the Court concludes that this factor weighs in favor of approval.

### E. Risks of Establishing Damages

This factor, like the factor before it, "attempts to measure the expected value of litigating the action rather than settling it at the current time." In re Cendant Corp., 264 F.3d at 238 (quoting In re Gen. Motors, 55 F.3d at 816). Plaintiffs' allegations of damages would require a complicated analysis involving sophisticated expert opinions. Defendants would likely counter with their own experts and a "battle of the experts" would ensue. Plaintiffs acknowledge the inherent risks this situation presents. (Pls.' Final Approval Mem. at 30.) The Court agrees that significant risks exist in establishing both liability and damages and concludes that this factor weighs strongly in favor of approval.

### F. Risks of Maintaining Class Action Status Through Trial

The Court also finds that the sixth factor, the risk of maintaining class action status through trial, weighs in favor of approval of the Settlement. "Because the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537 (internal quotation marks and citation omitted). If the litigation proceeded, Defendants would have likely argued that certification was inappropriate because individual

issues predominate over common issues.  Defendants might argue that Philips used multiple suppliers, which may have used different capacitors, during the class period.  They might further contend that Philips did not track the component parts of those capacitors.  See, e.g., In re Hitachi Television Optical Block Cases, No. 08cv1746(DMS), 2011 WL 4499036 (S.D. Cal. Sept. 27, 2011) (denying class certification by finding in part that individual issues regarding components of different television models predominated over common issues).  Plaintiffs concede that class action status would have been, at the very least, contested at trial, and that maintaining class action status through trial was not certain.  (Pls.' Final Approval Mem. at 31–32).  Thus, this factor weighs in favor of approval.

### G.  The Settling Defendant's Ability to Withstand a Greater Judgment

In Cendant, the Third Circuit interpreted this factor as concerning "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." 264 F.3d at 240.  Plaintiffs acknowledge that "there is currently no indication that Defendant here would be unable to withstand a more significant judgment."  (Steinberg Decl. at ¶ 4.) Nevertheless, the Court is satisfied that the Settlement is fair, reasonable, and adequate, despite the possibility that Philips could pay a greater sum.  See, e.g., In re Auto. Refinishing Paint Antitrust Litig., 617 F. Supp. 2d at 344 (finding the settlement figure fair, reasonable, and adequate despite defendants' ability to withstand greater judgment, in light of the substantial benefits provided to class members); In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 235, 262–63 (D.N.J. 2000), aff'd, In re Cendant Corp., 264 F.3d 201 (approving settlement despite lack of evidence of defendant's ability to withstand greater judgment); Weiss v. Mercedes-Benz of N. Am., Inc., 899 F. Supp. 1297, 1302–03 (D.N.J. 1995) (concluding the settlement was fair, adequate, and reasonable despite finding defendant could withstand greater judgment).

Class Members will receive substantial benefits from the Settlement, with up to $4 million in cash payments and an uncapped number of fully transferable vouchers available to the Class. Furthermore, the Court finds that any ability of Philips to withstand a greater judgment is outweighed by the risk that Plaintiffs would not be able to achieve a greater recovery at trial. The present trade-in values of the televisions as listed in the Orion Blue Book Online ($45–$135) are significantly lower than the original purchase prices. (Friedman Decl. at ¶ 26, Oct. 14, 2011; Pls.' Final Approval Mem. at 33.) In addition, as discussed above, there are significant risks to establishing liability and damages. See Yong Soon Oh v. AT&T Corp., 225 F.R.D. 142, 150–51 (D.N.J. 2004) (finding that the difficulties plaintiffs would have in certifying the class and proving damages at trial "diminish[es] the importance of this factor").

In light of these considerations, the Court concludes that this factor weighs in favor of approval.

## H. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The eighth and ninth factors, concerning the range of reasonableness of the Settlement fund in light of the best possible recovery and the attendant risks of litigation, weigh in favor of settlement.

> The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. The percentage recovery, rather must represent a material percentage recovery to plaintiff in light of all the risks considered under Girsh.

In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 235, 263 (D.N.J. 2000) (internal quotation marks and citation omitted).

Plaintiffs argue that given the size of the Settlement Class (291,000), the potential benefits available to Class Members, and the risks in proving liability and damages and in

obtaining class certification, the Settlement is, fair, adequate, and reasonable.  (Pls.' Final Approval Mem. at 33).  The Court agrees with Plaintiffs and finds that these factors weigh in favor of approval.

### I. Summary of <u>Girsh</u> Factors

In conclusion, the Court holds that the nine <u>Girsh</u> factors overwhelmingly weigh in favor of approval.  The Settlement Agreement was reached after arm's-length negotiations between experienced counsel after completion of a significant amount of discovery and motion practice.  Therefore, the Court concludes that the settlement of up to $4 million in cash and an uncapped number of fully transferable vouchers, for both Class Members whose televisions failed and those whose televisions did not fail, represents a fair, reasonable, and adequate result for the Settlement Class considering the substantial risks Plaintiffs face and the immediate benefits provided by the Settlement.  See <u>Reibstein v. Rite Aid Corp.</u>, 761 F. Supp. 2d 241, 255–56 (E.D. Pa. 2011) (finding that freely transferrable gift cards usable for purchases at Rite Aid stores were fair to class members).

## IV. NOTICE

"In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." <u>In re Prudential</u>, 148 F.3d at 306 (citation omitted).  Under Federal Rule of Civil Procedure 23(c), notice must be disseminated by "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B);  <u>See also</u> <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 175–76, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (finding that Rule 23(c) includes an

23

"unambiguous requirement" that "individual notice must be provided to those class members who are identifiable through reasonable effort").

Additionally, in this case, where a settlement class has been provisionally certified under Rule 23(b)(3) and a proposed settlement preliminarily approved, proper notice must meet the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e).  Larson v. Sprint Nextel Corp., No. 07-5325(JLL), 2009 WL 1228443, at *2 (D.N.J. Apr. 30, 2009).  23(c)(2)(B) compliant notice must inform class members of:  (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) the class members' right to retain an attorney; (5) the class members' right to exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).  Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."  In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions, 177 F.R.D. 216, 231 (D.N.J. 1997) (citation omitted).

The Claims Administrator disseminated notice as follows:  (1) 22,652 postcard notices to potential Class Members; (2) 42,939 e-mail notices to potential Class Members; (3) publication notice in the weekend edition of USA Today on October 7, 2011; (4) a Web site containing the Settlement Agreement, long-form and short-form notice, the claim form, frequently asked questions, information on how potential Class Members could determine which TV model and serial numbers are included in the Settlement, contact information for the Claims Administrator, and other key information; (5) a dedicated toll-free number to obtain more information; (6) information on the Web sites of Plaintiffs' Counsel's law firms; (7) a press release distributed

via the PR Newswire; and (8) a search engine marketing campaign that directed potential Class Members to the Settlement Web site.

The Court finds that the parties complied with the requirements set forth by Rules 23(c)(2)(B) and 23(e).  The notice plan was thorough and included all of the essential elements necessary to properly apprise absent Settlement Class Members of their rights.  All forms of written notice included (1) the nature of the claims in this case; (2) a description of the Settlement Class; (3) a description of the Settlement and the relief provided under the Settlement Agreement; (4) information on how to obtain benefits from the Settlement; (5) the deadline to object to the Settlement or request exclusion from the Settlement; (6) the consequences of requesting exclusion or not doing so; (7) a Web site and phone number for obtaining more information about the Settlement, the parties involved, and the procedures to follow to object or exclude oneself; (8) the date of the fairness hearing; and (9) relevant information regarding the fairness hearing.  (Pls.' Final Approval Mem. Br. Ex. D.)  The short-form and long-form notices informed the Settlement Class Members that they may hire their own attorneys at their own expense.  (Id.)  Further, the postcard notice, e-mail notice, long-form notice, and short-form notice were written simply and plainly, and the notice methodology was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice. Additionally, on September 19, 2011, Defendant properly gave notice of the pending class settlement to the Attorney General of the United States and the Attorneys General of all fifty states, as required by 28 U.S.C. § 1715.  (Steinberg Decl. at ¶ 2.)

In conclusion, the Court finds that the notice fully complied with the requirements of Rules 23(c)(2)(B) and 23(e).

## V. ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

Class Counsel filed an unopposed motion for an award of attorneys' fees and expenses in the amount of $1,575,000, and for incentive awards of $750 each for the six Class Representatives. The Court has considered the parties' written submissions and the oral arguments made during the fairness hearing. For the reasons that follow, the Court will grant the requested attorneys' fees, reimbursement of expenses and incentive award payments.

**A. Standard for Judicial Approval of Fees**

Fed. R. Civ. P. 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The awarding of fees is within the discretion of the Court, so long as the Court employs the proper legal standards, follows the proper procedures, and makes findings of fact that are not clearly erroneous. In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 727 (3d Cir. 2001).

Notwithstanding this deferential standard, a district court is required to clearly articulate the reasons that support its fee determination. In re Rite Aid, 396 F.3d at 301. "In a class action settlement, the court must thoroughly analyze an application for attorneys' fees, even where the parties have consented to the fee award." Varacallo, 226 F.R.D. at 248.

"Relevant law evidences two basic methods for evaluating the reasonableness of a particular attorneys' fee request — the lodestar approach and the percentage-of-recovery approach." Id. (internal quotation marks and citation omitted). The lodestar method is generally applied in statutory fee shifting cases and "is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." In re Cendant Corp., 243 F.3d at 732 (internal quotation marks and citation omitted). The lodestar is also preferable

where "the nature of the settlement evades the precise evaluation needed for the percentage of recovery method." In re Gen. Motors, 55 F.3d at 821; see also In re Rite Aid, 396 F.3d at 300. The percentage-of-recovery method is preferred in common fund cases, as courts have determined "that class members would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund." Varacallo, 226 F.R.D. at 248–49 (internal quotation marks and citation omitted). The Court has discretion to decide which method to employ. Charles v. Goodyear Tire & Rubber Co., 976 F. Supp. 321, 324 (D.N.J. 1997). "While either the lodestar or percentage-of-recovery method should ordinarily serve as the primary basis for determining the fee, the Third Circuit has instructed that it is sensible to use the alternative method to double check the reasonableness of the fee." Varacallo, 226 F.R.D. at 249 (internal quotation marks and citation omitted).

Plaintiffs argue and the Court agrees that the lodestar method is appropriate in this case. Although this case does not involve a fee shifting statute, the combination of cash awards and vouchers "evades the precise evaluation needed for the percentage of recovery method." In re Gen. Motors, 55 F.3d at 821. The Court will perform a percentage-of-recovery analysis to cross-check the lodestar analysis and ensure the reasonableness of the fee.

**B. Lodestar Analysis**

The lodestar analysis is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." In re Rite Aid, 396 F.3d at 305; see also In re Diet Drugs Prod. Liab. Litig., 582 F.3d 524, 540 (3d Cir. 2009). When performing this analysis, the Court "should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter." In re Rite Aid, 396

F.3d at 306.  The lodestar figure is presumptively reasonable when it is calculated using a reasonable hourly rate and a reasonable number of hours.  <u>Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.</u>, 297 F.3d 253, 265 n.5 (3d Cir. 2002) (citations omitted).

After calculating the lodestar amount, the Court may increase or decrease the amount using the lodestar multiplier.  The multiplier is calculated by dividing the requested fee by the lodestar figure.  "The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work."  <u>In re Rite Aid</u>, 396 F.3d at 305–06 (footnote omitted).  The multiplier "need not fall within any pre-defined range, provided that the District Court's analysis justifies the award."  <u>Id.</u> at 307 (footnote omitted).  Further, the Court is not required to engage in this analysis with mathematical precision or "bean-counting."  <u>Id.</u> at 306.  Instead, the Court may rely on summaries submitted by the attorneys; the Court is not required to scrutinize every billing record.  <u>Id.</u> at 306–07.

Based upon their usual hourly rates, Class Counsel calculated a combined lodestar figure of $2,101,955.25 from the start of litigation through September 30, 2011.  The lodestar figure includes $70,918.70 in unreimbursed litigation expenses.  In support of their fee application, Class Counsel provided three declarations and numerous exhibits detailing the usual billing rates for each attorney, paralegal, and staff member that worked on the case.  Class Counsel calculated the lodestar figure taking all of these billing rates into account.  The hours billed by Class Counsel reflect the following work: investigating Plaintiffs' claims, drafting the Complaint, responding to interrogatories and production requests, motion practice, court appearances, consulting with expert witnesses, interviewing Plaintiffs and potential Class Members, telephone conferences with opposing counsel, document review, depositions, mediation, implementing the Notice Plan, analyzing relevant public information, and monitoring the Claims Administrator.

(Steven Schwartz Decl. at ¶4; Michael Schwartz Decl. at ¶4; Friedman Decl. at ¶4, Oct. 14, 2011.)

The Court finds the billing rates to be appropriate and the billable time to have been reasonably expended. The lodestar is thus presumptively reasonable. Neither Defendant nor any of the potential Class Members object to the reasonableness of the rate or the hours. The Court sees no reason to find the lodestar figure of $2,101,955.25 unreasonable.

The lodestar multiplier is approximately .75. Put another way, the final request for fees and expenses ($1,575,000) is more than 25% less than the asserted lodestar figure, a figure that includes only the fees and expenses of Co-Lead Counsel and Liaison Counsel up to September 30, 2011, and does not include the fees and expenses of other counsel for Plaintiffs or for hours expended after September 30 on tasks such as preparing for and appearing at the fairness hearing. The Court finds no reason to reduce the requested fee by using the .75 multiplier, as the risk involved in the case was substantial and Class Counsel provided high-quality representation to the Plaintiffs.

In sum, the Court finds the requested attorneys' fees and expenses of $1,575,000 reasonable.

## C. Percentage of Recovery Cross-Check

The Third Circuit has identified a non-exhaustive list of factors that a district court should consider in its percentage of recovery analysis:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

In re Rite Aid, 396 F.3d at 301 (quoting Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)).  The district court need not apply these Gunter fee award factors in a formulaic way.  Certain factors may be afforded more weight than others.  Id. at 301.  The district court should engage in a robust assessment of these factors.  Id. at 302; see also Gunter, 223 F.3d at 196 (vacating district court's ruling because the fee-award issue was resolved in a "cursory and conclusory" fashion).

The Court finds that the totality of the Gunter factors weighs strongly in favor of approval of the fee award.  Given the similarity and overlap of the Gunter and Girsh factors, the Court incorporates by reference the reasons given for approval of the Settlement Agreement.  The Court will now discuss additional reasons that support approval of attorneys' fees in this matter.

### 1. The Size of the Fund Created and the Number of Persons Benefitted

Fee awards ranging from 19 percent to 45 percent of the fund are considered reasonable.  See In re Gen. Motors, 55 F.3d at 822.  Class Counsel obtained a $4 million cash fund, plus an uncapped number of fully transferable vouchers, available to approximately 291,000 Class Members.  The requested $1,575,000 fee and expense award is 39 percent of the $4 million cash fund.  This percentage does not take into account the substantial value of the vouchers.  Given the potential combined value of the cash awards and vouchers, and the number of Class Members potentially entitled to benefits, this factor weighs in favor of approval.

### 2. Presence or Absence of Substantial Objections by Members of the Class to Settlement Terms and/or Fees Requested by Counsel

The absence of substantial objections by Settlement Class Members to the fees requested by Class Counsel strongly supports approval.  The deadline for objections has passed.  Only six Settlement Class Members objected to the settlement; none of them objected to the proposed fee,

expenses, and incentive awards and only thirteen opted out of the Settlement.  See Perry v. FleetBoston Fin. Corp., 229 F.R.D. 105, 124 (E.D. Pa. 2005) ("There have been no objections to either the settlement agreement or the fees requested by counsel, and only seventy class members have exercised their opt-out rights.  This factor therefore weighs in favor of approv[al]."); In re Lucent Techs., Inc., Sec. Litig., 327 F. Supp. 2d 426, 435 (D.N.J. 2004) (finding this factor weighed in favor of approval where only nine of nearly three million potential class members objected to the fee application).

### 3. Skill and Efficiency of Attorneys

As discussed in the section on class certification, Class Counsel are experienced in litigating and settling consumer class actions.  Class Counsel obtained substantial benefits for the Class Members, a consideration that further evidences Class Counsels' competence.  Thus, this factor also weighs in favor of approval of the fee award.

### 4. The Complexity and Duration of the Litigation

As explained in the discussion of the Girsh factors, this case has been litigated for nearly three years and concerns complex legal and factual issues.  The parties reached the settlement after extensive discovery and arm's length settlement negotiations.  Thus, this factor weighs in favor of approval.

### 5. The Risk of Non-Payment

Class Counsel undertook this action on a contingent fee basis, assuming a substantial risk that they might not be compensated for their efforts. Courts recognize the risk of non-payment as a major factor in considering an award of attorneys' fees.  See In re Prudential-Bache Energy Income P'ships Sec. Litig., No. 888, 1994 U.S. Dist. LEXIS 6621, at *16 (E.D. La. May 18, 1994) ("Counsel's contingent fee risk is an important factor in determining the fee award.

Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.").  Class Counsel invested substantial effort and resources to obtain this favorable Settlement. Accordingly, this factor weighs in favor of approval.

### 6. The Amount of Time Devoted to the Litigation

Class Counsel and Liaison Counsel report nearly 4,000 hours of contingent work on this case over nearly three years.  (Pls.' Fee Mem. at 19–20.)  Based on the amount of time expended on this matter, this factor weighs in favor of approval.

### 7. Awards in Similar Cases

The Court must also take into consideration amounts awarded in similar actions when approving attorneys' fees.  Specifically, the Court must: (1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market.  See, e.g., In re Remeron Direct Purchaser Antitrust Litig., No. 03-0085(FSH), 2005 U.S. Dist. LEXIS 27013, *42–46 (D.N.J. Nov. 9, 2005).

The Court has reviewed consumer cases in this Circuit and finds a range of awards.  See McGee v. Cont'l Tire N. Am., Inc., No. 06-6234(GEB), 2009 U.S. Dist. LEXIS 17199 at *43–44 (D.N.J. Mar. 4, 2009) (approving a 22–31 percent fee award in a warranty, declaratory relief, and consumer fraud class action relating to premature wear on tires); Weiss, 899 F. Supp. 1297 (approving 15 percent fee award in Lanham Act/consumer fraud class action); see also In re Rite Aid Corp. Sec. Litig., 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (stating that a review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71%" with a median value of one-third); In re Gen. Motors, 55 F.3d at 822 (explaining that in common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"); In re

32

Linerboard Antitrust Litig., No. 1261, 2004 U.S. Dist. LEXIS 10532, at *43 (E.D. Pa. June 2, 2004) (citing with approval "a recent Federal Judicial Center study that found that in federal class actions generally median attorney fee awards were in the range of 27 to 30 percent").

The Court concludes that the fee award in this case falls within the range of awards in similar cases. The Court once again notes that the requested fee award is 39 percent of the $4 million cash fund. However, the value of the uncapped vouchers very well may equal or even surpass the value of the cash fund, thereby reducing the effective percentage of the ultimate fee award. The Court finds the requested fee award to be reasonable and commensurate with awards in comparable cases.

The second part of this analysis addresses whether the requested fee is consistent with a privately negotiated contingent fee in the marketplace. "The percentage-of-the-fund method of awarding attorneys' fees in class actions should approximate the fee [that] would be negotiated if the lawyer were offering his or her services in the private marketplace." In re Remeron Direct Purchaser Antitrust Litig., 2005 U.S. Dist. LEXIS 27013, * 44–45. "The object . . . is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible." In re Cont'l Ill. Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992); see also In re Synthroid Mktg. Litig., 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.").

To determine the market price for an attorney's services, the Court should look to evidence of negotiated fee arrangements in comparable litigation. In re Cont'l Ill. Sec. Litig., 962 F.2d at 573 (stating that the judge must try to simulate the market "by obtaining evidence

about the terms of retention in similar suits, suits that only differ because, since they are not class actions, the market fixes the terms"). "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation." In re Remeron Direct Purchaser Antitrust Litig., 2005 U.S. Dist. LEXIS 27013, at * 46; see, e.g., In re Ikon Office Solutions, Inc.,194 F.R.D. 166, 194 (E.D. Pa. 2000); Durant v. Traditional Invs., Ltd., No. 88-9048(PKL), 1992 U.S. Dist. LEXIS 12273, at *7 n.7 (S.D.N.Y. Aug. 12, 1992).  Class Counsel's requested fee amount is within the range of privately negotiated contingent fees, if not somewhat lower.

In sum, for all the reasons stated above, the Court concludes that the requested fee by Class Counsel is fair and reasonable under the lodestar method and the percentage-of-recovery cross-check.  The Court will approve Plaintiffs' application for attorneys' fees in the amount of $1,575,000.

### D. Expenses

Plaintiffs' Counsel also seek reimbursement for $70,918.70 in expenses to be paid from the $1,575,000 award.  "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." In re Safety Components Int'l, Inc., 166 F. Supp. 2d at 108 (citing Abrams v. Lightolier Inc., 50 F.3d 1204, 1225 (3d Cir. 1995)).  Class Counsel contend that these expenses reflect costs expended for the purposes of litigating this action, including court fees, consultations with expert witnesses, computer research, long distance telephone calls, photocopies, postage, courier service, and travel expenses.  (Steven Schwartz Decl. Ex. 2; Michael Schwartz Decl. Ex. 2; Friedman Decl. Ex. 2, Oct. 11, 2011.)  The Court finds that the expenses were adequately documented and reasonably and appropriately incurred in the

litigation of the case.  See In re Datatec Sys. Sec. Litig., No. 04-CV-525(GEB), 2007 U.S. Dist. LEXIS 87428, at *27 (D.N.J. Nov. 28, 2007).

### E. Incentive Awards

Class Counsel also request that the Court approve the payment of incentive awards to each named Plaintiff in the amount of $750, for a total of $4,500, as provided for in the Settlement Agreement.  "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  Dewey, 728 F. Supp. at 577 (internal quotation marks and citation omitted). Class Counsel explain that all named Plaintiffs provided their televisions for inspection. Five of the six named Plaintiffs took time off work and traveled to New Jersey to be deposed. Plaintiffs responded to interrogatories, produced documents, and participated in numerous conferences and meetings.  (Pls.' Fee Mem. at 25).  The incentive awards will not reduce the recovery of any Class Member.  See In re LG/Zenith Rear Projection Television Class Action Litig., No. 06-5609(JLL), 2009 U.S. Dist. LEXIS 13568, at *25 (D.N.J. Feb. 18, 2009) (approving incentive award that "is small, and will not decrease the recovery of other class members").  Given the duration of the litigation and the extent of personal involvement, the Court finds that the named Plaintiffs are entitled to the requested incentive awards.

### F. Conclusion

For the foregoing reasons, the Court grants the application of Class Counsel for an award of attorneys' fees, reimbursement of expenses and incentive award payments.

## VI. CONCLUSION

Because the named Plaintiffs have satisfied all of the requirements of Fed. R. Civ. P.

23, this Court certifies the class for purposes of this Settlement and approves the Settlement Agreement.  The Court also grants the application of Class Counsel for attorneys' fees, reimbursement of expenses and incentive award payments.  The appropriate Orders accompany this Opinion.


**Dated: May 14, 2012**

**HON. CLAIRE C. CECCHI**
**United States District Judge**